IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, and COURTNEY BELLOMO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COMMUNITY BANK, N.A.<br>Defendant. | NO. 13-CV-02939<br><br><br><br>JUDGE MANNION<br><br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

\*\*\*

**CERTIFICATIONS AND EXHIBITS IN SUPPORT THEREOF**

Cary L. Flitter
Theodore E. Lorenz
Andrew M. Milz
FLITTER LORENZ, P.C.
450 N. Narberth Ave.
Suite 101
Narberth, PA 19072
(610) 822-0782

Timothy Polishan
Eugene C. Kelley
KELLEY POLISHAN &
SOLFANELLI, LLC
259 South Keyser Ave.
Old Forge, Pa 18518
(570) 562-4520

M. Scott Barrett
BARRETT WYLIE, LLC
Showers Plaza
P.O. Box 5233
320 West 8th Street
Suite 100
Bloomington, IN 47407
(812) 334-2600

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ................................................................................ 1

II.  FACTS AND PROCEDURAL HISTORY ........................................ 2

   A.  Nature of Plaintiffs' Claims Under the UCC ............................... 2

     1.  Defective Repossession Notice ............................................. 2

     2.  Defective Deficiency Notice ................................................. 5

   B.  Procedural History .................................................................... 6

   C.  The Settlement Agreement ...................................................... 10

III. QUESTION PRESENTED ............................................................. 13

IV. LEGAL ARGUMENT .................................................................... 13

   A.  The Elements for Class Certification are Met ........................... 13

     1.  Rule 23(a)(1) – The Class is Sufficiently Numerous ............... 15

     2.  Rule 23(a)(2) – The Bank's Standard Form Repossession Notices Present Common Issues of Law and Fact ................................................. 16

     3.  Rule 23(a)(3) – Typicality is Met as Plaintiffs Press the Same Claim as Every Member of the Class ............................................................. 17

     4.  Rule 23(a)(4) – Plaintiffs and Class Counsel are Adequate ....... 19

     5.  Rule 23(b)(3) – Common Questions of Law or Fact Predominate ........... 21

6.  Rule 23(b)3) – A Class Action is Superior to Other Available Methods to Resolve this Controversy.................................................................. 22

B.  The Settlement Should be Preliminarily Approved ...................................... 24

1.  The Settlement was Reached After Arms-Length Negotiations ................ 25

2.  The Settlement is Fair and Contains no Deficiencies................................. 25

3.  The Settlement is Within the Range of Reasonableness ........................... 28

4.  Class Counsel Recommends the Settlement................................................ 29

C.  Class Notice ...................................................................................................... 30

V.  CONCLUSION ............................................................................................................ 32

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Allen v. Holiday Universal*, 249 F.R.D. 166 (E.D. Pa. 2008) ............................ 19, 20

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 14

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir.1994)........................................................ 18

*Banca Commerciale v. Northern Trust, Int'l*, 1997 WL 217591 (S.D.N.Y. Apr. 30, 1997), *aff'd* 160 F.3d 90 (2d Cir. 1998)................................................................ 12

*Boone v. City of Philadelphia*, 668 F. Supp. 2d 693 (E.D. Pa. 2009)..................... 28

*Chakejian v. Equifax Inf. Srvs., Inc.*, 256 F.R.D. 492 (E.D. Pa. 2009)................... 17

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)................................................. 21

*Cosgrove v. Citizens Auto Fin.*, 2010 WL 3370760, *1 (E.D. Pa. Aug. 26, 2010) ................................................................................. 3, 4

*Cosgrove v. Citizens Auto Fin. Inc.*, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011).................................................................................................passim

*Coxall v. Clover Comm.*, 4 NY Misc. 3d 654, 781 N.Y.S.2d 567 (Supreme Ct. Kings Co. 2004) ....................................................................................... 3, 4, 5

*Craig v. Rite Aid Corp.*, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013)......................... 27

*Cubler v. Trumark Fin. Cr. Un.*, 83 A.3d 235 (Pa. Super. Ct. 2013) ..............passim

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012)................. 19

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ................................... 24

*Gates v. Rohm and Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ............................. 24

*General Motors Acc. Corp. v. Vucich*, 15 N.Y.A.D. 3d 106 (3d Dept. 2005)........ 12

*Harlan v. Transworld Sys.*, 302 F.R.D. 319 (E.D. Pa. 2014).................................. 20

*In re Bristol Assoc., Inc.*, 505 F.2d 1056 (3d Cir. 1974)..........................................5

*In re Chocolate Confectionary Antitr. Litig.*, 289 F.R.D. 200
(M.D. Pa. 2012) ...........................................................................16, 19

*In re Community Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) ..............................19

*In re Flonase Antitr. Litig.*, 291 F.R.D. 93 (E.D. Pa. 2013)..................................24

*In re NFL Players Concussion Injury Litig.*, ---F.3d ----, 2014 WL 7331936, *10
(3d Cir. Dec. 24, 2014) ................................................................13, 23

*In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997),
*aff'd* 117 F.3d 720 (2d Cir. 1997) .......................................................12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283
(3d Cir. 1998) ...........................................................................22

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009)...............16

*Jordan v. Commw. Fin. Sys., Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006)................17, 18

*Lake v. First Nationwide Bank,* 156 F.R.D. 615 (E.D. Pa. 1994)....................22, 23

*Logory v. Co. of Susquehanna,* 277 F.R.D. 135 (M.D. Pa. 2011) ..........................15

*McCall v. Drive Fin. Servs., LP,* 2009 WL 8712847
(Phila. C.C.P. Apr. 10, 2009) ..........................................................passim

*Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202 (E.D.
Pa. 2014) ...........................................................................14, 22

*Perry v. Fleet Boston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005).........................32

*Rodriguez v. Nat'l City Bank,* 726 F.3d 372 (3d Cir. 2013)............................14, 16

*Spry v. Police & Fire Fed. Credit Union,* Phila. C.C.P. No. 1109-000007............15

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001).....................................15

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011).............................13

*Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006) ................ 31

*Wallace v. Powell,* 301 F.R.D. 144 (M.D. Pa. 2014) ....................................... passim

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................. 14, 16

**Statutes**

13 Pa. C.S. § 9601 ....................................................................................... 1

13 Pa. C.S. § 9611(b) .................................................................................... 3

13 Pa. C.S. § 9613 ....................................................................................... 4

13 Pa. C.S. § 9614 ....................................................................................... 3, 4

13 Pa. C.S. § 9614(1)(ii) ............................................................................... 4

13 Pa. C.S. § 9616 .............................................................................. 6, 15, 21, 27

13 Pa. C.S. § 9625 ....................................................................................... 23

13 Pa. C.S. § 9625(c) .................................................................................... 21

13 Pa. C.S. § 9625(c)(2) ...................................................................... 5, 18, 27, 28

13 Pa. C.S. § 9625(e)(5) ................................................................................ 6

28 U.S.C. § 1332(d) ..................................................................................... 6

N.Y. U.C.C. Law § 9-601 ............................................................................... 1

