# EXHIBIT "1"

<u>**AMENDED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**</u>

Subject to Final Approval by the Court and in exchange for the good and valuable consideration set forth herein, this Class Action Settlement Agreement and Release dated as of _March 25_, 20_15_ (the "**Agreement**") is entered into by and between **CAROL BRENNAN, COURTNEY BELLOMO and ANTHONY COLINO** (the "**Plaintiffs**"), on behalf of themselves and the Members (defined herein), and **COMMUNITY BANK, N.A.** ("**Defendant**") (individually, the Plaintiffs and Defendant are sometimes referred to as a "**Party**" and collectively, the "**Parties**"), for the purpose of settling the Litigation (defined hereafter) with prejudice as to all Parties, providing a Settlement Fund (defined herein) and Incentive Award (defined herein) to Plaintiffs and the Members, and providing Defendant with the Released Claims (defined hereafter) upon the terms and conditions set forth herein.

**B A C K G R O U N D:**

**WHEREAS**, Plaintiffs Brennan, Bellomo and Colino filed an Amended Class Action Complaint (the "**Complaint**") in the United States District Court for the Middle District of Pennsylvania in a matter fashioned *Carol A. Brennan, Anthony Colino and Courtney Bellomo, individually and on behalf of all others similarly situated v. Community Bank, N.A.* Docket No. 13-cv-2939 (the "**Litigation**"), which alleged, *inter alia*, violations of Pennsylvania and New York's Uniform Commercial Code with respect to certain Repossession Notices and Deficiency Notices mailed out to Pennsylvania consumers and New York consumers by Defendant after the repossession of their vehicles; and

**WHEREAS**, Defendant filed an Answer to the Complaint and in which it denies the material allegations made and denies any and all liability with respect to the allegations and claims

previously and currently alleged in the Litigation and further denies that the Member (defined hereafter) has suffered any damages or is entitled to any recovery; and

**WHEREAS,** Defendant filed class-wide Counterclaims in the Litigation; and

**WHEREAS,** Brennan opposed said Counterclaims; and

**WHEREAS,** contested issues of both law and fact exist concerning the allegations and claims made in the Complaint and the Class Counterclaim pled; and

**WHEREAS,** Class Counsel have conducted an extensive investigation into the facts and law relating to the Litigation, including the taking of a corporate deposition of Defendant's representative, and a review of some 135 loan files and over 16,000 pages of documents produced by Defendant; and

**WHEREAS,** Defendant asserts that the period of limitations applicable to New York UCC claims is three years pursuant to CPLR 214(2) and that the period of limitations applicable to Pennsylvania UCC claims is two years, pursuant to 42 Pa. C.S.A. § 5524(5), while Brennan has pled a six year Class Period, and

**WHEREAS,** on September 30, 2014, a Mediation was held at JAMS-Philadelphia before the Hon. Diane Welsh (Ret.) at which point the Parties orally agreed upon a settlement in principle of the Litigation, subject to further and confirmatory discovery, and such discovery has been taken, to the satisfaction of Plaintiffs; and

**WHEREAS,** Plaintiffs, Class Counsel (defined herein), Defendant, and Defendant Counsel (defined herein) have determined to execute this Agreement and intend to urge its approval by the Court after consideration of the following substantial benefits that ending the Litigation, subject to the provisions of this Agreement, would bestow upon the Parties as described below:

2457887.1 3/18/2015

(i)      Defendant will pay the aggregate sum of Two Million Eight Hundred Thousand Dollars ($2,800,000.00) (the "**Settlement Fund**") into an account (the "**Settlement Account**") at PNC Bank, N.A. ("**PNC**"), a federally-insured financial institution, within fourteen (14) days following Preliminary Approval of the Settlement by the Court;

(ii)     The Settlement Fund is for the benefit of the Members and for purposes of implementing this Settlement, which Settlement Fund will be used to:

(A)      Pay Class Counsel fees and costs as approved by the Court; and

(B)      Pay the costs of the Class Notice and administration of the Settlement, as approved by the Court; and

(C)      After payment of (A) and (B), provide monetary relief to the Members on a pro rata basis (¶¶ (A), (B), and (C) are the "**Settlement Fund Purposes**"); and

(iii)    Plaintiffs may apply to the Court for class representative service awards of Five Thousand Dollars ($5,000.00) each (aggregate Fifteen Thousand Dollars ($15,000.00)) (the "**Incentive Award**") to be paid from the Settlement Fund, subject to Court approval;

(iv)     Defendant will make a written request to Experian, Equifax, and TransUnion (the "**Consumer Reporting Agencies**") and upon request of Class Counsel, provide copies of the written requests to Counsel for the Consumer Reporting Agencies to delete entirely any tradeline from the Members' credit files relating to the Retail Installment Sales Contracts or vehicle loans for Class Members issued or held by Defendant;

(v)      Plaintiffs and the Members will release the Released Claims against Defendant; and

(vi)     ¶¶ (i) — (v) represent the "**Settlement**" among the Parties, as more fully set forth below.

2457887.1 3/18/2015

**WHEREAS**, the Parties have fully analyzed and evaluated the merits of the Parties' contentions and this Settlement, after taking into account the foregoing along with the substantial risks, the burden, expense, and uncertainty of continuing the Litigation, and for the purpose of putting to rest the controversies engendered by the Litigation are satisfied that the provisions of the Settlement are fair, reasonable, adequate, and equitable, and that ending the Litigation, subject to the Settlement, is in the best interests of the Parties; and

**WHEREAS**, defined terms in the Background shall have the meaning set forth hereafter in this Agreement and as used herein, the plural of any defined term includes the singular thereof and the singular of any defined term includes the plural thereof as the case may be.

**WHEREAS**, the Parties and their counsel agree to recommend approval of this Agreement to the Court and to any regulatory authority responding to the proposed settlement per The Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA"), 28 U.S.C. § 1715.

**NOW THEREFORE**, intending to be legally bound and in consideration of the covenants and agreements set forth herein, the Plaintiffs and Defendant agree to the ending of the Litigation, subject to Court approval of the Settlement and the provisions contained in this Agreement, so that the Litigation is settled as follows:

I.    **DEFINITIONS**

1.01.   "**Agreement**" means this Class Action Settlement Agreement and Release.

1.02.   "**Background**" means the provisions of this Agreement included in the Background and the Background is incorporated into the body of this Agreement.  Plaintiffs and the Members have challenged the commercial reasonableness of the repossession and disposition of their motor vehicles and assert there is no Deficiency Balance due.

2457887.1 3/18/2015

1.03.   **"Cash Members"** means those Members whose Class Notice is not returned as undeliverable within the meaning of ¶ 4.02.

1.04.   **"Class Counsel"** means Cary L. Flitter, Theodore E. Lorenz, Andrew M. Milz and the law firm of Flitter Lorenz, P.C.; Timothy P. Polishan of Kelley Polishan & Solfanelli, LLC; and M. Scott Barrett of Barrett Wylie, LLC.

1.05.   **"Class Notice"** is defined in ¶ 4.02.

1.06.   **"Class Period"** means the period from October 30, 2007 to September 30, 2014.

1.07.   **"Consumer Reporting Agency"** or **"CRA"** is as defined in the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f), popularly referred to as a "Credit Bureau," examples of which are TransUnion, Equifax and Experian.

1.08.   **"Defendant"** includes Defendant Community Bank, N.A., and its affiliates, subsidiaries or parent companies and/or divisions, and all of its respective officers, directors, employees, associates, agents, accountants, attorneys, predecessors, successors and assigns, any persons or entities involved in the issuance of the Statutory Notices, the sale of any repossessed motor vehicles hereunder, the conditions of reinstatement and/or redemption, the collection of deficiencies allegedly owed by Members, or the reporting of these Deficiency Balances to any credit reporting agencies, including any service provider, servicer, assignee or holder, any trustee, trust or owner of any motor vehicle installment sale contract, and each of their affiliated, subsidiary or parent companies and/or divisions, and all of their respective officers, directors, partners, insurers, employees, associates, trustees, agents, accountants, attorneys, predecessors, successors and assigns.

1.09.   **"Defendant Counsel"** is Bond, Schoeneck & King, PLLC.

1.10.  "**Deficiency Balance**" means the account balance alleged remaining after the repossession and disposition of a Member's vehicle and the application of the proceeds of the sale to that person's account, plus the accrued interest and other charges, minus any payments made by a Member post-repossession, but does not include Members who reinstated their account and had their repossessed vehicle returned to the Member.  The amount to be reflected in any 1099C for cancellation of indebtedness for any Deficiency Balance is addressed at ¶ 7.11 below.

1.11.  "**Deficiency Notice**" means an explanation of calculation of the Deficiency Balance or surplus identical in content to or substantially similar to the Notice sent by Defendant to the Plaintiff Brennan dated May 25, 2011, a copy of which was attached to the Brennan Amended Class Complaint as Exhibit B.  The term also refers to other Deficiency Notices in use by Defendant during the Class Period.

1.12.  "**Distribution Date**" means the date ten (10) business days after the Final Approval.

1.13.  "**Effective Date**" means the date on which Final Approval has occurred.

1.14.  "**Election Form**" means an Election Against Waiver of Deficiency Balance within the meaning of ¶ 2.13.

1.15.  "**Final Approval**" means the date of a Final Order entered by the Court approving this Agreement and (a) when the applicable period for filing an appeal of such Final Approval shall have expired without an appeal having been filed; or (b) if an appeal is taken, upon entry of an Order affirming the Final Approval and when the applicable period for filing an appeal or petition for allowance of such affirmance of the Final Approval shall have expired without a further appeal or petition having been filed, or upon entry of any Stipulation dismissing any such appeal with no right of further prosecution of the appeal; or (c) if an appeal is taken from any decision

2457887.1 3/18/2015

affirming the Final Approval, upon entry of an order in such appeal finally affirming the Final Approval or dismissing such petition for allowance without right of further appeal, or upon entry of any stipulation dismissing any such appeal with no right of further prosecution of the appeal.

1.16.  "**Final Order**" means the Order finally approving the Settlement.

1.17.  "**Incentive Award**" or "**Service Award**" means the sum to be awarded to Plaintiffs, subject to approval of the Court, as an award for the time and effort bringing and prosecuting this Litigation, and involvement in the process of settlement and Court approval. The parties have agreed that Plaintiffs may seek $5,000.00 each ($15,000.00 aggregate) from the Class Settlement Fund, subject to Court approval.

1.18.  "**Lead Counsel**" means Flitter Lorenz, P.C.

1.19.  "**Member**" or "**Members**" shall, for purposes of settlement, be grouped into Groups A, B & C.

Group "A" means all persons who:

(a)  Purchased a motor vehicle primarily for consumer use and who financed the vehicle through Defendant, or whose Retail Installment Sales Contract was assigned to Defendant;

(b)  From whom Defendant, as secured party, repossessed the vehicle or ordered it repossessed;

(c)  Had a Pennsylvania address as of the date of repossession; and

(d)  Were not sent a Repossession Notice which:

(i)  Provided a minimum of 15 days' notice of sale;

(ii)  Specified whether the vehicle would be sold at a public or private sale;

2457887.1 3/18/2015

(iii)     Stated a description of any liability of the borrow for a potential Deficiency Balance;

(iv)     Stated that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting; or

(e)     Were sent no written notice at all; and

(f)     For the period commencing October 30, 2007, through September 30, 2014; and

Group "B" means all persons who:

(a)     Purchased a motor vehicle primarily for consumer use and who financed the vehicle through Defendant, or whose Retail Installment Sales Contract was assigned to Defendant;

(b)     From whom Defendant, as secured party, repossessed the vehicle or ordered it repossessed;

(c)     Had a New York address as of the date of repossession; and

(d)     Were not sent a Repossession Notice which:

(i)     Provided a minimum of 15 days' notice of sale;

(ii)     Specified whether the vehicle would be sold at a public or private sale;

(iii)     Stated a description of any liability of the borrower for a potential Deficiency Balance;

(iv)     Stated that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting; or

(e)     Were sent no written notice at all; and

2457887.1 3/18/2015

(f)     For the period commencing July 15, 2011, through September 30, 2014; and

Group "C" means all persons who:

(a)     Purchased a motor vehicle primarily for consumer use and who financed the vehicle through Defendant, or whose Retail Installment Sales Contract was assigned to Defendant;

(b)     From whom Defendant, as secured party, repossessed the vehicle or ordered it repossessed;

(c)     Had a New York address as of the date of repossession; and

(d)     Were not sent a Repossession Notice which:

(i)     Provided a minimum of 15 days' notice of sale;

(ii)    Specified whether the vehicle would be sold at a public or private sale;

(iii)   Stated a description of any liability of the borrower for a potential Deficiency Balance;

(iv)    Stated that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting; or

(e)     Were sent no written notice at all; and

(f)     For the period commencing July 15, 2008, through July 14, 2011.