N.Y. U.C.C. Law § 9-611(b) ........................................................................... 3

N.Y. U.C.C. Law § 9-613 ............................................................................... 4

N.Y. U.C.C. Law § 9-614 ............................................................................... 3, 4

N.Y. U.C.C. Law § 9-616 ............................................................................... 6

NY U.C.C. Law § 9-625 ........................................................................... 12, 23

N.Y. U.C.C. Law § 9-625(c)(2) ......................................................................... 5, 27

NY UCC Law § 9-625(e) ..................................................................................... 6

## Other Authorities

I.R.S. P.L.R. 201240001 (Oct. 5, 2012) ............................................................. 26

MANUAL FOR COMPLEX LITIGATION, Fourth (2004) § 21.632 ................................ 24

## Rules

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 7

Fed. R. Civ. P. 23 ..................................................................................... passim

Fed. R. Civ. P. 23(a) .................................................................... 13, 14, 16, 32

Fed. R. Civ. P. 23(a)(1) ................................................................................ 15, 16

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 16

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 19

Fed. R. Civ. P. 23(b) ..................................................................................... 13, 14

Fed. R. Civ. P. 23(b)(3) ....................................................... 14, 21, 22, 32

Fed. R. Civ. P. 23(c) ........................................................................................... 31

Fed. R. Civ. P. 23(c)(2) ...................................................................................... 31

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 30

Fed. R. Civ. P. 23(e) ........................................................................................... 24

Fed. R. Civ. P. 23(e)(1) ...................................................................................... 30

Fed. R. Civ. P. 23(h) ........................................................................................... 28

NY CPLR § 213 ................................................................................................ 12

NY CPLR § 214(2) ........................................................................................... 12

**Treatises**

NEWBERG ON CLASS ACTIONS § 12:35 ............................................................ 12

**Regulations**

26 C.F.R. § 1.6050P ........................................................................................ 26

## I.     **INTRODUCTION**

Plaintiffs, Carol A. Brennan, Anthony Colino, and Courtney Bellomo, move the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of a class-wide settlement reached in this matter alleging violations of the Article 9 consumer protection provisions of the Uniform Commercial Codes of Pennsylvania and New York. 13 Pa. C.S. §9601, *et seq*; N.Y. U.C.C. Law § 9-601, *et seq* (McKinney). In their Amended Complaint (Doc. No. 57), Plaintiffs allege that the uniform notice of disposition of collateral, or "Repossession Notice," the defendant bank sent to Pennsylvania and New York consumers was defective as it failed to set forth mandatory disclosures required by both states' UCCs.

The parties have now reached a class settlement, subject to approval of this Court. The Settlement Agreement (attached as Exhibit "1" to Plaintiffs' Motion for Preliminary Approval, Doc. No. 72, and Exhibit "1" hereto) calls for: (1) Defendant Community Bank, N.A. to pay $2,800,000.00 into a settlement fund; (2) each Class Member to have the unfettered right to choose to have the Bank waive entirely any Auto Loan Deficiency arising from repo and auction of his vehicle; and (3) the Bank to advise the credit bureaus to delete entirely the Bank tradeline in the credit report related to the subject auto finance accounts for all Class Members.

The settlement was reached after months of litigation, arms-length negotiations between the parties, and mediation by a retired federal magistrate

judge.[1]   Class Counsel recommend approval of the settlement, and Defendant Community Bank, N.A. joins in the request for a preliminary determination of certification of a settlement class and for preliminary approval.   The proposed settlement is an excellent result for the Class, and is worthy of approval.   All the requirements of Rule 23 are met.   Preliminary approval of the settlement should be granted, and notice permitted to issue to the Class.

## II.   **FACTS AND PROCEDURAL HISTORY**

### A. Nature of Plaintiffs' Claims Under the UCC

#### 1. Defective Repossession Notice

In February 2006, Carol Brennan obtained vehicle financing from Defendant Community Bank, N.A. (then trading as First Liberty Bank & Trust, and herein referred to as the "Bank") to finance the purchase of a used Jeep.   A copy of Brennan's Motor Vehicle Installment Sale Contract ("Contract") is attached as Exhibit "2" hereto.   The Bank was the assignee and secured party.   Ms. Brennan paid on the loan for five years.   But when she was unable to keep up with the ongoing payments, the Bank declared a default and repossessed Brennan's vehicle in early April, 2011.   On or about April 5, 2011, the Bank sent to Brennan a Notice of Right

---

[1]   *Urban v. Community Bank, N.A.*, 3:14-cv-1039 was filed on May 29, 2014. Brennan's counsel had invited the participation of Mrs. Urban in this settlement. Counsel has now been advised that Urban does not consent to the terms of settlement. Hence, Urban is not a party. *See also* fn 7, *infra*.

to Redeem ("Repossession Notice"), a copy of which is attached hereto as Exhibit "3". Like Ms. Brennan, New York Plaintiffs Anthony Colino and Courtney Bellomo had their cars repossessed by the Bank, and were sent a substantially identical Repossession Notice. (See Exhibits "4" and "5" hereto).

Under the materially identical Uniform Commercial Codes of both Pennsylvania and New York, a secured lender wishing to repossess a consumer's vehicle without judicial oversight or legal process is required to immediately provide a "reasonable authenticated notice of disposition" of the collateral to the borrower after the repossession. 13 Pa. C.S. § 9611(b); § 9614; N.Y. U.C.C. Law §9-611(b), § 9-614 (McKinney); *see also Cubler v. Trumark Fin. Cr. Un.*, 83 A.3d 235 (Pa. Super. 2013) (describing what notice must contain); *McCall v. Drive Fin. Servs., LP*, 2009 WL 8712847 (Phila. C.C.P. Apr. 10, 2009) (Pa. repo notice requirements); *Cosgrove v. Citizens Auto Fin.*, 2010 WL 3370760, *1 (E.D. Pa. Aug. 26, 2010) (same); *Coxall v. Clover Comm.*, 4 NY Misc. 3d 654, 781 N.Y.S.2d 567 (Supreme Ct. Kings Co., 2004) (NY notice requirements).

Proper Repossession Notice is a key component of the statutory process of self-help repossession. The law requires that the post-repossession notice provide important information concerning an impending forced sale of the consumer's vehicle, and must advise that the consumer could be liable for a deficiency, if any.