1.20.   **"Opt Out Period"** means the period ending forty (40) days after mailing of the Class Notice.

1.21.   **"Preliminary Approval"** of this Agreement means an Order of the Court pursuant to Fed. R. Civ. P. 23(e) preliminarily approving this Agreement and the Class Notice to be sent to the Members.

2457887.1 3/18/2015

1.22.  **"Released Claims"** means:

(a)     Any and all claims, demands, actions, causes of action, rights, offsets, suits, damages, lawsuits, liens, costs, losses, expenses or liabilities of any kind whatsoever, for any affirmative relief whatsoever, including monetary, injunctive, or declaratory relief, rescission, general, special, statutory, and punitive damages, as well as any and all claims for treble damages, penalties, attorneys' fees, costs or expenses, whether known or unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or vested, which any Member has had, now has, or will ever have pertaining to or arising from the repossession during the Class Period of any vehicle financed by Defendant or collection of sums under said vehicle loans or the retail installment sales contracts, the repossession and/or sale of any repossessed or surrendered motor vehicles, the commercial reasonableness of any notice, repossession and/or sale of any repossessed or surrendered motor vehicles, collection efforts by Defendant or its agents regarding any Deficiency Balances alleged to be due or owing following the sale of any repossessed or surrendered motor vehicles, the conditions of reinstatement and/or redemption or the reporting (before execution hereof) of repossession Deficiency Balances to any credit reporting agencies; and

(b)     Any alleged representations, misrepresentations, disclosures or incorrect disclosures, failures to disclose, acts or omissions, deceptions, acts of unconscionability, unjust enrichment, unfair business practices, breaches of contract, conspiracy, or violations of any unfair or deceptive trade practice statute, or any other body of case or statutory law or regulation, whether federal, state or local, and specifically including without limitation, the Pennsylvania Uniform Commercial Code, 13 Pa. C.S. § 9601 *et seq.*, the Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. § 601 *et seq.*, the Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. Ann. § 2270.1

2457887.1 3/18/2015

*et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1, the New York Uniform Commercial Code Law, § 9-601, et *seq* (McKinney), or New York General Business Law § 349 (McKinney) or any implementing regulations related to said repossession practices, repossession collection efforts, and any alleged damages or losses incurred in connection with the repossession or surrender of financed vehicles and/or the sale of any repossessed or surrendered vehicles that are the subject of the Lawsuit.

(c)    Notwithstanding Sec. 1.22 (a) and (b), in the event Defendant sues a Member who has elected not to take the offered debt waiver over any Claimed Deficiency Balance, the Member shall, by this release, be deemed to have given up all claims or defenses arising from any Statutory Notice, and claims to statutory and actual damages under Pennsylvania UCC § 9625 and 9628 or New York UCC 9-625 or 9-628.  At the defense of such collection suit, such sued Member shall not be barred from invoking other defenses to payment when used solely in a defensive capacity or as a recoupment or setoff to a suit for Deficiency Balance.

1.23.    **"Repossession Notice"** means a written notice of repossession of a vehicle as called for under the UCC identical in content to or substantially similar to the written statement sent by Defendant to Ms. Brennan dated April 6, 2011, a copy of which was attached to the Brennan Amended Class Complaint as Exhibit A (ECF 57, p. 24).

1.24.    **"Settlement Account"** means a bank account at PNC Bank (or other agreed financial institution) where the Settlement Fund will be held on deposit pending payments as called for under this Agreement.

1.25.    **"Settlement Administrator"** means Strategic Claims Services, Inc. (**"Strategic"**) which has been retained by the Class Counsel with consent of Defendant's Counsel for purposes

2457887.1 3/18/2015

of administering the Settlement Fund.  The Administrator shall be responsible for mailing proper Notice to the Class Members, and furnishing proper proof thereof.  If Strategic is unwilling or unable to serve for any reason, a substitute Settlement Administrator shall be agreed upon by the Parties or appointed by the Court.  By virtue of accepting such appointment, Strategic shall be deemed to submit itself to the jurisdiction of the United States District Court for the Middle District of Pennsylvania for purposes of this case.

1.26.  **"Settlement Fund"** means the aggregate settlement amount of $2,800,000.00 to be paid hereunder by Defendant Community Bank, N.A.

1.27.  **"Statutory Notice"** means any notification of default, repossession or sale, including a Notice of Right to Redeem Motor Vehicle, Notice of Sale, and any notification explaining or demanding payment of a Deficiency Balance pursuant to the Pennsylvania or New York Uniform Commercial Code or the Pennsylvania Motor Vehicle Sales Finance Act.

1.28.  **"Sub-Members"** means all Members of Group A, B or C who:

(a)     Were sent a Deficiency Notice that failed to substantially comply with the following:

(i)     State that future debits, credits, charges, including additional credit service charges or interest, rebates and expenses may affect the amount of the surplus or deficiency;

(ii)    Provide in the following order:

(A)     The aggregate amount of the obligation secured by the security interest under which the disposition was made, and if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, and a calculation thereof;

(B)     The amount of proceeds of the disposition;

2457887.1 3/18/2015

(C)     The aggregate amount of the obligations after deducting the amount of the proceeds;

(D)     The amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and attorney's fees secured by the collateral which are known to the secured party and relate to the current disposition;

(E)     The amount, in the aggregate or by type and types of credits, including rebate of interest or credit service charges, to which the obligor is known to be entitled; and

(F)     The amount of the surplus or deficiency;

(b)     Were sent no Deficiency Notice at all;

(c)     For the period co-terminus with their respective Class Period through September 17, 2012;

(d)     Who have not excluded themselves from the Settlement; and

(e)     Whenever this Agreement refers to Members, it shall also mean Sub-Members, unless otherwise specified.

## H.     <u>GENERAL TERMS OF THE SETTLEMENT</u>

2.01.   <u>Conditional Nature of Agreement</u>.  This Agreement, including all documents and pleadings referred to herein, is made for the sole purpose of attempting to consummate a settlement of the Litigation on a class-wide basis.  The Agreement is made in compromise of disputed claims. The Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims upon and subject to the terms and conditions set forth in this Agreement.  This Agreement must receive Preliminary Approval and Final Approval by the Court.  Accordingly,

2457887.1 3/18/2015

the Parties enter into this Agreement on a conditional basis that is subject to Preliminary Approval, the Final Approval of the Court, and to Defendant's right to void the Agreement under ¶ 3.07 herein.

2.02.   <u>Effect of Disapproval</u>.  In the event that there is no Final Approval of the Agreement for any reason, this Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever (except regarding the return of the Settlement Fund and Incentive Award), it shall not be referred to or utilized to establish liability, damages, nor suitability for class certification; and any negotiations, terms and entry of the Agreement shall remain subject to the provisions of Fed. R. Evid. 408.

2.03.   <u>Denial of Liability; No Admissions</u>.

(a)   Defendant denies the Released Claims.

(b)   Plaintiffs and the Members dispute the commercial reasonableness of Defendant's repossession practices including the legality of the Repossession Notice and the Deficiency Notice and disputes Defendant's entitlement to any Deficiency Balance.

(c)   Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession (i) by Defendant of the Released Claims and (ii) by any of the Members as to the validity or amount of any claimed Deficiency Balance.

(d)   Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action, proceeding, or suit to establish any liability or admission on the part of any Defendant.

(e)   The Parties expressly agree and represent that, in the event that Final Approval of the Agreement is not obtained, or any appellate court disapproves of the Order of

Final Approval that prevents the Agreement from becoming final and effective, no Party will use or attempt to use any conduct or statement of any other Party in connection with this Agreement or any effort to seek approval of the Agreement to affect or prejudice any other Party's rights in any ensuing suit.

(f)     The Defendant has agreed to resolve this Litigation through this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, the Defendant does not waive, but rather expressly reserves, all rights and defenses to challenge all Released Claims and any allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to challenge class action treatment on any grounds or assert any and all defenses or privileges.

(g)     In the event that this Agreement shall terminate without Final Approval, the Litigation shall revert to its status as it existed immediately prior to the date of the execution of the Agreement, and the Settlement Fund paid by Defendant shall be returned to Defendant within fourteen (14) days, except for any monies paid or due the Class Administrator for services rendered.

2.04.   Class Certification of Members.

For the purposes of the proceedings contemplated herein, the Parties stipulate and agree that the Litigation shall be certified as a Class Action for purposes of the Settlement, that Plaintiffs shall be certified as the Class Representatives, and that Class Counsel shall continue to serve as counsel to the Class.

2.05.   Preliminary Approval Order.   In connection with the application for Preliminary Approval of this Agreement, the Parties shall offer to the Court a proposed Order in the form

2457887.1 3/18/2015

annexed hereto as Exhibit A, *inter alia*, granting Preliminary Approval to this Agreement and permitting the sending of the Class Notice to the Members.

    2.06.  <u>Cash Payments by Defendant</u>.

      (i)    Within fourteen (14) days following Preliminary Approval, Defendant will send a check to the Settlement Administrator in the amount of $2,800,000.00, payable to the order of "Brennan v. Community Bank Class Settlement Fund" for deposit into PNC Bank, where the funds shall be held, *pendente lite*.

      (ii)    The Settlement Administrator shall be entitled to immediately withdraw from the Settlement Fund a sum up to $25,000.00, representing the reasonable sums necessary to pay for costs of administration including printing and mailing of Class Notice to the Members.

      (iii)    Under no circumstances shall Defendant be required to pay an amount in excess of the Settlement Fund, pursuant to this Agreement and the administration thereof.

      (iv)    The Settlement Fund shall be used solely for the Settlement Fund Purposes.

      (v)    Under no circumstances (other than the failure to obtain Final Approval of this Agreement) shall the Settlement Fund revert to, or otherwise be returned to, Defendant.

      (vi)    The Settlement Funds will be deposited into an account at PNC Bank. The Settlement Fund may not be commingled with any other funds and may be held in cash, cash equivalents, certificates of deposit or instruments insured by an arm of or backed by the United States Government. The Settlement Fund need not bear interest.

      (vii)    On the Distribution Date:

        (A)    <u>Defendant Release</u>.  Defendant shall release any claims for a Deficiency Balance from any Member unless the Member opts out of the Settlement or elects in writing to not have a Deficiency Balance forgiven.

2457887.1 3/18/2015

        (B)    <u>Member Relief</u>.

        I.    Members who do not opt out of the Settlement shall be entitled to a *pro rata* share of the Settlement Fund after payment from the Settlement Fund to Class Counsel, the Settlement Administrator, and for the Sub-Member Relief set forth hereafter (the **"Member Relief"**).

        II.    If a Member had more than one vehicle repossessed by Defendant, such Member shall be entitled to Member Relief per repossessed vehicle.

        III.    Any Member who had the same vehicle repossessed more than once shall be entitled to one Member Relief per repossessed vehicle, not per-repossession.

        IV.    If there are two co-borrowers, each co-borrower shall be entitled to one-half of the cash portion of Member Relief.

        (C)    <u>Sub-Member Relief</u>.

        Sub-Members who do not opt out of the Settlement are entitled to a *pro rata* share of the Settlement Fund as set forth below, after payment of the proportionate share of Class Counsel fees and costs and administration expenses (**"Sub-Member Relief"**).

        (D)    If a Member falls within the Sub-Class definition as to more than one repossessed vehicle, he or she shall be entitled to Sub-Member Relief per repossessed vehicle.

        (viii)    <u>Illustration</u>.  By way of illustration:

        (A)    If Class Counsel fees are approved in the amount of $1,092,000.00, cost reimbursement to Class Counsel is allowed in the amount of $20,000.00, class representative service awards are allowed in the amount of $15,000.00, and the Settlement Administrator expense is allowed in the amount of $25,000.00, the **"Settlement Expense"** will be $1,152,000.00.  The

net sum of $1,648,000.00 remains distributable to the Members and Sub-Members for the cash component, as follows:

> (B)     Member Relief, Group A: $627,000 ÷ 832 =    $753.00
>
>             Member Relief, Group B: $624,000 ÷ 1024 =   $609.00
>
>             Member Relief, Group C: $316,000 ÷ 1100 =   $287.00

> (C)     Sub-Member Relief, Group A: $40,500 ÷ 652=  $ 62.00
>
>             Sub-Member Relief, Group B: $19,500 ÷ 376=  $ 52.00
>
>             Sub-Member Relief, Group C: $21,000 ÷ 842=  $ 25.00

(ix)    <u>Checks</u>.