13 Pa. C.S. §9613-9614; N.Y. U.C.C. Law §9-613-9-614 (McKinney).  As recently

set forth by Pennsylvania's Superior Court:

> "sections 9613 and 9614 of the UCC (governing the
> contents and form of notification before disposition of
> collateral) … provide that, in a consumer goods
> transaction, before a secured party may dispose of or sell
> the collateral following a debtor's default, the secured
> party must send the debtor a notice, setting forth, *inter
> alia*, (1) whether the sale will be public or private sale; (2)
> the time, date and place at which the collateral will be sold
> (if sold at auction); (3) that the debtor is entitled to an
> account of the unpaid indebtedness; and (4) the amount
> that must be paid to the secured party to redeem the
> collateral. *See* 13 Pa. C.S.A. §§ 9613, 9614."

*Cubler,* 83 A.3d at 236, n.1.  If the notification in a consumer goods transaction lacks

any of the required information, it is "insufficient as a matter of law."  *Id., see also*

Comment 2 to 13 Pa. C.S. § 9614 and N.Y. U.C.C. Law §9-614.  *Cosgrove*, 2010

WL 3370760, *1-2; *Coxall*, 4 NY Misc. 3d at 659.

The Repossession Notice that Community Bank, N.A. sent to Plaintiffs and

the Class(es) was defective at it did not state the method of intended disposition, nor

the date and place of any public sale or auction, as required.  The Repossession

Notice also does not advise the borrower that she is entitled to an accounting of any

unpaid indebtedness, and the Repossession Notice does not provide a description of

any liability for a deficiency; i.e., that the borrower will be on the hook if there is a

shortfall after auction, as required.  *See* 13 Pa. C.S. § 9614(1)(ii).

4

The UCC is clear in providing a minimum uniform damages remedy for a secured party's failure to follow the law.  13 Pa. C.S. § 9625(c)(2) and N.Y. U.C.C. Law 9-625(c)(2) provide:

> "(2) if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price."

See also the UCC Comment to Section 9-625(c)(2) (minimum damages awardable without proof of injury).[2]  These minimum damages are "in recognition of the inherent difficulty for a claimant to quantify and prove actual damages." *Cubler,* 83 A.2d. at 242;  *accord Coxall*, 4 NY Misc. 3d at 667 ("Mr. Coxall is entitled to this recovery even if he sustained no actual loss from Clover Commercial's failure to comply with Article 9.").

### 2. Defective Deficiency Notice

By letter dated May 25, 2011, the Bank informed Brennan that her vehicle had been sold for $2,000.00 and that a deficiency of $4,733.00 remained after the sale proceeds had been applied to her balance ("Deficiency Notice").  A copy of that Deficiency Notice is attached hereto as Exhibit "6".  Again, substantially similar

---

[2]    The Official Comments to the UCC are accorded substantial weight.  *In re Bristol Assoc., Inc.*, 505 F.2d 1056, 1058 n.2 (3d Cir. 1974).

Deficiency Notices were sent to Colino and Bellomo in New York.  The Deficiency Notices sent to Plaintiffs and the Class were defective in that they failed to comply with the Code's very specific requirement the lender itemize or otherwise list: (a) the amount owed on the vehicle, (b) less the proceeds from the sale; (c) a breakdown of expenses associated with selling the property; and (d) less any credit(s) due to the borrower related to unearned interest and other finance charges (if any), and amount of deficiency claimed.   13 Pa. C.S. § 9616; N.Y. U.C.C. Law §9-616; *see also McCall,* 2009 WL 8712847 at p. 2-3 (discussing requirements for proper deficiency notice).  The failure to provide a proper deficiency notice after auction subjects the lender – in the case of a pattern or practice of non-compliance – to statutory damages of $500 per notice.  13 Pa. C.S. § 9625(e)(5); N.Y. U.C.C. Law § 9-625(e); *McCall,* 2009 WL 8712847 *3.

## B. Procedural History

Ms. Brennan initiated this action on October 30, 2013, by filing a Class Complaint in the Lackawanna County Court of Common Pleas.  On December 6, 2013, the Bank removed the case to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

On December 13, 2013, Plaintiff filed a Motion to Remand and for limited jurisdictional discovery (Doc. No. 8).  Plaintiff challenged class size and whether the requisite $5 million dollars in controversy had been established by the Bank's

Removal Petition (Doc. No. 8).  The Bank, for its part, filed a Motion to Dismiss under Rule 12(b)(6) asserting the bar of the statute of limitations (Doc. No. 5).  In the ensuing weeks, the Bank produced additional evidence bearing on class size and the amount in controversy.  Then, the Superior Court in an unrelated case challenging precisely the statute of limitations for Article 9 repossession notice claims in Pennsylvania held that the statute of limitations is six years.  *Cubler v. Trumark Fin. Credit Union*, 83 A.3d 235 (Pa. Super. Ct. 2013).  After negotiation, and after a further telephone conference with the Court, the Bank withdrew its Motion to Dismiss that was based on statute of limitations, and Brennan withdrew her Motion to Remand to state court.  (See Doc. Nos. 19, 20).  Defendant filed its Answer, Affirmative Defenses and Counterclaims on February 4, 2014 (Doc. No. 24).

The Bank then served an Offer of Judgment upon Brennan on January 28, 2014, then moved on February 11, 2014, to dismiss the Complaint on mootness grounds. (Doc. No. 27).  On the same day, Plaintiff filed a Motion to Strike the Offer of Judgment (Doc. No. 29).   The parties fully briefed Defendant's Motion to Dismiss on Mootness Grounds on the one hand and Plaintiff's Motion to Strike the Offer of Judgment, on the other.  (Doc Nos. 31, 32, 33, 35, 36).  Plaintiff also moved to strike off the Bank's counterclaims for lack of jurisdiction.  (Doc. No. 41).

On March 4, 2014, the Court held an in-person status conference.  At that time, Plaintiff's request for production of all of the Class Member loan files pertaining to Pennsylvania consumers was resolved with the Court exercising its discretion to permit the Plaintiff to provide "the defendant with the names of 35 potential class members and the defendant will turn over the entire loan file for each requested individual by April 4, [2014]."  (Doc. No. 40, Order at ¶ 2).  Coupled with the loan files and affidavits provided, the Court reasoned that this would provide a sufficient random "audit" of the applicable loan files to permit Brennan and her counsel to preliminarily assess the size and breadth of the Pennsylvania Class and the statutory damages potentially recoverable.