(A)    The Settlement Administrator shall mail a check to each Cash Member at the updated address obtained pursuant to ¶ 3.02 or ¶ 4.02, with only one sum to be paid for each Member and one sum for each Sub-Member. The amount of each check will depend on whether the Member is a part of Group A, B or C and whether the Member is also a Sub-Member.

(B)    In the event there are co-obligors, the check(s) shall be payable jointly, but upon request from one of two co-obligors, who are and remain Members or Sub-Members, a new check may be issued, payable to each individually, for one-half of the sums otherwise due.

(x)    <u>Number of Members and Sub-Members</u>. Defendant represents that to the best of its knowledge and based on a review of records of customer accounts, including electronic records, if any, a) that the Members of Group A ("**PA**") number approximately 832 and the Sub-Members of Group A number approximately 652; b) that the Members of Group B ("**NY Recent**") number approximately 1024 and Sub-Members of Group B number approximately 376; and c) that

2457887.1 3/18/2015

the Members of Group C ("**NY Older**") number approximately 1100 and Sub-Members of Group C number approximately 842.

2.07.   Identification of Members.

(a)     The Settlement Administrator shall update each Member's last known address through the United States Postal Service National Change of Address ("**NCOA**") database for updates within the last three years.

(b)     For persons included in the Members for whom there is no updated address contained in the NCOA database, the Settlement Administrator will update the last known address of a Member via a social security number search through the Accurint database or other equivalent Consumer Reporting Agency database.

2.08.   Electronic List.

(a)     No later than ten (10) calendar days after entry of the Preliminary Approval, Defendant will produce an "**Electronic List**" for the Settlement Administrator and Class Counsel containing the names, last known addresses, social security numbers and asserted Deficiency Balances of Members and Sub-Members of each Group as of September 30, 2014.

(b)     The purpose of providing social security numbers is (i) to assist the Settlement Administrator in locating valid addresses of the Member where necessary; and (ii) to assist Class Counsel in verifying that Members' consumer reports are appropriately corrected as agreed herein.  Defendant will promptly respond to reasonable written inquiries, if any, by Class Counsel to Defendant's Counsel concerning the procedures used in updating and maintaining the list of Members and Sub-Members.  Both the Settlement Administrator and Class Counsel will treat the social security numbers as sensitive and confidential.

2457887.1 3/18/2015

2.09.   Credit Reporting and Collections.

(a)      Not later than thirty (30) days after the Distribution Date, Defendant will make a written request to the CRA to remove the tradeline of all Members (except for those Members who redeemed their vehicle and reinstated their account), for the motor vehicle financing account at issue.  The delete request shall be sufficient for the CRA to delete or do a permanent one-time cloak of Class Member tradelines.  If the tradeline cannot be removed by the CRA, Defendant will request that the tradeline will be corrected to read "settled, zero balance."

(b)      After Defendant has made the request(s) to the CRA described above, if a Member disputes such Defendant tradeline with one or more CRA, and Defendant receives notice of such dispute under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), Defendant shall not respond to such CRA's request for verification, thereby permitting the subject tradeline to be deleted by the CRA.

(c)      If the CRA shall fail to act pursuant to this bulk request to delete or cloak Class Member accounts, Defendant, shall, upon request of the Member(s) or Class Counsel, submit one (1) second request to the CRA or CRAs.  Defendant shall have no further obligation with respect to deletion of credit reporting of Deficiency Balances.

(d)      The Members acknowledge that the CRAs are separate entities from Defendant and that no cause of action can or will be stated against the Defendant for breach of this Agreement in the event any CRA fails to so delete or amend the Member's credit history despite request from Defendant so long as Defendant has complied with the provisions set forth herein.

(e)      The Members expressly acknowledge that they understand the limitations of Defendant in this regard and that any action, inaction, omission and/or error by a CRA is not attributable to Defendant, in any way, and shall not constitute a breach of this Agreement, so long

2457887.1 3/18/2015

as Defendant has fulfilled its obligations under this Agreement.  Defendant shall not be liable to any Member under the Fair Credit Reporting Act, 15 U.S.C. § 1681, or similar law for complying with this paragraph in correcting or requesting deletion of any Members' tradeline as provided for in paragraph 2.09 herein.

       (f)    Deletion of the CRA tradeline is a material term of this Settlement, but shall not itself vitiate, prove or disprove any claimed Deficiency Balance nor be used in any collection proceeding as evidence that a claimed Deficiency Balance is, or is not, due.

    2.10.   <u>Cease and Desist Collection</u>.

       (a)    Defendant will not commence any new lawsuits against Members to collect upon Deficiency Balances, from the date of execution of this Agreement unless a Member opts out of the Settlement or submits an Election Form electing against waiver of Deficiency Balance. Defendant shall use its best efforts to see to it that Defendant and any agent or collector acting on Defendant's behalf, discontinue and cease all collections activities with respect to a Member's Deficiency Balance upon Preliminary Approval of the Settlement unless the Member opts out of the Settlement or submits an Election Form electing against waiver of Deficiency Balance.

       (b)    If any alleged Deficiency Balance shall have been sold or assigned, Defendant shall repurchase or otherwise satisfy the account such that any asserted Deficiency Balance is timely satisfied and waived unless the Member has opted out of the Settlement or has elected against waiver of his Deficiency Balance.

       (c)    This obligation of Defendant in this ¶ 2.10 shall end if there is no Final Approval of this Agreement for any reason; and shall end as to any Member who opts out of the Settlement or accepts the Settlement but elects not to have their Deficiency Balance waived by Defendant.

2.11.   <u>Satisfaction of Monetary Judgments Against Members</u>.

For any Member against whom Defendant or its assignee(s) has obtained money judgment(s) arising from a Deficiency Balance, Defendant agrees to take timely and reasonable steps to identify all such Members to Class Counsel within thirty (30) days of Preliminary Approval.  Defendant shall mark such judgment as satisfied or cause such judgments to be marked as satisfied within thirty (30) days of the Effective Date unless the Member has opted out of the Settlement or submitted a Claim Form electing against waiver of Deficiency Balance.

2.12.   <u>Attorneys' Fees</u>.

(a)      The Parties understand that Class Counsel intends to apply for an award of attorneys' fees and expenses from the Settlement Fund.  All attorneys' fees and expenses shall be paid from the Settlement Fund on a common fund basis, and the amounts of such fees and expenses shall not increase in any way Defendant's payment obligation pursuant to this Agreement beyond the Settlement Fund except for the Incentive Award (defined hereafter).

(b)      Defendant agrees to take no position and agrees it will not object to a request by Plaintiffs and/or Class Counsel for fees to be awarded to Class Counsel in an amount not to exceed One Million and Ninety Two Thousand U.S. Dollars ($1,092,000.00) plus litigation expense reimbursement not to exceed Twenty Thousand Dollars ($20,000.00).

(c)      The Class Counsel fees awarded by the Court shall include compensation to Class Counsel for addressing, *in futuro*, ongoing Member inquiries concerning the repossession of their vehicle, Deficiency Balance, and/or tradeline removal by the Defendant and CRAs after Final Approval.

2457887.1 3/18/2015

2.13.   <u>Electing to Waive Deficiency Balance</u>.

(a)     Each Member shall be afforded the option to affirmatively elect not to have any Deficiency Balance alleged due waived and released by Defendant.

(b)     The Settlement Administrator shall include in the Class Notice the form entitled Election Against Waiver of Deficiency Balance ("Election Form") in the form appended hereto as Exhibit B.  The Election Form must be sent to the Settlement Administrator postmarked on or before the date specified in the Class Notice, which shall be forty (40) days from the initial mailing of the Class Notice.

## III.   **ADMINISTRATION OF THE SETTLEMENT**

3.01.   <u>Costs of Administration</u>.

(a)     Costs of providing Class Notice to the Members of the pendency and proposed settlement of the Litigation, administering this Agreement and making the payments and distributions required under this Agreement shall be paid from the Settlement Fund.

(b)     The Settlement Administrator shall promptly respond to all queries from Defendant and Class Counsel about account balances and status, the calculations, cash payments and distributions called for by this Agreement.

(c)     The Settlement Administrator shall be authorized to withdraw up to $25,000.00 in payment of its reasonable fees and expenses of Class Notice.

(d)     The Settlement Administrator may be entitled to a further disbursement from the Settlement Fund of an amount up to $10,000.00 should substantial additional or unforeseen services be required subject to approval of Lead Counsel.  In the event funds in excess of an aggregate $35,000 are needed for Class Administration, Plaintiffs may request the permission of the Court to invoke the remaining *res* for that purpose.

2457887.1 3/18/2015

3.02.   <u>Treatment of Members Who Have Moved or Died</u>.

(a)      For those Members whose checks mailed pursuant to the Class Notice are returned by the U.S. Postal Service for lack of current correct address, the Settlement Administrator shall seek an address correction via a social security number search through the Accurint database, or other equivalent database, for those individuals, and their checks will he re-sent to any subsequently obtained addresses.  The Settlement Administrator may, but shall have no further obligation to, locate such Members.

(b)      If the Settlement Administrator receives notice that a Member is deceased or incompetent, the Settlement Administrator will, upon receipt of proper notification and documentation within one hundred twenty (120) days of the Distribution Date, make any payment due, to the Member's estate.  "**Proper notification and documentation**" means, in the discretion of the Settlement Administrator, a death certificate and/or a copy of the official filings appointing an executor, administrator or other personal representative of the estate or fiduciary of an incompetent and sufficient information as to the identity and address of the executor, administrator, personal representative or fiduciary to enable mailing of a check.  Any payment to or on behalf of an estate or incompetent must be made within one hundred forty (140) days of the Distribution Date and before the Settlement Fund has been fully distributed as provided in this Agreement.

3.03.   <u>Uncashed/Unclaimed Checks</u>.   Those Members who are not located or whose checks are not cashed or cleared within one hundred twenty (120) days after the Distribution Date shall be ineligible to share in the Settlement Fund, but shall otherwise receive the non-cash benefits of this Settlement.  The Settlement Administrator may, in its discretion, replace any lost or non-cashed check upon proper request from a Member within one hundred forty (140) days of Distribution Date so long as the Settlement Fund has not been fully distributed.

24

3.04.   <u>Administrator's Notification to Counsel</u>.  Within one hundred fifty (150) days after the Distribution Date, the Settlement Administrator shall notify Lead Counsel and Defendant's Counsel in writing of the number of Members mailed, the number of Members sent checks, the number of Members who did not cash the checks, the total dollar amount of the checks distributed, the total dollar amount of uncashed checks, and the remaining balance of the Settlement Fund, accounting for interest (if any), bank fees and similar direct expenses of the administration.

3.05.   <u>*Cy Pres*</u>.  Within one hundred eighty (180) days after the Distribution Date, the balance of the principal of any uncashed checks (or returned checks) distributed pursuant to the terms of this Agreement shall be disbursed as follows:  (a) one-third (1/3) to North Penn Legal Services; (b) one-third (1/3) to the National Consumer Law Center; and (c) one third (1/3) to Empire Justice Center of New York for use in upstate New York.  The residual funds shall be used by the *cy pres* recipients to teach financial literacy, in educating and counseling consumers on consumer credit matters, on advocacy on behalf of low income consumers who are facing legal issues involving bankruptcy, debt overextension, foreclosure, student loan and similar consumer credit or consumer fraud issues.  Promptly after the checks have cleared, the Settlement Administrator shall close the Settlement Account.

3.06.   <u>Certification of Distribution</u>.  Within fourteen (14) days after the final distribution of all portions of the Settlement Fund, the Settlement Administrator shall provide to Lead Counsel an affidavit attesting to the Court that the distributions provided for by this Agreement have all been timely made, and shall serve a copy thereof on Defendant Counsel.  The Administrator shall be authorized, with consent of Class Counsel and Defendant, to mail a follow-up letter to those Members who have been sent — but have not negotiated — their check for Settlement Funds.  The follow-up letter may be sent within ninety (90) days of Distribution, reminding the Member that

2457887.1 3/18/2015

the check for Member Relief and/or Sub-Member Relief was previously mailed, has not been negotiated, and will expire if not deposited or cashed in a timely manner.

3.07.   Rights Upon Excessive Opt-Outs.   Defendant has the right to void the Settlement and this Agreement, in its sole discretion, if more than 5% of the Members to whom Class Notice is mailed opt out of the Settlement in writing or if the alleged statutory damages of the Members who opt out of the Settlement in writing exceed 5% of the alleged statutory damages of all Members in the aggregate.   Defendant may exercise such right for a period of fourteen (14) days of the end of the Opt-Out Period, by notifying Class Counsel in writing and docketing of record its notice of intent to void the Settlement.