At the Conference, the parties expressed some interest to the Court in exploring a mediation of the matter on a class-wide basis.  The Court permitted limited discovery to proceed while continuing the Case Management Conference "for 90 days while the parties seek to resolve this matter through a mutually agreeable mediator."  (Scheduling Order, March 4, 2014, Doc. No. 40, at ¶ 4).  A mediation for the Pennsylvania Class was thereafter scheduled with JAMS for June 9, 2014.

In May 2014, Plaintiff's counsel was engaged by Anthony Colino of Irondequoit, New York and Courtney Bellomo of Angola, New York to represent a Class of New York consumers alleging a substantially similar claim involving the

Bank's repossession practices in New York.  Plaintiff moved on May 20, 2014 to amend the Complaint to add the two New York plaintiffs and the New York UCC claims. (Doc. No. 45-46).  Thereafter, the Court conducted a telephone conference with counsel for the parties on May 30, 2014 (Doc. No. 49) and entered a further Scheduling Order on that date.  The Order authorized the parties to adjourn the June 9th mediation, scheduled briefing on Plaintiff's Motion for Leave to Amend.  The Court exercised its discretion to stay action on class certification pending a ruling on Plaintiff's Motion for Leave to Amend. (Doc. No. 50, ¶¶ 3, 4).

Thereafter, the Bank filed its Opposition to Plaintiff's Motion for Leave to Amend. The Bank asserted futility because it claimed a shorter, three year limitations period applied.  The Bank also asserted that subject matter jurisdiction would be impaired by the proposed amendment.  Plaintiff filed a Reply.  (Doc. Nos. 52, 54). While the Motion for Leave to Amend was pending, counsel for Ms. Brennan and for the Bank had further conversations about settlement and the prospect of attempting to mediate the matter on a two-state, class-wide basis, recognizing the New York statute of limitations issue raised by the Bank.   The parties ultimately agreed that rather than ask the Court to rule on the New York statute of limitations issue in context of a proposed amendment, Plaintiff would be permitted to file her Amended Complaint.  This was without prejudice to Defendant's right to challenge jurisdiction or the bar of the statute of limitation in further motion practice while the

9

parties went about the business of scheduling another mediation session to explore potential resolution of the Pennsylvania and New York putative classes. Pursuant to the Stipulation approved as an Order (Doc. No. 55, 56): "Defendant will provide informal discovery regarding the composition of a potential New York class, but proceedings will otherwise be stayed [however] the stay may be lifted upon application of any party for cause shown." (Id).

On September 30, 2014, counsel for the Plaintiffs and for Defendant mediated the case with U.S. Magistrate District Judge (Ret.) Diane Welsh in Philadelphia. At the end of the day-long mediation, a settlement was reached in principle. Over the next several weeks, the parties endeavored to memorialize the detailed settlement in an acceptable written agreement, and circulated ancillary documents such as proposed forms of order and class notice. On January 5, 2015, a Settlement Agreement was fully executed, and docketed as part of Plaintiff's Motion to Approve (Doc. No. 72). The Plaintiffs now brief their Motion for Preliminary Approval.

### C. The Settlement Agreement

The significant terms of the class-wide settlement (attached as Exhibit "1" hereto) are as follows:

1.     The Bank will pay Two Million, Eight Hundred Thousand Dollars ($2,800,000.00) into a settlement fund at PNC Bank within 14 days following the entry of an Order of Preliminary Approval. Those funds will be used to

pay Class Members, Class Counsel fees and costs, and administration expenses. (*See* Sett. Agreement, Exhibit "1" at ¶2.06).

2.     Community Bank will write to request that all Consumer Reporting Agencies to whom it reports <u>delete entirely</u> the tradeline from the Class Members' credit reports. (Sett. Agreement at ¶2.09).

3.     Community Bank will (at the option of the Class Member) <u>waive and eliminate entirely any deficiency</u> on that Class Member's Auto Loan.  The Class Member can elect this relief by completing a form proposed to be mailed as part of the Class Notice (Sett. Agreement at ¶ 2.10-11).

4.     Community Bank will, subject to Court approval, pay class representative service awards to Brennan, Colino and Bellomo, in the amount of $5,000.00 each in recognition of their investment of time and effort on behalf of the Class of Pennsylvania and New York borrowers.  (Sett. Agreement at ¶ 1.17).

The Settlement Agreement provides substantial relief to 2956 consumers in Pennsylvania and New York.  Plaintiff deposed Pamela Dent, Recovery Supervisor for Community Bank, on October 28, 2014.  Ms. Dent testified that the class spreadsheet reflects all those consumers who fall within the class periods as defined in the Amended Complaint.  (See Ex. "7", Dep. Tr. of Def.'s designee Dent at p. 113-14).  Ms. Dent also testified that the Bank used substantially the same form Repossession Notice and Deficiency Notice in Pennsylvania and New York during the 6 year Class Period.  (*See id.* at p. 23-29).[3]

---

[3]     In September, 2012, the Bank made a change to the Deficiency Notice that arguably made the Notice substantially compliant.

The Settlement provides for cash payments to three Class Member "Groups" based on risks associated with the different states' statute of limitations.  As noted, the Bank contends that a three year limitation applies under NY CPLR § 214(2), relying on *General Motors Acc. Corp. v. Vucich*, 15 N.Y.A.D. 3d 106, 109 (3d Dept. 2005).  Plaintiffs, for their part, urge a six year period of limitations under CPLR § 213, relying on *Banca Commerciale v. Northern Trust, Int'l*, 1997 WL 217591 (S.D.N.Y. Apr. 30, 1997), *aff'd*, 160 F.3d 90 (2d Cir. 1998).  Although Plaintiffs believe they have the better of the argument, the issue of which period of limitation applies to UCC 9-625 claims has not been squarely decided by any New York appellate court.  Therefore, due to the unresolved question of the New York statute of limitations and the date of the Colino and Bellomo Repossession Notices being beyond a three-year limitations period, the New York Class Members' claims involve somewhat more risk, which is appropriately factored into the amount of class relief.[4]  The "recent" (*i.e.*, less than 3 years) Group will receive more than the "older" (*i.e.,* more than 3 years) Group.  If approved as proposed, after counsel fees and administrative expenses, each Class Member in Group A (PA) stands to receive a

---

[4]     "If differences exist between 'the likelihood of ultimate success' for different plaintiffs 'it is appropriate to weight the distribution of the settlement … in favor of plaintiffs whose claims comprise the set that was more likely to succeed.'"  *See* NEWBERG ON CLASS ACTIONS § 12:35 (quoting *In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd* 117 F.3d 720 (2d Cir. 1997)).

net cash payment of about $753.00, with each in Group B (NY "recent") receiving about $609.00, and each in Group C (NY "older") receiving about $209.00. (Exhibit "1", Sett. Agreement at 2.06(vii)).  If the Class Member is also in a Subclass, having been sent a defective post-auction Deficiency Notice, she is entitled to an additional amount ranging from $62 to $25.  (Id.).