3.08.   Calculation of Payments/Responsibility for Taxes.   Defendant and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to the investment, allocation or distribution of the Settlement Fund, the administration, calculation or payment of claims, the payment or withholding of any taxes, penalties, interest or any other charges related to taxes, of the Settlement Fund, the Members, the Plaintiffs, or any other person or relating to the distributions, transfers, or payments by the Settlement Fund to the Members or any other person, or any losses incurred in connection therewith or for any debt forgiveness elected by Members.   These functions, including issuance of any and all tax forms required as a result of payments or debt forgiveness made hereunder (including, but not limited to, any Form 1099-series reports, if necessary) to Members, will be conducted by the Settlement Administrator with any proper accounting advice, in accordance with this Settlement Agreement.

## IV.   CLASS SETTLEMENT PROCEDURES

4.01.   Motion for Preliminary Approval.   Class Counsel shall file a Motion for Preliminary Approval of this Agreement promptly after the execution of this Agreement by all

2457887.1 3/18/2015

Parties.  Defendant agrees not to oppose, except as allowed herein, the entry of an Order of Preliminary Approval in the form annexed hereto as Exhibit A, providing, among other things:

      (a)     That the Agreement is deemed by the Court as being within the range of reasonableness such that Notice thereof should be given to the Members;

      (b)     That the requirements for certification of Members for this Agreement and the Litigation has been satisfied, and this action shall be maintained and proceed as a class action under Fed. R. Civ. P. 23;

      (c)     That the Class Notice of proposed settlement substantially in the form attached as Exhibit C, is approved by the Court; and that the mailing of the Class Notice in the manner and form set forth in the Order of Preliminary Approval meets all the requirements of Fed. R. Civ. P. 23 and any other applicable law, constitutes the best Class Notice practicable under the particular circumstances of this case, and shall constitute valid, due and sufficient Class Notice to all Members entitled thereto;

      (d)     That deadlines shall be established consistent with this Settlement for mailing of the Class Notices, and that deadlines shall be established for the filing of any objections, the filing of any requests to be excluded or to opt-out, the filing of any motions to intervene no later than forty (40) days after the mailing of the Class Notice, and deadlines for the filing of any papers in connection with the Final Approval hearing and the consideration of the approval or disapproval of this Agreement;

      (e)     That any objections by the Members to:  (i) this Agreement as described in the Class Notice, and/or (ii) the entry of the Order of Final Approval, shall be heard and any papers submitted in support of such objections shall be considered by the Court at the hearing for Final Approval only if, on or before a date (or dates) to be specified in the Class Notice and Order of

Preliminary Approval, such objector files with the Court a statement of his or her intention to appear, and the basis for such objections.  Any decision by a Member to opt out of the Settlement shall be sent to the Settlement Administrator postmarked on or before the date specified in the Class Notice or electronically filed with the Clerk on or before the date specified in the Class Notice, which shall be forty (40) days from the date of the initial mailing of the Class Notice.

(f)     The Notice to Opt-Out shall:  (i) set forth the Member's full name, current address, telephone number and email address if available; (ii) contain the signatures of each Member obligated on the Retail Installment Sales Contract of or held by Defendant.

(g)     That the Deficiency Balance of all Members will be waived and released unless the Member timely submits an Election Form to be provided with the Class Notice requesting that the Deficiency Balance not be waived.  The Class Notice shall state that the waiver of the Deficiency Balance will cause an IRS/1099C form to be issued which will have potentially significant tax consequences, such as the Deficiency Balance amount being deemed "Income" to the Member for purposes of his tax filing, or substantially similar language.

(h)     That Plaintiffs' Motion for Final Approval, for approval of the Incentive Awards and for an award of Class Counsel fees and expenses, with supporting affidavits and exhibits, shall be filed at least ten ( 10) days prior to the hearing for Final Approval.

(i)     That a hearing or hearings shall be held before the Court, at the respective time and date to be set by the Court, to consider and determine whether the proposed Settlement of the Litigation on the terms and conditions set forth in this Agreement, including as part of the Settlement, the payment of Settlement Expenses, is fair, reasonable and adequate and should be approved by the Court, and whether the Order of Final Approval of the Settlement and dismissing the Litigation on the merits and with prejudice against the Members should be entered, and to

2457887.1 3/18/2015

consider such other matters as may properly come before the Court in connection with the hearing for Final Approval;

(j)     That the hearing for Final Approval may, from time to time and without further Notice to the Members (except those who filed timely and valid objections), be continued or adjourned by order of the Court;

(k)     That all Members (except those who timely excluded themselves by written notice to the Settlement Administrator) will be bound by the Order of Final Approval.

4.02.   <u>Class Notice</u>.  Subject to the Court's approval, the Parties agree that Class Notice to the Members shall be given by the Settlement Administrator in the form attached hereto as Exhibit C within twenty (20) days after an Order of Preliminary Approval is entered by the Court in the following manner:  (a) Defendant shall supply an address list of the Members, and the Settlement Administrator shall update the address list as set forth in paragraphs 2.07 and 2.08; (b) the Settlement Administrator shall mail the Class Notice as approved by the Court, by first class United States mail to the updated addresses for the Members; (c) if a mailed Class Notice is returned with a forwarding address provided by the Postal Service, the Settlement Administrator will re-mail it to the address or addresses provided; (d) if a mailed Class Notice is returned without a forwarding address provided by the Postal Service, or is otherwise designated by the Postal Service as bearing an invalid address, that Settlement Administrator shall use the Accurint database, or other equivalent database, to attempt to locate an updated address for the particular Member, and shall re-mail the Class Notice to the Member at the most recent, updated address located if different from an address that was previously returned by the Postal Service.

2457887.1 3/18/2015

4.03.   Election.

(a)      The Class Notice described in ¶ 4.02 above shall permit any Member to:  (i) elect not to be bound by this Agreement, if, within such time as is ordered by the Court and contained in the Class Notice, the affected person executed and timely mails an appropriate written Opt-Out Notice to the Settlement Administrator, at the address for the Settlement Administrator contained in the Class Notice, or timely files same with the Clerk's Office.

(b)      The Notice to Opt-Out shall:  (i) set forth the Member's full name, current address and telephone number; (ii) contain the signatures of each Member obligated on the motor vehicle installment sale agreement; and (iii) state an intent of all signatories (A) not to participate in the Settlement; (B) the Notice to Opt-Out must be postmarked during the Opt-Out Period.  No Member, or proxy, may exclude any other Member.

(c)      At least twenty (20) days prior to the hearing for Final Approval, the Settlement Administrator shall prepare a list of the persons who have complied with the requirements for exclusion from the Settlement, and those who have elected against the waiver of their Deficiency Balance, and shall serve such list upon Lead Counsel and Defendant Counsel. Plaintiffs shall file such document as an attachment to the Motion for Final Approval.  Upon the entry of the Order for Final Approval, the persons who timely and properly requested exclusion from the Settlement will not be considered Members for purposes of this Agreement.

4.04.   Order of Final Approval.  At or before the hearing for Final Approval conducted after the approved Class Notice to the Members, the Parties shall request that the Court grant Final Approval to the Settlement and this Agreement and enter Final Approval in accordance with this Agreement, substantially in the form attached as Exhibit D, and including any modifications by

2457887.1 3/18/2015

the Court, approving this Agreement as final, fair, reasonable, adequate, and binding on all Members, ordering that the Member Relief and Sub-Member Relief be paid to the Members.

4.05.   Settlement Administrator.   The Settlement Administrator shall, by virtue of its voluntary appointment hereunder, be subject to the jurisdiction of the Court for purposes of this Litigation.

## V.   **RELEASES**

5.01.   On the Effective Date, the Members, by operation of this Agreement and the Final Approval, do and shall be deemed, without further action by any person, to have fully, finally and forever released, settled, compromised, relinquished, and discharged Defendant of and from any and all Released Claims and be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal or foreign court or regulatory agency, any Released Claims.

5.02.   (a)      Except for those Members who elect against waiver of their Deficiency Balance, Defendant hereby releases, settles, compromises, relinquishes and discharges Members, whether or not in judgment, from any and all claims, liens, demands, causes of action, obligations, damages, and liabilities of any nature whatsoever, known or unknown, that, they have had in the past, or now have, or may have in the future against the Member arising from or related to the motor vehicle Retail Installment Sales Contracts associated with the repossession(s) addressed by this Litigation, including but not limited to any liability for a Deficiency Balance.  No other loan or obligation is being released or affected hereby.  Defendant represents that, to the best of its knowledge after reasonable investigation, it presently owns all, and has not assigned or sold any Members' accounts.  If the account of any Member has been assigned or sold, Defendant will

repurchase the account and mark it satisfied unless the Member has elected against waiver of Deficiency Balance.

      (b)    Defendant agrees, and the Order of Final Approval shall so reflect, that Defendant shall be enjoined from any further attempts to collect any Deficiency Balance related to their vehicles.  This release and injunction shall not apply to any Member who reinstated his/her motor vehicle Retail Installment Sales Contract or reclaimed and/or obtained the return of their vehicle following repossession and who thereby does not have a Deficiency Balance, and shall not apply to any Member who elects in writing to not have his/her Deficiency Balance eliminated.

     5.03.   The Plaintiffs and Defendant expressly understand and acknowledge that it is possible that unknown losses or claims exist, that present losses may have been underestimated in amount or severity, or that a court in other pending litigation might find the disputed period of limitations for the making of a claim in New York to be three (3) or six (6) years or the disputed period of limitations for the making of a claim in Pennsylvania to be two (2) years or six (6) years. The Plaintiffs and Defendant explicitly took that possibility into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between the Plaintiffs and Defendant with the knowledge of the possibility of such losses or claims, was given in exchange for a full accord, satisfaction, and discharge of all such losses or claims.

     5.04.   On the Effective Date, the Members shall be deemed to have covenanted and agreed that, upon Defendant's compliance with the terms of this Agreement:  (1) Members shall be forever barred from instituting, maintaining, or prosecuting against Defendant any Released Claims; and (2) Defendant shall be forever released and discharged from any and all liability with respect to the claims in the Litigation, except as expressly reserved in this Agreement.

2457887.1 3/18/2015

## VI.    QUALIFIED SETTLEMENT FUND

6.01.    The Settlement Fund shall constitute a "**qualified settlement fund**" ("**QSF**") within the meaning of Treasury Regulation Section 1.468B-1, promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.   The Settlement Administrator shall be the "**administrator**" within the meaning of Treasury Regulation §1.468B-2(k)(3).

6.02.    Upon or before establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

6.03.    If requested by either Defendant or the Settlement Administrator, the Settlement Administrator and Defendant shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a Settlement Fund as of the earliest possible date.

6.04.    Following payment of the Settlement Fund, Defendant shall have no responsibility, financial obligation or liability whatsoever with respect to the notifications to the Members required hereunder, the processing of claims and opt out letters, the allowance or disallowance of claims by Members, payments to Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and any other taxes, penalties, interest or other charges related to taxes imposed on the QSF or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that payment of the Settlement Fund shall fully discharge Defendant's obligation to Members, Class Counsel and expenses of administration with respect to the disposition of the Settlement Amount.

2457887.1 3/18/2015

6.05.   The Settlement Administrator shall file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholding statements, in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(1)(2)(ii).  Any contract, agreement or understanding with the Settlement Administrator relating to the QSF shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholding statements, in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(1)(2)(ii).

## VII.   MISCELLANEOUS PROVISIONS

7.01.   Parties to Use Best Efforts to Effectuate Settlement.  The Parties and their counsel shall use their best efforts to cause the Court to give Preliminary Approval and Final Approval to this Agreement as promptly as practicable and to take all steps contemplated by this Agreement to effectuate the Settlement on the stated terms and conditions of this Agreement.

7.02.   Governing Law and Enforcement.

(a)    This Agreement is intended to and shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to conflict of laws rules.

(b)    This Agreement shall be enforced in the United States District Court for the Middle District of Pennsylvania.  Defendant and Members waive any objection that any such party may have or hereafter may have to the venue of such suit, action, or proceeding.

7.03.   Entire Agreement.  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and

34

may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Agreement constitutes the complete and exclusive statement of these terms as between the Parties hereto and that no extrinsic evidence whatsoever may be introduced in a judicial proceeding, if any, involving this Agreement.

7.04.   <u>Modification Only in Writing</u>.  This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by the Parties or counsel for both Parties.  This Agreement may not be orally amended, altered, modified or waived, in whole or in part.

7.05.   <u>No Ambiguity To Be Construed In Favor of Either Party</u>.  The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto.  Accordingly, this Agreement shall be considered neutral and no ambiguity shall be construed in favor or against the Parties.

7.06.   <u>Successors</u>.  This Agreement shall be binding upon, and inure to the benefit of, the respective heirs, successors and assigns of the Parties hereto.