### III.    QUESTION PRESENTED

Whether the Court should make a preliminary determination of class certification for settlement purposes, grant preliminary approval of the proposed class action settlement, set a date for final approval, and order that Notice be issued to the Class?

**Suggested Answer: YES**

### IV.    LEGAL ARGUMENT

#### A. The Elements for Class Certification are Met

"[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (internal quotation marks omitted)).  At this stage, the Court is to make "a 'preliminary determination' on class-action certification for the purposes of issuing notice of settlement ..." *In re NFL Players Concussion Injury Litig.*, ---F.3d ----, 2014 WL 7331936, *10 (3d Cir. Dec. 24, 2014).  After notice is issued, and at the final

approval stage, the district court is to apply a rigorous analysis of the Rule 23 elements, while mindful of the strong judicial policy in favor of class action settlements. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013).

Routinely, the four Rule 23(a) requirements are described as "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014). In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Wallace v. Powell,* 301 F.R.D. 144, 154 (M.D. Pa. 2014). Certification here is sought under Rule 23(b)(3), which also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," such that "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

It bears note that similar challenges to lender repossession practices under the UCC have been routinely certified as class actions in Pennsylvania and across the country. *See e.g., Cosgrove v. Citizens Auto Fin., Inc.*, 2011 WL 3740809 (E.D. Pa. Aug 25, 2011) (certified for settlement class); *McCall v. Drive Financial*, 2009 WL

14

8712847 (certified on contest); *Spry v. Police & Fire Fed. Credit Union,* Phila.

C.C.P. No. 1109-000007 (settlement class; Final Approval dated Oct. 8, 2013).[5]

### 1. **Rule 23(a)(1) – The Class is Sufficiently Numerous**

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class

be "so numerous that joinder of all members is impracticable." *Generally,* a class of

more than 40 satisfies the numerosity requirement. *Stewart v. Abraham,* 275 F.3d

220, 226-27 (3d Cir. 2001); *Logory v. Co. of Susquehanna,* 277 F.R.D. 135, 140

(M.D. Pa. 2011).

Here, the Class is broken down into three Groups of Class Members based on

home state and applicable statute of limitations.  (Sett. Agreement, ¶ 2.06(x)).

| Class State | Class Size | Sub-Class Size |
|---|---|---|
| Pennsylvania | 832 | 652 |
| New York "newer" September 2011 to 2013 | 1024 | 376 |
| New York "older" 2008 to August, 2011 | 1100 | 842 |

---

[5]     *See also e.g. Hartt v. Flagship Credit Corp.,* 2010 WL 2736959, 72 UCC
Rep.Serv.2d 697 (E.D. Pa. July 8, 2010) (later proceeding and settlement class and
Final Approval dated Apr. 5, 2011) (Pennsylvania federal court certified settlement
class of Texas consumers for violation of notice requirements); *Walczak v. Onyx
Acceptance Corp.*, 850 N.E.2d 357 (Ill. Ct. App. 2d Dist. 2006) (affirming
certification of class of motor vehicle buyers in action against finance company with
respect to repossession and deficiency misconduct); *Chisolm v. Transouth Fin.
Corp.*, 194 F.R.D. 538, 557-69 (E.D. Va. 2000) (certifying class and subclasses
against financing company for violations of UCC notice requirements in alleged car
churning scheme).

The parties agree on the size of the Class and Sub-Classes.   The Class of Pennsylvanians and the two groups of New York consumers, are all sufficiently numerous to satisfy Rule 23(a)(1).

### 2. **Rule 23(a)(2) – The Bank's Standard Form Repossession Notices Present Common Issues of Law and Fact**

Turning to the second component of Rule 23(a), "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (citations omitted).   A putative class satisfies the commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez*, 726 F.3d at 382. "One common question of law or fact is sufficient to satisfy the requirements of Rule 23(a)(2)." *In re Chocolate Confectionary Antitr. Litig.*, 289 F.R.D. 200, 216 (M.D. Pa. 2012) (*quoting In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n. 10 (3d Cir. 2009)).

Here, the question of the form notices' legality is the same for every member of the Class. And there are multiple questions of law or fact common to the Class that can be answered in the same proceeding.   These include:

(a)    Whether Plaintiff and the Class obtained vehicle financing through Community Bank and pledged the vehicle as collateral;

(b)    Whether Community Bank repossessed the financed vehicle or ordered it repossessed;

(c)     Whether Community Bank failed to send the notice of disposition in the form and manner required under the UCC after repossessing a vehicle;

(d)     Whether Community Bank failed to send the deficiency calculation in the form and manner required under the UCC (as to Sub-Classes); and

(e)     The uniform statutory damages under the UCC provided for such misconduct.

Standardized conduct towards members of the proposed class such as mailing (allegedly) improper form letters or documents, generally satisfies the commonality requirement.  *See Cosgrove v. Citizens Auto. Fin., Inc.,* 2011 WL 3740809, at *4 (E.D. Pa. Aug. 25, 2011) (repo notice class); *Chakejian v. Equifax Inf. Srvs., Inc.,* 256 F.R.D. 492, 497 (E.D. Pa. 2009); *Jordan v. Commw. Fin. Sys., Inc.,* 237 F.R.D. 132, 138 (E.D. Pa. 2006) ("Because [plaintiff's claims] are based entirely upon the uniform, non-individualized content of defendants' standardized debt collection letters, [the claims] are factually and legally common to the proposed classes."). The Class readily meets the threshold for commonality.

### 3.   Rule 23(a)(3) – Typicality is Met as Plaintiffs Press the Same Claim as Every Member of the Class

Rule 23(a)(3) "typicality" and commonality are closely related and tend to merge.  *Wallace,* 301 F.R.D. at 155.  A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other

Class Members and his or her claims are based on the same legal theory. *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir.1994).

Typicality is met in a UCC repo notice class case as the plaintiffs "suffered harm as a result of this same classwide conduct that injured the absentee class members." *Cosgrove*, 2011 WL 3740809, at *4. Here, the claims of the named Plaintiff and the Class all arise from Community Bank's use of an improper form Repossession Notice and Deficiency Notice sent after repossession of Class Members' vehicles. The question of the illegality or legality of these form Notices will not vary among Class Members – either the Notices meet the UCC's requirements or they do not. *Id.; McCall*, 2009 WL 8712847 at p. 5; *Cubler*, 83 A.3d at 236-7 (reciting the UCC notice requirements). As with the related requirement of commonality, claims arising from a form document generally give rise to typicality. *See e.g. Jordan*, 237 F.R.D. at 138-39.