7.07.   <u>Waivers</u>.  The waiver by one party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

7.08.   <u>Counterparts</u>.  This Agreement shall become effective upon its execution by all of the undersigned.  The Parties may execute this Agreement in counterparts, and execution of Counterparts shall have the same force and effect as if all Parties had signed the same instrument.

7.09.   <u>Facsimile Signature</u>.  This Agreement may be executed by facsimile signature, and a facsimile signature shall have the same legal effect as an original signature.

7.10.   <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction over the interpretation, effectuation and implementation of this Agreement, and all orders entered in connection therewith and the Parties and their attorneys submit to the jurisdiction of the Court.  In any action or

2457887.1 3/18/2015

proceeding to enforce the terms of this Agreement or the Final Approval Order and Final Approval, the prevailing party shall be entitled to an award of reasonable attorneys' fees, costs and expenses.

7.11.  Taxes.

(a)  Nothing in this Agreement shall be construed as creating a cancellation of debt or of itself giving rise to any "identifiable event" under *inter alia* the Internal Revenue Code or Treasury Regulation, § 1.6050P.

(b)  The Parties acknowledge that there has been, by the Notice issues raised in this Litigation, a challenge to the commercial reasonableness of Defendant's disposition of the Members' vehicles that Defendant repossessed.

(c)  The Parties and their Counsel have provided no tax advice with respect to the terms of the Settlement.  In all events Defendant shall have no liability or responsibility for any taxes, penalties, interest or any other charges related to taxes.

(d)  The Settlement Administrator shall cause any proper Form 1099 and/or 1099C or comparable tax document to issue, if and as required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, for the cash distribution(s) to the Members over $600 and for debt forgiveness.  To the extent not already done, Defendant shall provide social security numbers of each Member to the Administrator to facilitate issuance of 1099 and 1099C Forms, required under this paragraph, if any.

(e)  For purposes of the 1099C, the "cancellation of debt" sum to be provided by Defendant for the 1099C shall be the principal balance shown as due on the books of Defendant (excluding repossession and auction expenses, interest or ancillary charges) as of the business day prior to the date of the auction, *less* (a) auction proceeds and (b) payments made on account by any Member post-auction.

(f)     By way of illustration, if Defendant's records reflected a Member carrying a $10,000.00 principal balance on the business day preceding the date of auction of the repossessed vehicle and the Defendant incurred $400.00 in repossession/towing fees and $300.00 in auction house fees <u>and</u> the auction proceeds were $6,000.00, the Defendant would utilize $4,700.00 for the 1099C information.

7.12.   <u>No Solicitation of Publicity</u>.  The Plaintiff and Class Counsel agree not to issue any press release, convene any press conference or otherwise initiate or participate in any publicity with newspapers, publications, other mass media nor post to internet websites (other than their own) information concerning this Litigation or the terms of this Settlement Agreement that mentions Community Bank, N.A. in any way.

7.13.   <u>No Opt Out Solicitation or Inducement</u>.  Plaintiffs, Class Counsel, Defendant, and Defendant's Counsel agree that they shall take no action which would or might have the effect of inducing or encouraging any person included in the Members to seek exclusion from the Members, provided that this provision shall not restrict Class Counsel from providing appropriate legal advice in response to inquiries from the Members.

2457887.1 3/18/2015

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

AGREED TO AND ACCEPTED:   Plaintiff

Dated:_____ _____(SEAL)
            Carol A. Brennan

Dated:_____ _____(SEAL)
            Courtney Bellomo

Dated:_____ _____(SEAL)
            Anthony Colino

Dated: _March 25, 2015_____ Defendant, Community Bank, N.A.

            By:_____
            George J. Getman

            Title: Exec. V.P. & General Counsel

APPROVED:

Dated:_____March 25, 2015_____ Class Counsel

            By:_____
            Cary L. Flitter, Lead Counsel

Dated: _March 25, 2015_____ Defendant Counsel:

            By:_____
            Jonathan B. Fellows

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

AGREED TO AND ACCEPTED:          Plaintiff

Dated:_____       _____(SEAL)

                                          Carol A. Brennan

Dated: 3/24/15                 _____(SEAL)

                                          Courtney Bellomo

Dated:_____       _____(SEAL)

                                          Anthony Colino

Dated:_____       Defendant, Community Bank, N.A.

                                          By:_____

                                            George J. Getman

                                      Title: Exec. V.P. & General Counsel

APPROVED:

Dated:_____       Class Counsel

                                          By:_____

                                          Cary L. Flitter, Lead Counsel

Dated:_____       Defendant Counsel:

                                          By:_____

                                          Jonathan B. Fellows

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

AGREED TO AND ACCEPTED:                Plaintiff

Dated:_____          _____(SEAL)
                                         Carol A. Brennan


Dated:_____          _____(SEAL)
                                         Courtney Bellomo

Dated:_____3-24-15_____          _____(SEAL)
                                         Anthony Colino


Dated:_____          Defendant, Community Bank, N.A.

                                         By:_____
                                            George J. Getman

                                         Title: Exec. V.P. & General Counsel

APPROVED:

Dated:_____          Class Counsel

                                         By:_____
                                            Cary L. Flitter, Lead Counsel


Dated:_____          Defendant Counsel:

                                         By:_____
                                            Jonathan B. Fellows

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

AGREED TO AND ACCEPTED:                    Plaintiff

Dated:_____*3·25·15*_____

_Carol A Brennan_____(SEAL)

                                            Carol A. Brennan


Dated:_____

_____(SEAL)

                                            Courtney Bellomo


Dated:_____

_____(SEAL)

                                            Anthony Colino


Dated:_____          Defendant, Community Bank, N.A.

                                            By:___
                                                George J. Getman

                                            Title: Exec. V.P. & General Counsel


APPROVED:

Dated:_____          Class Counsel

                                            By:___
                                                Cary L. Flitter, Lead Counsel


Dated:_____          Defendant Counsel:

                                            By:___
                                                Jonathan B. Fellows

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, COURTNEY BELLOMO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs<br><br>        vs.<br><br>COMMUNITY BANK, N.A.,<br>                    Defendant | CLASS  ACTION<br><br><br><br><br><br><br><br><br>NO.  13-CV-02939 (MEM) |

**ORDER OF PRELIMINARY DETERMINATION ON CLASS
CERTIFICATION, PRELIMINARILY APPROVING CLASS
SETTLEMENT AND DIRECTING THE
<u>ISSUANCE OF NOTICE TO THE CLASS</u>**

AND NOW, this          day of                    , 2015, the Court finds and

Orders:

This Court has before it a proposed Amended Class Action Settlement.

Having reviewed the proposed Amended Class Action Settlement Agreement and

Release, which was filed of record as an exhibit to the Renewed Motion for

Preliminary Approval at *Brennan* Doc. No. ___ and is incorporated herein by

reference (the "Settlement Agreement"), having read the Plaintiffs' Renewed Motion

for Preliminary Approval, having been advised that Defendant joins in the relief

requested, and based specifically upon the facts and circumstances at issue in the

present case, the Court hereby ORDERS as follows:

1.      **Summary of Claims and Defenses:**

The Plaintiffs, Carol A. Brennan, Anthony Colino, and Courtney Bellomo filed an Amended Class Complaint in a matter fashioned as *Carol A. Brennan, Anthony Colino, Courtney Bellomo, individually and on behalf of all others similarly situated v. Community Bank, N.A.*, at Docket No. 13-cv-2939.

The Plaintiffs claim that Community Bank, N.A. (or "the Bank"), violated the Uniform Commercial Codes ("UCC") of Pennsylvania and New York by failing to send borrowers proper notice of their rights after repossession of their vehicle(s). Plaintiffs assert the Defendant's Repossession Notice fails to state whether the post-repossession sale would be public or private, that the consumer was entitled to an accounting, and that the consumer may be liable for a deficiency.   Plaintiffs also contend the Bank's Deficiency Notice sent after sale does not contain the information required by the UCC § 9616. Defendant contends its Repossession Notices comply with the UCC.   Defendant further contends that many of the members of the Class owe the Bank money for balances still allegedly due on their accounts following the sale of their vehicle(s) at auction.   The Bank also contends that Plaintiffs' claims are time-barred in whole or in part.

2.      **Class Findings.**

   a) The numerosity requirement of Fed.R.Civ.P. 23(a)(1) is satisfied because the Class numbers approximately 2956 (approximately 832

2

Pennsylvanians and 2124 New Yorkers).   Thus, the Class is so numerous that joinder would be impracticable.

b) The commonality requirement of Fed.R.Civ.P. 23(a)(2) is satisfied because members of the Class share at least one common factual or legal issue, *i.e.*, (i) whether the Bank failed to send to Class Members a Notice of Repossession that sets forth the method of disposition, right to accounting and deficiency liability disclosures, as required by the Uniform Commercial Code, which mandates commercially reasonable notice of disposition of collateral; and (ii) whether the Class is entitled to the minimum statutory damages provided by the Code.

c) The typicality requirement of Fed.R.Civ.P. 23(a)(3) is satisfied because Plaintiffs seek to obtain a determination that Defendant engaged in uniform misconduct against members of the Class and because Plaintiffs seek to obtain a determination that this alleged common practice was unlawful on behalf of all Class Members who were alleged to have been damaged by the practice.   All Class Members are Pennsylvania or New York obligors whose vehicle was repossessed by Defendant but who allegedly were not sent adequate Repossession Notices.   All Sub-Members were Pennsylvania or New York obligors

whose vehicle was repossessed and not redeemed or reinstated before auction, and who allegedly were not sent adequate Deficiency Notices.

d) The adequacy requirement of Fed.R.Civ.P. 23(a)(4) is satisfied in that (i) the interests of the Representative Plaintiffs and the nature of their claims are consistent with those of all members of the Class, (ii) there appear to be no conflicts between or among the Representative Plaintiffs and the Class Members, and (iii) the Representative Plaintiffs and the Class Members are represented by several qualified law firms who have been often certified as Class Counsel in similar matters, and who, to date, have advanced litigation costs on behalf of Plaintiffs and the Class, have agreed to continue to so advance all litigation costs, and are experienced in preparing and prosecuting class actions such as this.

e) The Court has also considered the provisions of Fed.R.Civ.P. 23(g)(1) and finds that Class Counsel has identified the proper issues, is sufficiently experienced, is knowledgeable about applicable Pennsylvania, New York, and federal law and has adequate resources to commit to the Class Litigation.

f) The requirement of Fed.R.Civ.P. 23(b)(3) that a class action for settlement purposes provides a fair and efficient method for the resolution of the controversy is satisfied, and a Class Action for

4

settlement purposes is a superior method to other available methods for a fair and efficient resolution of the Class's claims.

g) Common issues of law and fact alleged by Plaintiffs predominate over any potential individual issues, including the alleged common issue of whether form letter(s) sent by Defendant post-repossession comply with the provisions of the UCC's requirement of "commercially reasonable" notice to be sent by secured parties after repossession of collateral.

h) In making these preliminary findings, the Court has also given consideration to, among other factors: (i) the interests of Class Members in individually controlling the prosecution of separate actions for modest sums; (ii) the extent and nature of any litigation concerning these claims already commenced; (iii) the desirability of concentrating the litigation of the claims in this forum; (iv) the impracticability or inefficiency of prosecuting or defending separate actions. Fed.R.Civ.P. 23(b)(3).

i) However, the Court also notes that, because this action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues

in this case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

(1997).

**3.     The Class.**

a)      The Class is divided into three (3) groups of Class Members, and two

(2) subgroups within each group:

1.   <u>Group A</u>

(a)     All persons who purchased a motor vehicle primarily for
consumer use and who financed the vehicle through Defendant, or whose Retail
Installment Sales Contract was assigned to Defendant;

(b)     From whom Defendant, as secured party, repossessed the vehicle
or ordered it repossessed;

(c)     Had a Pennsylvania address as of the date of repossession; and

(d)     Were not sent a Repossession Notice which:

(i)      Provided a minimum of 15 days' notice of sale;

(ii)     Specified whether the vehicle would be sold at a public or
private sale;

(iii)    Stated a description of any liability of the borrower for a
potential Deficiency Balance;

(iv)    Stated that the debtor is entitled to an accounting of the
unpaid indebtedness and the charge, if any, for such an accounting; or

(e)     Were sent no written notice at all; and

(f)     For the period commencing October 30, 2007 through
September 30, 2014; and

2.   <u>Group B</u>.