The statutory damage formula is a question of simple math, assuming the common liability question is resolved in favor of the Class. 13 Pa. C.S. § 9625(c)(2); *McCall* at p. 3. From Community Bank's records, one would only need to add the "finance charge" and 10% of the "amount financed" on each of the Class Members' financing contracts to calculate statutory damages. For example, Courtney Bellomo's contract reflects that the finance charge is $2,205, and the amount financed $7,394. Her full statutory damages are readily calculable: $2205 + $739 =

18

$2944.  While the cash component has been negotiated for settlement purposes, the formula is uniform.  (*See* Exhibits "2", "8", "9", named Plaintiffs' contracts).  *See In re Community Bank of N. Va.*, 418 F.3d 277, 305 (3d Cir. 2005); *In re Chocolate*, 289 F.R.D. at 217 (differences in damage calculations do not impede typicality).

### 4.  Rule 23(a)(4) – Plaintiffs and Class Counsel are Adequate

Rule 23 also requires that the named plaintiff provide fair and adequate protection for the interests of the Class.  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012); *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008).

Plaintiffs Brennan, Colino and Bellomo are represented by three law firms, Flitter Lorenz, P.C., Kelley Polishan Walsh and Solfanelli, LLC and Barrett Wylie, LLC.  The Flitter Lorenz firm is experienced in the prosecution of consumer class actions in general and is exceptionally experienced in the prosecution of UCC Article 9 repossession cases specifically, having litigated the seminal *McCall, Cubler* and *Cosgrove* matters, among others, and the firm's lawyers regularly present and write on repossession law in Pennsylvania.  (See Certifications of Cary L. Flitter and Andrew M. Milz, Exhibits "10" and "11" hereto).  M. Scott Barrett has been a member of the New York bar for over 30 years and has been appointed

19

as Class Counsel or co-counsel in dozens of cases across the United States involving consumer rights, mortgage litigation, pension/ERISA litigation, and other matters. (See Barrett Certification, Exhibit "12").   Timothy Polishan has been a member of the bar of this Court for over 18 years and has represented clients in complex civil and criminal litigation in this Courthouse and elsewhere.   (See Polishan Certification, Exhibit "13").   In sum, Plaintiffs' counsel is qualified, experienced and generally able to conduct the proposed litigation. *See e.g. Harlan v. Transworld Sys.,* 302 F.R.D. 319, 329 (E.D. Pa. 2014) (approving counsel's qualifications); *Cosgrove*, 2011 WL 3740809 *9 (E.D. Pa. Aug. 25, 2011) (same).

There is also nothing to suggest that Plaintiffs Brennan, Colino or Bellomo have any interest antagonistic to the Class.  Each has been prepared to vigorously pursue this lawsuit on behalf of the Class designated in the Amended Complaint. Ms. Brennan and Ms. Bellomo attended the mediation session in Philadelphia and stayed overnight for that purpose, while Mr. Colino remained available by telephone. There are no individualized issues, for example, of reliance or intent, or defenses unique to these Plaintiffs.  Given the identical nature of the claims and class damages between the Plaintiffs and the Class Members, there is no potential for conflicting interests in the Class action. *See Wallace,* 301 F.R.D. at 156; *Allen*, 249 F.R.D. at 180.

### 5. __Rule 23(b)(3) – Common Questions of Law or Fact Predominate__

Rule 23(b)(3) requires that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Thus, "[a] plaintiff must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Wallace*, 301 F.R.D. at 157 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012)).

As Judge Schiller observed, the common proof is that all class members "received deficient repossession notices or no notices at all, all of which can be established with available documentary evidence." *Cosgrove,* 2011 WL 3740809, at *5. Moreover, "the calculation of damages under [UCC Section] 9625(c) is uniform and may be calculated on a classwide basis." *Id.*

Of course, settlement removes the need for even the statute of limitations question to be answered definitively, preserving some valuable recovery for all

New York Class Members.[6]

### 6. <u>Rule 23(b)3 – A Class Action is Superior to Other Available Methods to Resolve this Controversy</u>

Superiority is the final element of class certification pursuant to Rule 23(b)(3). *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998). The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *MERSCORP,* 298 F.R.D. at 216. When evaluating superiority, it is proper for a court to consider the "… inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 626 (E.D. Pa. 1994).

This forum is particularly appropriate for addressing the claims of the Plaintiff and the putative Class. Nearly 3000 individual actions for the relief sought here could naturally result in inconsistent interpretations of the UCC's notice requirements and the Code's statutory damage provisions, subjecting Class

---

[6]     Both Ms. Bellomo and Mr. Colino have New York claims that arose outside the three year period. If the Bank were correct about the three year statute of limitations applying, then potentially all of the New York Plaintiffs and Class Members are impacted. The settlement matrix takes this reality into account, with some reduction for the New York claims (over Pennsylvania) in light of the limitations defense in issue.

Members to greatly unequal treatment. Here, a class action efficiently ensures that one decision on the applicable law and damages applies to all.

To Plaintiff's knowledge, no putative Class Members have instituted any individual actions against Community Bank involving the type of claims set forth in the Complaint.[7] Moreover, the UCC section invoked is not a "fee shifting" statute. 13 Pa. C.S. § 9625; N.Y. U.C.C. Law § 9-625. Therefore any consumer seeking to bring an individual action would have to pay his or her own attorney fees out of pocket, a prospect not likely feasible on an individual basis. Overall, members of the putative Class will benefit considerably by proceeding on a Class basis. *Lake,* 156 F.R.D. at 626-27.

As set forth above, the Court can readily make the preliminary determination that the requirements for Rule 23 class certification are met here, and approve the issuance of Notice.[8]

---

[7]    As noted in fn 1 above, on May 29, 2014, a class complaint was filed by Nicole Urban. Co-counsel for the Brennan Plaintiffs (Polishan) spoke to co-counsel for Ms. Urban (Rothenberg) from the JAMS mediation to invite *Urban's* joinder. It was Brennan's understanding that there was agreement to resolve both cases. However, Urban ultimately did not agree that it was in her best interest to join in the substantive agreement, and is therefore not a signatory hereto.