(a)   All persons who purchased a motor vehicle primarily for consumer use and who financed the vehicle through Defendant, or whose Retail Installment Sales Contract was assigned to Defendant;

(b)   From whom Defendant, as secured party, repossessed the vehicle or ordered it repossessed;

(c)   Had a New York address as of the date of repossession; and

(d)   Were not sent a Repossession Notice which:

(i)   Specified whether the vehicle would be sold at a public or private sale;

(ii)   Stated a description of any liability of the borrower for a potential Deficiency Balance;

(iii)   Stated that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting; or

(e)   Were sent no written notice at all; and

(f)   For the period commencing July 15, 2011, through September 30, 2014; and

3.   <u>Group C</u>

(a)   All persons who purchased a motor vehicle primarily for consumer use and who financed the vehicle through Defendant, or whose Retail Installment Sales Contract was assigned to Defendant;

(b)   From whom Defendant, as secured party, repossessed the vehicle or ordered it repossessed;

(c)   Had a New York address as of the date of repossession; and

(d)   Were not sent a Repossession Notice which:

(i)     Specified whether the vehicle would be sold at a public or private sale;

(ii)     Stated a description of any liability of the borrower for a potential Deficiency Balance;

(iii)   Stated that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting; or

(e)     Were sent no written notice at all; and

(f)     For the period commencing July 15, 2008, through July 14, 2011; and

b) A SubClass is made up of Sub-Members defined as all Members of

Group A, B or C who:

(a)     Were sent a Deficiency Notice that failed to substantially comply with the following:

(i)     State that future debits, credits, charges, including additional credit service charges or interest, rebates and expenses may affect the amount of the surplus or deficiency;

(ii)     Provide in the following order:

(A)     The aggregate amount of the obligation secured by the security interest under which the disposition was made, and if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, and a calculation thereof.

(B)     The amount of proceeds of the disposition;

(C)     The aggregate amount of the obligations after deducting the amount of the proceeds;

(D)     The amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral and

8

attorney's fees secured by the collateral which are known to the secured party and relate to the current disposition;

(E)     The amount, in the aggregate or by type and types of credits, including rebate of interest or credit service charges, to which the obligor is known to be entitled; and

(F)     The amount of the surplus or deficiency;

(b)     Were sent no Deficiency Notice at all;

(c)     For the period co-terminus with their respective Class Period through September 17, 2012;

(d)     Whenever this Agreement refers to Members, it shall also mean Sub-Members, unless otherwise specified.

4.     **Class Representatives and Class Counsel**

a) Carol Brennan, Courtney Bellomo and Anthony Colino are appointed representatives of the Class ("Representative Plaintiffs");

b) Cary L. Flitter, Theodore E. Lorenz, Andrew M. Milz, and the law firm of Flitter Lorenz, P.C.; Timothy P. Polishan of Kelley Polishan & Solfanelli, LLC; and M. Scott Barrett of Barrett Wylie, LLC are appointed as counsel to the Representative Plaintiffs and the Class ("Class Counsel");

c) Flitter Lorenz, P.C., is appointed as Lead Counsel. Lead Counsel shall be responsible for communications with defense counsel and the Court and shall use its best efforts to organize and delegate the work of Co-

Class Counsel so as to maximize efficiency and best respond to the needs of the Class.

5. **Findings Regarding Proposed Settlement.** The Court finds that: (a) the proposed amended settlement resulted from extensive arm's-length negotiations. The proposed Settlement was concluded only after ten months of hotly contested litigation including a Motion to Remand, a dispositive Motion to Dismiss Plaintiff's Complaint on substantive grounds (statute of limitations), Defendant's Motion to Dismiss on mootness grounds, Plaintiff's Motion to Strike Offer of Judgment and Plaintiff's contested Motion for Leave to Amend; (b) the proposed settlement of this action involves direct and substantial cash payments to Class Members, as well as substantial valuable relief including modification of Class Members' credit reports, the option to obtain a complete release of deficiency balances and deficiency judgments; and (c) the proposed settlement evidenced by the Amended Settlement Agreement is *prima facie* fair, reasonable and adequate and warrants sending notice of this action and the proposed settlement to the Class Members, and holding a final hearing on the proposed settlement.

6. **Final Approval Hearing.** A hearing (the "Final Approval Hearing") will be held on _____, 2015, at _____, in Courtroom ____, William J.

Nealon U.S. Courthouse, 235 Washington Avenue, Scranton, Pennsylvania to determine:

a) Whether the proposed settlement of this action should be finally approved as fair, reasonable and adequate;

b) The propriety of any objection and the identity of any opt-outs;

c) Whether this action should be dismissed with prejudice pursuant to the terms of the settlement;

d) Whether Class Members should be bound by the release set forth in the proposed settlement; and

e) Whether Plaintiffs' application for an award of attorneys' fees and expenses to Class Counsel, and Representative Plaintiffs' application for service awards should be approved.

7. **Pre-Hearing Notices to Class Members.** Subject to the terms of the Amended Settlement Agreement, an independent, third-party class action administrator, Strategic Claims Services of Media, PA (the "Settlement Administrator"), shall provide Class Members with notice in the manner set forth below. By virtue of this appointment, the Settlement Administrator is subject to the jurisdiction of this Court.

8. **Notice by Mail.** The Settlement Administrator shall mail the Class Notice (with proper dates filled in) substantially in the form filed with this Court as

Exhibit B to the Amended Settlement Agreement to the last-known address of each potential Class Member as reflected on Defendant's current and reasonably accessible records, and updated by the Administrator using the Postal Service NCOA database, and/or the Accurint database or other equivalent database, as necessary. The Class Notice shall be sent by first-class mail, postage prepaid, no later than twenty (20) days following the entry of this Order.

9. **Proof of Mailing.** Before the Final Approval Hearing, the Settlement Administrator shall submit to Class Counsel an affidavit of mailing of the Class Notice. Class Counsel shall docket the affidavit promptly.

10. **Findings Concerning Notice.** The Court finds that notice given in the form and manner provided in paragraph 8 of this Order is the best practicable notice and is reasonably calculated, under the circumstances, to apprise the Class Members (i) of the settlement of this action, (ii) the deficiency cancellation and the option to elect against deficiency cancellation (and potential tax ramifications); (iii) of their right to exclude themselves from the Class and the proposed settlement, (iv) that any judgment, whether favorable or not, will bind all Class Members who do not request exclusion, and (v) that any Class Member who does not request exclusion may object

to the settlement and, if he or she desires, enter an appearance personally or through counsel.

The Court further finds that the Class Notice proposed and submitted as an exhibit to the Renewed Motion for Preliminary Approval is of the type approved for use by the Federal Judicial Center (www.fjc.gov/public/home), is written in plain English and is readily understandable by Class Members.  In sum, the Court finds that the proposed notice and methodology for giving notice are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and other applicable law.  The Court further finds that disclosure of data concerning class members to the Settlement Administrator is necessary for implementing the proposed notice program, and authorizes Community Bank to disclose such data to the Settlement Administrator.

11.    **CAFA Notice.**  The Court finds that Community Bank's CAFA Notice of Proposed Settlement complies with 28 U.S.C. § 1715 and approves Community Bank's service of the Notice of Proposed Settlement on the state and federal officials designated.

12.    **Exclusion from Class.**  Any Class Member who wishes to be excluded from the Class must send a written request for exclusion to the Settlement

Administrator at the address provided in the Settlement Class Notice. Any such exclusion request must be sent by first-class mail, postage prepaid, and must be postmarked no later than a date forty (40) days after the date the Notice is mailed by the Administrator. If the proposed settlement is approved, any Class Member who has not submitted a timely, written request for exclusion from the Class shall be bound by all subsequent proceedings, orders and judgments in this action.

13.  **Objections and Appearances.**

a) **Written Objections.** Any Class Member who does not file a timely, written request for exclusion and who complies with the requirements of this paragraph may object to any aspect of the proposed settlement, including the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class's representation by the Representative Plaintiffs or Class Counsel, the award of attorneys' fees and expenses, and/or the individual settlement award to the Representative Plaintiffs. A Class Member may assert such objections either on his or her own or through an attorney hired at his or her expense. To object, a Class Member must send a letter saying that he or she objects to the settlement in *Brennan v. Community Bank, N.A.*, Civil Action No. 13-CV-2939 (MEM). Any objection should state the reasons for the objection and why the objector thinks the Court should

14

not approve the settlement.  The objection must include the name, address, telephone number, email address, if available, signature, and the reasons for the objection to the settlement.  The objection should be filed with the Clerk, U.S. District Court, 235 N. Washington Avenue, P.O. Box 1148, Scranton, PA 18501-1148, with copies mailed to the three different places below, postmarked no later than forty (40) days from the date of the Notice.

| Settlement Administrator | Class Lead Counsel | Defense Counsel |
|---|---|---|
| Strategic Claims Services Community Bank, N.A. Repo Settlement 600 N. Jackson Street, Suite 3 Media, PA  19063 | Cary L. Flitter FLITTER LORENZ, P.C. 450 N. Narberth Avenue, Suite 101 Narberth, PA 19072 | Jonathan B. Fellows BOND, SCHOENECK & KING, PLLC One Lincoln Center Syracuse, NY 13202 |

b) **Other Objections.**  Any Class Member who does not timely file with the Court and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising any objection to the settlement.  Any untimely objection shall be barred, absent extraordinary circumstances.

c) **Notice of Appearance.**  If a Class Member hires an attorney to represent him or her, the attorney must file a notice of appearance with the Office of the Clerk, and deliver a copy of that notice to Defendant's counsel and to Class Counsel, at the addresses set forth in paragraph

10(a) of this Order. Class Counsel and Defendant's counsel must be sent any such notices of appearance and other filings contemporaneously with submission to the Court.

d) **Appearance at Final Approval Hearing.**  Any Class Member who files and serves a timely, written objection pursuant to the terms of paragraph 13 of this Order and complies with the requirements of this paragraph may also appear and be heard at the Final Approval Hearing either in person or through counsel retained at the Class Member's expense.  Class Members or their attorneys intending to appear and be heard at the Final Approval Hearing must deliver to the Court, and to Settlement Administrator, Defendant's counsel and Class Counsel, at the addresses specified in paragraph 10 of this Order, a notice of intention to appear, setting forth the case number and the name, address and telephone number of the Class Member (and, if applicable, the name of the Class Member's attorney).  Notices of intention to appear must be postmarked no later than forty (40) days from the date of the mailing of the Notice.  Any Class Member who does not timely file and serve a notice of intention to appear pursuant to the terms of this paragraph shall not be permitted to appear and be heard at the Final Approval Hearing, except for good cause shown.

16

**14.     Termination of Settlement.**  This Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before the Court entered this Order, if (a) the proposed settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Amended Settlement Agreement; or (b) the proposed settlement is terminated in accordance with the Amended Settlement Agreement or does not become effective as required by the terms of the Amended Settlement Agreement for any other reason. In such event, the proposed settlement and Amended Settlement Agreement shall become null and void and be of no further force and effect, and neither the Amended Settlement Agreement nor the Court's orders, including this Order, shall be used or referred to for any purpose.

**15.     Use of Order.**  This Order shall not be construed or used as an admission, concession, or finding by or against Defendant of any fault, wrongdoing, breach or liability, or of the appropriateness or permissibility of certifying a class on contest or for any purpose other than settlement.  Nor shall the Order be construed or used as an admission, concession, or finding by or against Plaintiffs or the Class Members that their claims lack merit or that the relief requested in their pleadings is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he or it may have.

**16.    Continuance of Hearing.**  The Court reserves the right to continue the Final Approval Hearing without further written notice.

BY THE COURT:

_____

Malachy E. Mannion, U.S.D.J.

# EXHIBIT "B"

**Community Bank Repo Settlement**

**Election to Refuse Debt Waiver**

Please complete this form if you **do not want** Community Bank, N.A. ("the Bank") to waive and eliminate the Auto Finance Deficiency the Bank says is due in the amount of <<Amount of Auto Loan Deficient>>. You do not need to submit this form to receive the cash and credit reporting benefits of the Settlement or if you want your debt to be waived.

You may be required by the Settlement Administrator to provide or confirm your Social Security Number.

| Name | | |
|------|------|------|
| Street | | |
| City | State | Zip |
| Phone | Email | |

I declare that I am the Class Member in the Community Bank Repo Settlement and I **do not want** the Bank to waive and eliminate any Auto Loan Deficiency on my vehicle finance account.

_____        _____
Signature                                                          Date

You must return this form postmarked by **Month 00, 2015** to: Strategic Claims Services, Community Bank Repo Settlement, P.O. Box 0000, City, ST 00000.

# EXHIBIT "C"

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

# If Your Vehicle Was Repossessed With Community Bank or First Liberty Bank & Trust,

## You Could Benefit from a Class Action Settlement.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A Settlement has been reached with the Community Bank, N.A. ("the Bank") in a class action lawsuit about whether the Bank sent borrowers proper notice of their rights after vehicle repossession and related claims.  The Bank has also operated as First Liberty Bank & Trust in Pennsylvania.