[8]    It appears that in light of *In re NFL Players*, 2014 WL 7331936, district courts in the circuit are no longer to "conditionally certify" classes or "certify for purposes of settlement." *Id.* at *10. Rather, the district court is to make a "preliminary determination" on class action status. This permits notice to issue to the class, and the court actually certifies, or not, following the fairness hearing. *Id.* In any event, all the elements for Rule 23 class certification are readily met here.

### B.   The Settlement Should be Preliminarily Approved

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval.  Fed. R. Civ. P. 23(e); *In re Flonase Antitr. Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013).   The procedure for approval of a proposed Class Action Settlement involves a two-step process: (1) a "preliminary approval" order; and (2) a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the proposed settlement has been held.  *See* MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ("MCL") §§ 21.632; *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008).   Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the Class and falls within the range of possible approval, preliminary approval is warranted.  *Id.* at 439; *MCL* 4th § 21.632.

There is a presumption in favor of settlement litigation.  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).  "This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *Id.*

1. **The Settlement was Reached After Arms-Length Negotiations**

The procedural history of this case reflects considerable and significant motion practice, and is detailed in Section II.B *supra*.  After a day-long mediation in Philadelphia with U.S. Magistrate Judge (Ret.) Diane Welsh, the parties reached a settlement.  The vigorous litigation, the mediation, the settlement negotiations, and the confirmatory discovery resulted in an Agreement which was the product of serious, informed, non-collusive negotiations among counsel.

2. **The Settlement is Fair and Contains no Deficiencies**

If this settlement is approved (and Class Counsel fees and costs allowed as requested) each Class Member can expect to receive a substantial cash award, and other valuable relief.  Cash payments to three Class Member "Groups" are based on risks associated with the different states' statute of limitations (a major issue in this litigation).  *See* pp. 11-12, *supra*.  If approved as proposed, class relief breaks down as follows:

<u>Class Relief (Repossession Notice)</u>

Group A (PA): **$753.00**

Group B (NY "newer" September 2011 - September 2014): **$609.00**

Group C (NY "older" 2008 - August 2011): **$287.00**

<u>Additional Subclass Relief (Deficiency Notice)</u>

Group A (PA): **$ 62.00**

Group B (NY "recent"): **$ 52.00**

Group C (NY "older"): **$ 25.00**

Each Class Member will also have the option to have any post auction Auto Loan Deficiency claim **forgiven in its entirety.** (*See* Sett. Agreement at ¶ 2.13). The aggregate deficiency claimed is $16,326,236. The average deficiency balance claimed over all 2956 Class Members is approximately $5,523.00 per consumer. Owing to the IRS' present position on cancellation of indebtedness, debt forgiveness will be at the sole election of the class member, and not automatic.[9]

The Agreement provides that no new lawsuits may be filed to seek to collect deficiency balances against Class Members upon signing the Agreement in January of 2015 (except if a statute of limitation is running), but the Bank may sue in the future if a Class Member opts out or chooses not to waive his deficiency balance. (Sett. Agreement, ¶ 2.10(a), (c)).

---

[9]     A cancellation of indebtedness can give rise to "income" to the taxpayer (here, the Class Members) under the Internal Revenue Code. *See* 26 C.F.R. § 1.6050P. In 2012, the IRS changed its position and held in a Private Letter Ruling that forgiveness of repossession deficiency debt alleged due falls under Section 1.6050P and may constitute "income" to the borrower whose deficiency claim is forgiven. *See* I.R.S. P.L.R. 201240001 (Oct. 5, 2012) (Ex. "14" hereto). Because debt forgiveness would ordinarily result in issuance of an IRS 1099C form – and a resultant tax obligation that is potentially large (and non-dischargeable) for the class member – the debt waiver is optional, at the election of the Class Member who believes that forgiveness is beneficial in his particular circumstances. (*See* Sett. Agreement, ¶2.13; *see also* Election Form, Exhibit "1-B").

For those who elect a waiver of deficiency, there will be no further collection activity. And, importantly, all Class Members (except the few who reclaimed their vehicle pre-auction and reinstated their account to performing status) will have the Bank's tradeline removed entirely from their credit reports. (*See* Sett. Agreement, ¶ 2.09(a)). This sort of credit report correction is extremely valuable – if perhaps difficult to quantify. *See Cosgrove,* 2011 WL 3740809, *7 (correction of negative credit entries adds considerable value to the settlement); *Ciccarone v. B.J. Marchese, Inc.,* 2004 WL 2966932 at *4 (E.D. Pa. Dec. 22, 2004) (same).

In some ways, this settlement is *more favorable* than could be achieved through a successful trial. While the Class could potentially recover more in cash for statutory damages, the deficiency issue still needs to be dealt with, and it is an open question whether a court *could* award the equitable-type relief of satisfaction of state-court judgments. *See* 13 Pa. C.S. § 9625(c)(2); N.Y. U.C.C. Law § 9-625(c)(2). The UCC makes no provision at all for credit reporting correction. *Id.*

The representative service awards and attorney fee request are fair and reasonable considering the quantum of relief obtained and the effort expended to obtain it. The $5,000.00 individual service awards to each of the three named Plaintiffs comport with similar awards in representative actions in this Circuit. *See e.g. Craig v. Rite Aid Corp.,* 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013)

(awarding $7,500 and $5,000, collecting cases); *Cosgrove*, 2011 WL 3740809, *10 ($7,500 to plaintiff in UCC repo notice class action).

Plaintiffs will also request attorney fees from the common fund of cash in the amount of $1,092,000.00 plus litigation expense reimbursement not to exceed $20,000.00. (*See* Sett. Agreement, ¶ 2.12). Utilizing aggregate deficiency balances waivable of $16,326,236 plus the cash of $2,800,000 yields $19,126,236. The fees requested will represent less than 6.7% of the value of monetary relief to the class (before valuing the credit repair) and about 39% of the cash.[10]

### 3.  <u>The Settlement is Within the Range of Reasonableness</u>

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiff would recover if successful, discounted by the risks of not prevailing. *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009).

Statutory damages under the UCC § 9625(c)(2) are computed by adding the finance charge to 10% of the principal obligation. To tally the amount of damages

---

[10]    Plaintiffs will move for an award of Class Counsel fees at the time of seeking final approval, when the reaction of the noticed Class can be measured. *See* Fed. R. Civ. P. 23(h). Plaintiffs only discuss fees here briefly to give context and a basis for the notice's estimate of net cash to Class Members. Plaintiffs also point out that the claims pled do not carry statutory counsel fee provisions and Class Counsel fees will be sought purely by the common-fund approach.

available to a completely successful class at trial, one must determine the statutory damage amount for each Class Member; in this case that amount sums to approximately $19,587,802.00.   Importantly, this number reflects cash relief only – if Plaintiff were to prevail at every phase.   As noted, the Code makes no provision for credit correction or satisfaction of judgments against Class Members, and the deficiency claims would not necessarily disappear.