- You may be included in the Settlement if you live in New York or Pennsylvania and bought a motor vehicle for personal use between October 2007 and September 2014 that was financed through the Bank or had a sale contract assigned to the Bank (*see* Question 5).

- The Settlement will provide payments between $287 and $815 to eligible motor vehicle owners.  It will also allow certain related debt to be eliminated.  In addition, the Settlement requires the Bank to ask the Credit Reporting Agencies to delete any negative credit reporting related to financing of the repossessed vehicle (*see* Questions 7, 9, and 10).

**Your legal rights are affected even if you do nothing.  Please read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | Remain in the Settlement.  Automatically receive a payment, a credit reporting benefit, and to have any outstanding debt relating to your repossessed vehicle eliminated, if the settlement is approved. |
| **SUBMIT A FORM TO REFUSE DEBT WAIVER** | The only way to refuse to have any outstanding debt eliminated.  If you want your debt waived, it may impact your taxes (*see* Questions 10, 13, and 16.) |
| **ASK TO BE EXCLUDED** | Get no payment or benefits.  This is the only option that allows you to participate in any other lawsuit against the Bank concerning the repossession of your vehicle. |
| **OBJECT** | Write to the Court if you don't like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will only be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

| **What This Notice Contains** |
|---|

**BASIC INFORMATION** ......................................................................................... 3
    1.    Why is there a notice?
    2.    What is this lawsuit about?
    3.    Why is this a class action?
    4.    Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** ......................................................................... 3
    5.    How do I know if I am part of the Settlement?
    6.    What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS** ............................................................................ 4
    7.    What does the Settlement provide?
    8.    How much will my payment be?
    9.    What is the credit reporting benefit?
    10.    What is the debt waiver benefit?
    11.    When will I receive my benefits?
    12.    What am I giving up if I remain in the Class?
    13.    Will this affect my taxes?

**HOW TO GET BENEFITS** .................................................................................... 6
    14.    Do I need to do anything to get a payment or the credit reporting benefit?
    15.    Do I need to do anything to have my outstanding debt eliminated?
    16.    What if I do not want my outstanding debt eliminated?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ........................................... 7
    17.    How do I get out of the Settlement?
    18.    If I do not exclude myself, can I sue the Bank for the same thing later?
    19.    If I exclude myself, can I still benefit from this Settlement?

**THE LAWYERS REPRESENTING YOU** ............................................................... 8
    20.    Do I have a lawyer in the case?
    21.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................................................. 8
    22.    How do I tell the Court if I do not like the Settlement?
    23.    What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** .................................................................. 9
    24.    When and where will the Court decide whether to approve the Settlement?
    25.    Do I have to attend the hearing?
    26.    May I speak at the hearing?

**GETTING MORE INFORMATION** ...................................................................... 10
    27.    How do I get more information?

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.COMMUNITYBANKREPOSETTLEMENT.COM

# BASIC INFORMATION

### 1. Why is there a notice?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights. If the Court approves it, and after objections and appeals, if any, are resolved, the Settlement Administrator will make the payments the Settlement allows.

Judge Malachy E. Mannion of the United States District Court for the Middle District of Pennsylvania is overseeing this case. This litigation is known as *Brennan v. Community Bank, N.A.,* No. 13-cv-02939. The people who sued are called the "Plaintiffs." Community Bank, N.A is the "Defendant." The Bank has also operated as First Liberty Bank & Trust in Pennsylvania.

### 2. What is this lawsuit about?

The lawsuit claims that the Bank violated New York and Pennsylvania law when it failed to send its borrowers in those states proper notice of their rights after repossession of a financed vehicle. Plaintiffs claim that the notice, whether or not sent, did not contain the required information (date of sale, whether the auction would be public or private, and relevant information about the debt, etc.). Plaintiffs also claim that other state laws may have been violated by the Bank in connection with the repossession of motor vehicles.

The Bank denies these claims and maintains they did nothing wrong. The Bank also asserts other defenses, including that the time to sue has expired on the claims of New York Class Members whose vehicles were repossessed before July 14, 2011, and on Pennsylvania Class Members whose vehicles were repossessed before October 30, 2011.

### 3. Why is this a class action?

In a class action, one or more people called "class representatives" sue on behalf of themselves and other people with similar claims. All of these people together are the "class" or "class members." In this case, the Class Representatives are Carol A. Brennan, Anthony Colino, and Courtney Bellomo. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or the Bank. Instead, both sides have agreed to a Settlement. By agreeing to settle, both sides avoid the cost and risk of a trial, and the people affected will get a chance to receive compensation. The Class Representatives and their attorneys think the Settlement is best for all Class Members. The Settlement does not mean that the Bank did anything wrong.

## WHO IS IN THE SETTLEMENT?

If you received this notice in the mail, the Bank's records indicate you are part of the Class. But even if you did not receive a mailed notice, you may be a Class Member, as described below.

| 5. How do I know if I am part of the Settlement? |
| --- |

You are included in the Settlement if you:
- Bought a motor vehicle primarily for personal use;
- Financed the vehicle through the Bank or had a sale contract with a car dealer that arranged financing with the Bank; and
- Fit one of three groups:
  - <u>Group A:</u> You lived in Pennsylvania and your vehicle was repossessed from October 30, 2007 through September 30, 2014;
  - <u>Group B:</u> You lived in New York and your vehicle was repossessed from July 15, 2011 through September 30, 2014; or
  - <u>Group C:</u> You lived in New York and your vehicle was repossessed from July 15, 2008 through July 14, 2011.

| 6. What if I am not sure whether I am included in the Settlement? |
| --- |

If you are not sure whether you are included in the Settlement, you may call 1-800-000-0000 with questions or visit www.CommunityBankRepoSettlement.com.  You may also write with questions to Community Bank Repo Settlement, P.O. Box 0000, City, ST 00000.

## THE SETTLEMENT BENEFITS

| 7. What does the Settlement provide? |
| --- |

If the Settlement is approved and becomes final, it will provide the following benefits:
- $2.8 million to a Settlement Fund to pay eligible Class Members, attorneys' fees and expenses, the costs of administering the Settlement, and special service payments to the Class Representatives who helped with the lawsuit (*see* Question 21);
- A credit reporting benefit (*see* Question 9); and,
- The elimination of up to $16,326,236 in outstanding debt related to the financing of repossessed vehicles if all Class Members choose the debt waiver benefit (*see* Question 10).

If there is any money left in the Settlement Fund after claims, fees and expenses have been paid it will be donated to Court-approved consumer organizations.

More details are in a document called the Settlement Agreement, which is available at www.CommunityBankRepoSettlement.com.

| 8. How much will my payment be? |
| --- |

You will receive a proportional share of the Settlement Fund (after costs, expenses, and awards are paid out) based on whether you are in Group A or Group B or Group C (*see* Question 5).  Payment amounts for each group will vary depending on which state you live in, whether the time to file a lawsuit may have run out or not, and the number of Class Members in the group.  In addition, if, before September 18, 2012, you were sent a Deficiency Notice explaining how your outstanding debt was calculated after your car was sold, you will receive an additional payment.

The table below outlines the <u>estimated</u> payment amounts and number of Class Members for each Group:

| GROUP | NUMBER OF CLASS MEMBERS | SHARE OF SETTLEMENT FUND | ADDITIONAL PAYMENT FOR DEFICIENCY NOTICE |
|---|---|---|---|
| Group A | 832 | $753 | $62 |
| Group B | 1024 | $609 | $52 |
| Group C | 1100 | $287 | $25 |

If you were a co-borrower with another person, then the cash payment will be split evenly between each co-borrower.  If you had more than one vehicle repossessed by the Bank, you will be entitled to benefits for each repossessed vehicle.  If your vehicle was repossessed more than once, you can only receive one payment.

Note: This settlement has potential tax implications for you.  The Settlement Administrator expects to issue IRS 1099 forms for cash payments (*see* Question 13).

### 9.  What is the credit reporting benefit?

As part of the Settlement, the Bank will ask Experian, Equifax, and TransUnion (the "Credit Reporting Agencies") to delete their negative credit reporting relating to your repossessed vehicle if it was sold at auction or otherwise sold by the Bank.

### 10.  What is the debt waiver benefit?

As part of the Settlement, you have the opportunity to have any outstanding debt related to your repossessed vehicle eliminated if you choose.  This outstanding debt is called an "Auto Loan Deficiency."  It is the amount that the Bank says you still owe on your finance agreement after the sale of your repossessed car (plus any additional fees and less any payments you may have made after the repossession).

- Example: John owed $10,000 on his repossessed vehicle and the Bank paid $400 in repossession/towing fees, and $300 in auction house fees.  His vehicle sold for $6,000 at auction. John's Auto Loan Deficiency would be $4,700.

    Calculation = [($10,000 + $400 + $300) − ($6,000)]

    $10,700 − $6,000 (amount from sale of vehicle) = $4,700

    **Amount of John's Auto Loan Deficiency Claimed Due by Bank** = $4,700

If you do not want your debt waived, you will need to file an Election to Refuse Debt Waiver Form (*see* Question 16).  If you do nothing, the Bank will automatically waive and eliminate your Auto Loan Deficiency. In addition, if you have already been sued and there is a legal judgment against you relating to your Auto Finance Deficiency, the Bank will inform the Court that you have resolved the issue and release the judgment.  The amount the Bank says is due on your Repossession Deficiency is included in the cover letter.  If you do not know if you have any deficiency, you can call Class Counsel at 1-888-668-1225 to find out the amount of your deficiency, if any.

Note: If you choose forgiveness of your Auto Loan Deficiency, the Bank will send a form to the Internal Revenue Service (the IRS) in the amount noted above. **This could result in your having to declare income in that amount on your next tax return and pay tax on all or some of that amount.**  You

should consult your tax advisor to help decide if choosing the debt waiver benefit is right for you (*see* Question 13).

### 11. When will I receive my benefits?

Class Members who are entitled to benefits will receive their payments and other benefits after the Court grants final approval to the Settlement and after any appeals are resolved (*see* "The Court's Fairness Hearing" below). If there are appeals, resolving them can take time. Please be patient.

### 12. What am I giving up if I remain in the Class?

Unless you exclude yourself from the Settlement, you will give up your right to sue (or continue to sue) the Bank for the claims being resolved by this Settlement. You will be "releasing" the Bank and all related people as described in section 5.02 of the Settlement Agreement. The full Settlement Agreement is available at www.CommunityBankRepoSettlement.com.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the law firms listed in Question 20 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

### 13. Will this affect my taxes?

Yes. This Settlement has potential tax implications for you. The Settlement Administrator expects to inform the Internal Revenue Service ("IRS") about the amount of your cash payment and the amount of your Auto Loan Deficiency waived (if more than $600 is waived). This could result in you having to declare income in that amount on your next tax return and pay taxes on some or the entire amount of cash and debt forgiveness.

You should consult your tax advisor to help decide if choosing the debt waiver benefit is right for you. You or your tax advisor may be able to reduce the income from the deficiency forgiveness by submitting an IRS Form 982, if applicable.

You may be required to confirm your Social Security Number to the administrator to get your share of the Settlement Fund.

## HOW TO GET BENEFITS

### 14. Do I need to do anything to get a payment or the credit reporting benefit?

No. You do not need to do anything further to remain in the Class. You will get a payment and the credit reporting benefit automatically, after court approval of the Settlement.

### 15. Do I need to do anything to have my outstanding debt eliminated?

No. Unless you submit an Election to Refuse Debt Waiver Form, any outstanding debt related to the financing of your repossessed vehicle will automatically be eliminated. This may have significant tax implications for you (*see* Question 13). If you did not receive a form in the mail, Election to Refuse Debt Waiver Forms are available at www.CommunityBankRepoSettlement.com or by calling 1-800-000-0000.

If you **do not want** your outstanding debt to be waived, please read the instructions carefully, fill out the form, and mail it postmarked no later than **Month 00, 2015** to:

Strategic Claims Services
Community Bank Repo Settlement
P.O. Box 0000
City, ST 00000

| **16.  What if I do not want my outstanding deficiency debt eliminated?** |
| --- |

If you do not want the deficiency debt that the Bank says is due to be waived, you must fill out the Election to Refuse Debt Waiver Form, and mail it to the address in Question 15 postmarked by **Month 00, 2015**.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment or other benefits from this Settlement, and you want to keep the right to sue or continue to sue the Bank on your own about the issues in this case, then you must take steps to get out of the Settlement.  This is called excluding yourself—or it is sometimes referred to as "opting out" of the Class.

| **17.  How do I get out of the Settlement?** |
| --- |

To exclude yourself, send a letter that says you "want to be excluded from the Settlement in *Brennan v. Community Bank, N.A.*, No. 13-cv-02939."  Be sure to include your name, address, email (if available), telephone number, and signature as well as that of any co-owner(s).  You must mail your Exclusion Request postmarked by **Month 00, 2015**, to:

| SETTLEMENT ADMINISTRATOR |
| --- |
| Strategic Claims Services
Community Bank, N.A. Repo
Settlement
P.O. Box 0000
City, ST 00000 |

| **18.  If I do not exclude myself, can I sue the Bank for the same thing later?** |
| --- |

No.  Unless you exclude yourself, you give up any right to sue the Bank for the claims that this Settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that case immediately because your legal rights may be affected by this Settlement.  You must exclude yourself from this Class to start or to continue your own lawsuit for the same or similar claims.

| **19.  If I exclude myself, can I still benefit from this Settlement?** |
| --- |

No.  If you exclude yourself, you will not receive any money from this lawsuit or settlement, a waiver of any Auto Loan Deficiency, or any other benefit.