Considering the risks associated with a lengthier litigation and trial, and the uncertainty over the New York period of limitations, and the equitable relief, this settlement is a real win for the Class.   The value of the proposed settlement is well within the range of reasonableness.

### 4. <u>Class Counsel Recommends the Settlement</u>

Class Counsel has extensive experience in class action litigation in the areas of consumer protection law and Article 9 of the UCC, and are thoroughly familiar with the factual and legal issues of the case. (*See* Exhibit "10", Flitter Cert. at ¶   22 (representative cases)).   Counsel evaluated some 135 loan files with over 16,000 pages of documents produced by Defendant which allowed counsel to develop a framework for class size and an understanding of class-wide damages.   Counsel deposed a corporate witness from the Bank at its upstate New York offices. (Id.) Additionally, counsel have analyzed each of Defendant's arguments against the merits of Plaintiffs' claims and whether the case could be certified on contest, and

have thus developed an appreciation about the time and effort that future, prolonged litigation would entail.  (Id.).  Settlement provides substantial cash, debt waiver at the sole discretion of the consumer involved, and equitable-type relief now, not at some uncertain future date that is perhaps years away.

For all these reasons, Class Counsel commend the settlement for preliminary approval and issuance of Notice to the Class.

### C. Class Notice

With the Settlement Agreement and this Motion, Plaintiffs submitted a proposed form of Notice to the Class.  (Doc. No. 72-1, pp. 67-78).  *See* Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1).  A clean copy of the proposed Class Notice is appended hereto as Exhibit "15".  (Of course, the blanks for dates will be filled in before mailing).  In plain-English, the notice informs Class Members regarding (a) formation of the Class; (b) the Class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to Class Counsel; (f) the agreed individual settlement payment to representative Plaintiffs Brennan, Colino and Bellomo; (g) the Class Member's right to opt-out, and thereby not participate in the proposed settlement; (h) Class Member's right to appear and object to the proposed settlement; (i) the time, date

and location of the final approval hearing; and (j) Class Member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The Class Notice also clearly sets forth that any Class Member with an alleged Auto Loan Deficiency may elect to have that deficiency forgiven. But because this may create federal income tax ramifications for the Class Member (as debt forgiveness may be treated as "income"), *see* n.9, *supra*, the Class Notice specifically raises this issue and suggests the Class Member consult a tax advisor should there be a question or concern about the election. (*See* Doc. No. 72-1, Class Notice, p. 72 at Section 8 and pp. 73-74 at Section 11). The Notice will include a prominent form which the Class Member can submit to obtain the deficiency forgiveness remedy. (*See* Doc No. 72-1, Election Form, p. 65).

The proposed Notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices. The Notice is clear and reader friendly, and provides Class Members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt-out, or object to any aspect of the proposed settlement. *Wallace,* 301 F.R.D. at 159. Plaintiff proposes Notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best Notice practicable under the

circumstances.  *See id.; Perry v. Fleet Boston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005).

Administration of Notice, opt-outs, objections and settlement checks is proposed to be handled by Strategic Claims Services (www.strategicclaims.net), an experienced claims administrator based in Media, PA.   (Exhibit "1", Sett. Agreement. ¶ 1.25).  The Administrator will use both the postal service and Accurint or an equivalent consumer information database to find the last and best addresses for all Class Members.

## V.   **CONCLUSION**

The proposed settlement puts an end to this litigation, and *prima facie* falls well within the range of a fair, reasonable and adequate award.  Further, the proposed settlement Class meets the requirements of Rules 23(a) as well as Rule 23(b)(3). Preliminary approval should be granted, and the Class Notice approved and directed to be mailed in the form proffered.

Date:  1/20/15                                         /s/ Cary L. Flitter
                                                       CARY L. FLITTER
                                                       THEODORE E. LORENZ
                                                       ANDREW M. MILZ
                                                       FLITTER LORENZ, P.C.
                                                       450 N. Narberth Avenue, Suite 101
                                                       Narberth, PA 19072
                                                       (610) 822-0782

TIMOTHY POLISHAN
EUGENE C. KELLEY
KELLEY POLISHAN & SOLFANELLI, LLC
259 South Keyser Avenue
Old Forge, PA 18518
570-562-4520

M. SCOTT BARRETT
*(Admitted Pro Hac Vice)*
BARRETT WYLIE, LLC
Showers Plaza - P.O. Box 5233
320 West 8th Street - Suite 100
Bloomington, IN 47407-5233
(812) 334-2600
**Attorneys for Plaintiffs and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, and COURTNEY BELLOMO, individually and on behalf of all others similarly situated, <br> Plaintiffs, <br><br> vs. <br><br> COMMUNITY BANK, N.A. <br> Defendant. | NO. 13-CV-02939 <br><br><br> JUDGE MANNION <br><br> CLASS ACTION |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, hereby certify that a copy of Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Settlement has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to:

Jonathan B. Fellows, Esquire
Suzanne O. Galbato, Esquire
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202

Jane T. Smedley, Esquire
Joseph E. Kluger, Esquire
HOURIGAN, KLUGER & QUINN, P.C.
600 Third Avenue
Kingston, PA 18704

**Attorneys for Defendant**

1

A copy of this Memorandum shall be sent this date, via email to:

Richard Shenkan, Esquire
SHENKAN INJURY LAWYERS
6550 Lakeshore Drive
West Bloomfield, MI 48323

Howard A. Rothenberg, Esquire
345 Wyoming Avenue, Suite 210
Scranton, PA 18503

**Attorneys for Plaintiff, Nicole Urban**


Date:  1/20/15                                    */sl Cary L. Flitter*_____
                                                 CARY L. FLITTER


Said document is available for viewing and downloading from the ECF system.


Date:  1/20/15                                    */s/ Cary L. Flitter*_____
                                                 CARY L. FLITTER


## CERTIFICATE OF CONCURRENCE

I hereby certify that I sought concurrence of Defendant Community Bank, NA, and the Defendant concurs with the relief sought in Plaintiffs' Motion for Preliminary Approval.  (Doc. No. 72).


Date:  1/20/15                                    */s/ Cary L. Flitter*_____
                                                 CARY L. FLITTER

## <u>LOC. RULE 7.8(b) CERTIFICATION</u>

I hereby certify that the foregoing brief, at 8306 words, exceeds 5000 words. Plaintiffs have sought leave to file a brief in excess of the local word limits.

Date:  1/20/15

*/s/ Cary L. Flitter*
CARY L. FLITTER