## THE LAWYERS REPRESENTING YOU

**20. Do I have a lawyer in the case?**

Yes.  The Court has approved the law firm of Flitter Lorenz, P.C., in Narberth, Pennsylvania, and other law firms to represent you and other Class Members.  These lawyers are called "Class Counsel."  The firm of Flitter Lorenz, P.C. is acting as Lead Counsel and the primary point of contact for the Class.  You will not be charged individually for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**21. How will the lawyers be paid?**

Class Counsel will ask the Court for attorneys' fees of up to $1,092,000 and expenses of up to $20,000.  The fees and expenses awarded by the Court will be paid out of the Settlement Fund.  Class Counsel will also request special service payments of $5,000 each for the three Class Representatives for their services for the Class.  These service payments will also be paid from the Settlement Fund.  The Court could decide to award less than the amounts requested for fees and service payments.

## OBJECTING TO THE SETTLEMENT

**22. How do I tell the Court if I do not like the Settlement?**

If you are a Class Member, you can object to the Settlement if you don't like any part of it.  You should state why you object and why you think the Court should not approve the Settlement.  The Court will consider your views.  To do so, you must send a letter that includes the following:
- A statement that you "object to the Settlement in *Brennan v. Community Bank, N.A.*, No. 13-cv-02939."
- Your full name, address, email address (if available), and telephone number;
- The specific reasons why you object to the Settlement; and
- Your signature.

You must mail the objection to all three of the addresses below postmarked no later than **Month 00, 2015**, and, if possible, file it electronically with the Clerk of the Court:

| COURT | LEAD CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk<br>U.S. District Court for the<br>Middle District of Pennsylvania<br>235 N. Washington Ave.<br>P.O. Box 1148<br>Scranton, PA 18501-1148 | Cary L. Flitter<br>FLITTER LORENZ, P.C.<br>450 N. Narberth Ave.<br>Suite 101<br>Narberth, PA 19072 | Jonathan B. Fellows<br>BOND, SCHOENECK &<br>KING, PLLC<br>One Lincoln Center<br>Syracuse, NY 13202 |

**23. What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court that you don't like something about the Settlement, and that you, for some reason, want the Settlement not to be approved.  You can object only if you don't exclude yourself from the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses. You may attend and you may ask to speak, but you do not have to.

### 24.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing on **Month 00, 2015** at XX:00 x.m. in Courtroom X, at the William J. Nelson U.S. Courthouse, 235 Washington Avenue, Scranton, PA. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.CommunityBankRepoSettlement.com or call 1-800-000-0000. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay the Class Representatives for their service awards and Class Counsel for their services and expenses. Following the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 25.  Do I have to attend the hearing?

No. Class Counsel will answer questions the Court may have. But you are welcome to come at your expense. If you file an objection, you do not have to come to Court to talk about it, but you may. As long as you filed your written objection on time, the Court will consider it. You may also pay your own lawyer attend, but it is not necessary.

### 26.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Brennan v. Community Bank, N.A.*, No. 13-cv-02939." Be sure to include your name, address, email address if you have one, telephone number, and your signature. Your Notice of Intention to Appear must be electronically filed or postmarked no later than **Month 00, 2015**, and must be sent to the addresses listed in Question 22. You cannot speak at the hearing if you exclude yourself from the Settlement.

## GETTING MORE INFORMATION

| 27. How do I get more information? |
| --- |

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement and other important case documents at www.CommunityBankRepoSettlement.com. You may also examine these documents in person during regular office hours at the Clerk, United States District Court for the Middle District of Pennsylvania, William J. Nealon U.S. Courthouse, 235 Washington Avenue, Scranton Pennsylvania or online at any time at www.pacer.gov. The Election to Refuse Debt Waiver Form is also available at the website, or by calling the toll free number, 1-800-000-0000.

You may contact Class Counsel with questions (*see* Question 20) or write to Community Bank Repo Settlement, P.O. Box 0000, City, ST 00000 or call 1-800-000-0000.

# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, COURTNEY BELLOMO, individually and on behalf of all others similarly situated, <br><br>                  Plaintiffs <br><br>     vs. <br><br> COMMUNITY BANK, N.A., <br>               Defendant | CLASS ACTION <br><br><br><br><br><br><br><br><br> NO. 13-CV-02939 (MEM) |

## **ORDER FOR FINAL JUDGMENT AND DISMISSAL**

WHEREAS, Carol A. Brennan, Anthony Colino and Courtney Bellomo (the "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Class Members, and Community Bank, N.A. ("Bank"), Defendant in the above-captioned action (the "Action"), have entered into, and filed with the Court, an Amended Class Action Settlement Agreement and Release (the "Amended Settlement Agreement") (Doc. No. _____);

WHEREAS, the Court on _____, 2015, entered an Order Preliminarily Approving the Settlement ("Preliminary Approval Order") and making a preliminary determination on class certification (Doc. No. _____);

WHEREAS, on _____, 2015, beginning at _____ o'clock _____ in Courtroom _____, William J. Nealon U.S. Courthouse, 235

Washington Avenue, Scranton, Pennsylvania, this Court held a hearing to consider, among other things: (i) whether the settlement reflected in the Amended Settlement Agreement should be approved as fair, reasonable, adequate, and in the best interests of the members of the Class; (ii) whether final judgment should be entered dismissing the claims of the members of the Class with prejudice and on the merits, as required by the Amended Settlement Agreement; and (iii) whether to approve Plaintiffs' application for Class Representative service awards and (iv) Plaintiffs' request for an award of Class Counsel fees, costs, and expenses from the common fund;

WHEREAS, based on the foregoing, having heard the statements of counsel for the parties and of such persons who chose to appear at the final approval hearing, having considered all of the files, records, and proceedings in the action, including specifically the Amended Settlement Agreement (and the exhibits appended thereto), the memoranda and other papers filed by the parties in support of final approval of the proposed amended settlement, any objections or comments raised at the hearing;

THE COURT HEREBY FINDS AND ORDERS:

1.     **Notice to the Class**:  Notice to the Class has been provided by the Settlement Administrator pursuant to this Court's Order of Preliminary Approval, as attested to by the Affidavit of the Settlement Administrator (Doc. No. ____).  The

notice given to members of the Class by first class mail constituted due and sufficient notice of the settlement and the matters set forth in said notices to all persons entitled to receive notice, and fully satisfies the requirements of due process and Fed.R.Civ.P. 23(c) and 23(e).

2. **Notice Pursuant to the Class Action Fairness Act:** Community Bank has served the CAFA Notice of Proposed Settlement and complied in all respects with its obligations under 28 U.S.C. § 1715.

3.      **Settlement Approved**: The proposed settlement set forth in the parties' Amended Settlement Agreement, a copy of which was filed with the Renewed Motion for Preliminary Approval, is fair, reasonable, adequate and in the best interests of the Class. The terms in this Order shall be interpreted in accordance with the definitions in the Amended Settlement Agreement. All aspects of the Amended Settlement Agreement are approved. The Class Representatives' individual service awards are approved.

4.      **Class Counsel Fees and Expenses**. The Court has reviewed the application for Class Counsel fees and expenses, and the documentation submitted in support. Consistent with the criteria set forth in Fed.R.Civ.P. 23(h), and established law providing for payment of reasonable counsel fees and expenses to class counsel from a common fund created for the benefit of the Class, the Court finds the value of cash, the forgiveness of deficiency debt claimed due and the valuable equitable relief of

3

credit report correction is valued considerably above the $2,800,000.00 in cash provided in the Amended Settlement Agreement.

The request for an award of fees to Class Counsel in the sum of $_____ is approved as fair and reasonable considered in light of all the factors to be considered. The fees represent approximately _____% of the value of the settlement excluding the value of the credit report reparation, which the Court finds of considerable added value to the Class. The lodestar cross-check is appropriate. Litigation expenses of Class Counsel have been adequately documented, were reasonable and necessary for effective prosecution of the case. Expenses are approved in the requested sum of $_____. Each may be paid from the Settlement Fund. Class Counsel may allocate fees and allowed costs among themselves as they agree or have agreed.

5.      **Dismissal and Related Matters**:

a.      The claims of all members of the Class, except those who timely excluded themselves from the Class pursuant to Paragraph 4.03 of the Amended Settlement Agreement, are hereby dismissed with prejudice, on the merits and without costs to any party. A list of those Class Members who excluded themselves, if any, was submitted with the Motion for Final Approval, and is appended hereto. Those individuals are excluded from this case and this settlement.

4

b.     Class Representatives, on their own behalf and on behalf of each Class Member, by operation of this release and the judgment, hereby shall be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with prejudice the Defendant of and from any and all Released Claims ("Released Claims" shall have the meaning defined in the Amended Settlement Agreement), and shall be forever barred and enjoined from instituting or further prosecuting, in any forum, including, but not limited to, any state or federal court or arbitration, administrative or other proceeding, any Released Claim.

c.     The Class Representatives, on their own behalf and on behalf of each Class Member, have acknowledged that they are aware that he or she may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of this Release, but that it is his or her intention to, and he or she is hereby deemed, upon the Effective Date of the Amended Settlement Agreement, to fully, finally and forever settle and release the Defendant from any and all Released Claims, known or unknown, suspected or unsuspected, contingent or matured, which now exist, may hereafter exist, or may heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

d.     The Class Representatives, on their own behalf and on behalf of each Class Member, have acknowledged and agreed that he or she cannot raise any

Released Claim as a defense to any action brought by Defendant against them in connection with an action seeking repayment of an obligation other than an obligation waived under the Amended Settlement Agreement.

e.      On the Effective Date, solely by operation of law and pursuant to the Amended Settlement Agreement, the Bank shall be deemed to have released, settled, compromised, relinquished and discharged with prejudice all Class Members with a Deficiency Balance except for those Class Members who have elected against deficiency cancellation, including the Class Representatives, their agents, attorneys, heirs and assigns, from any and all claims, known or unknown, that they have had in the past, or now have, or may have in the future against the Class Member arising from or related to the motor vehicle installment sale contracts to which the Class Members are signatories.  The Bank and its agents are hereby enjoined from any further attempts to collect such monies from Class Members except as against Class Members who have elected against deficiency cancellation.  This release shall not apply to any Class Member who reinstated their contract or reclaimed and/or obtained the return of their vehicle following repossession and/or who does not appear on the records of the Bank as owing a Deficiency Balance.  The Bank shall satisfy or release any state court judgments against Class Members arising from the repossession of their vehicles as provided in § 2.11 of the Amended Settlement Agreement.

f.     In light of the notice given to the Class Members, the Plaintiffs and all Class Members who did not exclude themselves shall be bound by the Amended Settlement Agreement and all of their Settled Claims shall be dismissed with prejudice and released.

g.     Class Representative service awards are allowed in the sum of Five Thousand Dollars ($5,000.00) each, payable from the class *res* to Ms. Brennan, Ms. Bellomo and Mr. Colino.

6.     ***Cy Pres***. The Court approves as *cy pres* beneficiaries North Penn Legal Services, National Consumer Law Center, and Empire Justice Center of New York. The Funds remaining after distribution of the Settlement Fund to Class Members, for Class Counsel fees and for administration expenses, plus interest accrued on the Settlement Fund, if any, shall be distributed by the Settlement Administrator in equal one-third shares to said beneficiaries.

7.     **Continuing Jurisdiction**. Consummation of the settlement shall proceed as described in the Amended Settlement Agreement and the Court hereby specifically retains jurisdiction of this matter in order to resolve any disputes which may arise in the implementation of the Amended Settlement Agreement or the implementation of this Final Judgment and Order. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). The Court retains continuing jurisdiction for purposes

of supervising the implementation of the Amended Settlement Agreement and supervising the distribution and allocation of the Settlement Fund.

Final judgment is entered as provided herein.

BY THE COURT:

_____

Malachy E. Mannion, U.S.D.J.