IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, and COURTNEY BELLOMO, individually and on behalf of all others similarly situated, <br> Plaintiffs, <br><br> vs. <br><br> COMMUNITY BANK, N.A. <br> Defendant. | NO. 13-CV-02939 <br><br><br><br> JUDGE MANNION <br><br><br> CLASS ACTION |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
RENEWED MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

\*\*\*

**CERTIFICATIONS AND EXHIBITS IN SUPPORT THEREOF**

Cary L. Flitter
Theodore E. Lorenz
Andrew M. Milz
FLITTER LORENZ, P.C.
450 N. Narberth Ave.
Suite 101
Narberth, PA 19072
(610) 822-0782

Timothy Polishan
Eugene C. Kelley
KELLEY POLISHAN &
SOLFANELLI, LLC
259 South Keyser Ave.
Old Forge, Pa 18518
(570) 562-4520

M. Scott Barrett
BARRETT WYLIE, LLC
Showers Plaza
P.O. Box 5233
320 West 8th Street
Suite 100
Bloomington, IN 47407
(812) 334-2600

## **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION.................................................................................. 1

II.  FACTS AND PROCEDURAL HISTORY ......................................... 3

   A.  Nature of Plaintiffs' Claims Under the UCC.................................... 3

     1.  Defective Repossession Notice.................................................... 3

     2.  Defective Deficiency Notice......................................................... 6

   B.  Procedural History ............................................................................ 7

   C.  The Settlement Agreement as Amended ........................................ 12

III. QUESTION PRESENTED .............................................................. 15

IV.  LEGAL ARGUMENT ..................................................................... 15

   A.  The Elements for Class Certification are Met ............................... 15

     1.  Rule 23(a)(1) – The Class is Sufficiently Numerous ................. 17

     2.  Rule 23(a)(2) – The Bank's Standard Form Repossession Notices Present Common Issues of Law and Fact ..................................... 17

     3.  Rule 23(a)(3) – Typicality is Met as Plaintiffs Press the Same Claim as Every Member of the Class ........................................... 19

     4.  Rule 23(a)(4) – Plaintiffs and Class Counsel are Adequate ...... 20

     5.  Rule 23(b)(3) – Common Questions of Law or Fact Predominate ........... 22

     6.  Rule 23(b)(3) – A Class Action is Superior to Other Available Methods to Resolve this Controversy ................................................................................... 23

  B.  The Settlement Should be Preliminarily Approved ....................................... 25

    1.  The Settlement was Reached After Arms-Length Negotiations ............... 26

    2.  The Settlement is Fair and Contains no Deficiencies ................................. 26

    3.  The Settlement is Within the Range of Reasonableness ........................... 30

    4.  Class Counsel Recommends the Settlement ............................................... 31

  C.  Class Notice ................................................................................................... 32

V.  CONCLUSION ...................................................................................................... 34

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Allen v. Holiday Universal*, 249 F.R.D. 166 (E.D. Pa. 2008) ........................... 21, 22

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................... 16

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir.1994) ....................................................... 19

*Banca Commerciale v. Northern Trust, Int'l*, 1997 WL 217591 (S.D.N.Y. Apr. 30, 1997), *aff'd* 160 F.3d 90 (2d Cir. 1998) ................................................................. 13

*Boone v. City of Philadelphia*, 668 F. Supp. 2d 693 (E.D. Pa. 2009) ..................... 30

*Chakejian v. Equifax Inf. Srvs., Inc.*, 256 F.R.D. 492 (E.D. Pa. 2009) ................... 19

*Chisolm v. Transouth Fin. Corp.*, 194 F.R.D. 538 (E.D. Va. 2000) .................16

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .................................................. 22

*Cosgrove v. Citizens Auto Fin.*, 2010 WL 3370760 (E.D. Pa. Aug. 26, 2010) ................................................................................ 4, 5

*Cosgrove v. Citizens Auto Fin. Inc.,* 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011)……………………………………………………………..passim

*Coxall v. Clover Comm.*, 4 NY Misc. 3d 654, 781 N.Y.S.2d 567 (Supreme Ct. Kings Co. 2004) ...................................................................................... 4, 5, 6

*Craig v. Rite Aid Corp.,* 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ......................... 29

*Cubler v. Trumark Fin. Cr. Un.*, 83 A.3d 235 (Pa. Super. Ct. 2013) .............. passim

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ................. 21

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ................................... 26

*Gates v. Rohm and Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) .............................. 25

*General Motors Acc. Corp. v. Vucich*, 15 N.Y.A.D. 3d 106 (3d Dept. 2005) ........ 13

*Harlan v. Transworld Sys.*, 302 F.R.D. 319 (E.D. Pa. 2014).................................. 20

*Hartt v. Flagship Credit Corp.*, 2010 WL 2736959, 72 UCC Rep.Serv.2d 697
(E.D. Pa. July 8, 2010)......................................................................16

*In re Bristol Assoc., Inc.*, 505 F.2d 1056 (3d Cir. 1974)........................................... 6

*In re Chocolate Confectionary Antitr. Litig.*, 289 F.R.D. 200
(M.D. Pa. 2012) ................................................................................. 18, 20

*In re Community Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) .............................. 20

*In re Flonase Antitr. Litig.*, 291 F.R.D. 93 (E.D. Pa. 2013)................................... 25

*In re NFL Players Concussion Injury Litig.*, 775 F.3d 570 (3d Cir. 2014) ...... 15, 25

*In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997),
*aff'd* 117 F.3d 720 (2d Cir. 1997)......................................................... 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283
(3d Cir. 1998) .................................................................................... 23

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009).............. 18

*Jordan v. Commw. Fin. Sys., Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006)................. 19, 20

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)........................... 24

*Logory v. Co. of Susquehanna*, 277 F.R.D. 135 (M.D. Pa. 2011) ......................... 17

*McCall v. Drive Fin. Servs., LP*, 2009 WL 8712847
(Phila. C.C.P. Apr. 10, 2009) ........................................................... passim

*Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202 (E.D.
Pa. 2014) ..................................................................................... 16, 23

*Perry v. Fleet Boston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005)........................ 33

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013)............................. 15, 18

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)................................................. 17

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)...........................................15

*Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006)................33

*Walczak v. Onyx Acceptance Corp.*, 850 N.E.2d 357
(Ill. Ct. App. 2d Dist. 2006)...................................................................16

*Wallace v. Powell,* 301 F.R.D. 144 (M.D. Pa. 2014).........................................passim

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................16, 17

**Statutes**

13 Pa. C.S. § 9601 ...........................................................................1

13 Pa. C.S. § 9611(b)........................................................................4

13 Pa. C.S. § 9613 .......................................................................4, 5

13 Pa. C.S. § 9614 .......................................................................4, 5

13 Pa. C.S. § 9614(1)(ii)....................................................................5

13 Pa. C.S. § 9616 ...........................................................................6

13 Pa. C.S. § 9625 ..........................................................................24

13 Pa. C.S. § 9625(c)........................................................................23

13 Pa. C.S. § 9625(c)(2) ...........................................................5, 20, 29, 30

13 Pa. C.S. § 9625(e)(5) .....................................................................7

28 U.S.C. § 1332(d)..........................................................................7

N.Y. U.C.C. Law § 9-601.....................................................................1

N.Y. U.C.C. Law § 9-611(b)..................................................................4

N.Y. U.C.C. Law § 9-613.....................................................................4

N.Y. U.C.C. Law § 9-614 ..................................................................................... 4, 5

N.Y. U.C.C. Law § 9-616 ....................................................................................... 6

NY U.C.C. Law § 9-625 .................................................................................... 13, 24

N.Y. U.C.C. Law § 9-625(c)(2) ...................................................................... 5, 6, 29

NY UCC Law § 9-625(e) ........................................................................................ 7

## Other Authorities

I.R.S. P.L.R. 201240001 (Oct. 5, 2012) ............................................................... 28

MANUAL FOR COMPLEX LITIGATION, Fourth (2004) § 21.632 ............................... 25

## Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 7

Fed. R. Civ. P. 23 ......................................................................................... passim

Fed. R. Civ. P. 23(a) ................................................................... 15, 16, 17, 34

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 17

Fed. R. Civ. P. 23(a)(2) ................................................................................. 17, 18

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 19

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 20

Fed. R. Civ. P. 23(b) ..................................................................................... 15, 16

Fed. R. Civ. P. 23(b)(3) ............................................................................... passim

Fed. R. Civ. P. 23(c) .......................................................................................... 33

Fed. R. Civ. P. 23(c)(2) ...................................................................................... 33

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 32

Fed. R. Civ. P. 23(e) ....................................................................... 25, 33

Fed. R. Civ. P. 23(e)(1) ........................................................................ 32

Fed. R. Civ. P. 23(h) ............................................................................ 30

NY CPLR § 213 .................................................................................... 13

NY CPLR § 214(2) ............................................................................... 13

**Treatises**

NEWBERG ON CLASS ACTIONS § 12:35 ................................................. 14

**Regulations**

26 C.F.R. § 1.6050P ............................................................................. 28

## I.  **INTRODUCTION**

Plaintiffs, Carol A. Brennan, Anthony Colino, and Courtney Bellomo, move the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of an amended class-wide settlement reached in this matter alleging violations of the Article 9 consumer protection provisions of the Uniform Commercial Codes of Pennsylvania and New York.   13 Pa. C.S. §9601, *et seq*; N.Y. U.C.C. Law § 9-601, *et seq* (McKinney).   In their Amended Complaint (Doc. No. 57), Plaintiffs allege that the uniform notice of disposition of collateral, or "Repossession Notice," the defendant bank sent to Pennsylvania and New York consumers was defective as it failed to set forth mandatory disclosures required by both states' UCCs.

The parties have reached a class settlement, subject to approval of this Court. The Amended Settlement Agreement (attached as Exhibit "1" to Plaintiffs' Motion for Preliminary Approval, Doc. No. 72, and Exhibit "1" hereto) calls for: (1) Defendant Community Bank, N.A. to pay $2,800,000.00 into a settlement fund; (2) the Bank to waive entirely any Auto Loan Deficiency arising from repo and auction of his vehicle (unless the class member elects against this relief); and (3) the Bank to advise the credit bureaus to delete entirely the Bank tradeline in the credit report related to the subject auto finance accounts for all Class Members.

The settlement was reached after months of litigation, arms-length negotiations between the parties, and mediation by a retired federal magistrate judge.

1

Preliminary approval was initially sought by motion dated January 5, 2015 (Doc. No. 72).  After a January 27, 2015 in-court conference on the proposed settlement, the Court expressed some concern about one issue: optional versus presumptive forgiveness of the claimed deficiency debt.  Thereafter, the parties engaged in a round of further discussions and Class Counsel conferred with tax experts.[1]  The Plaintiffs, Class Counsel and the Bank were thereafter able to come to terms revising the debt forgiveness to presumptive.  Class Counsel recommends approval of the settlement as amended.  The proposed amended settlement is an excellent result for the Class, and is worthy of approval.  All the requirements of Rule 23 are met.  The

---

[1]     Following the January 27, 2015 conference, *Brennan* Class Co-Counsel Flitter spoke several times with *Urban* counsel, Mr. Shenkan, and conducted two or more conference calls among Flitter, Shenkan and Bank counsel to discuss issues.  When Flitter advised Shenkan in a March 9, 2015 phone call that the Bank was prepared to move to *presumptive debt forgiveness* with an option for the Class Member to elect-out of that relief, Mr. Shenkan said he was encouraged, but then raised a host of additional terms for the settlement agreement, including an effort to renegotiate previously agreed-to terms.  Flitter continued to negotiate the revised terms with the Bank and to re-format the Class Notice.  Flitter produced to Shenkan on March 18, 2015, a revised *Brennan* settlement agreement for review if Urban wishes to be a part of the settlement.  On March 23, 2015, Flitter sent to Shenkan a *second* form of agreement which was substantially identical to the March 18 version, but incorporated the *Urban* matter.  Mr. Shenkan advised on March 24, 2015, that his client did not approve the terms of the amended agreement, that he would want significant changes.  With the clock ticking on getting an amended agreement done, signed and filed, and with Urban having declined a *second* opportunity to join in to an excellent class settlement, the *Brennan* Plaintiffs executed and filed their amended settlement agreement and Renewed Motion for Preliminary Approval timely on March 25, 2015 (Doc. No. 87). This brief is filed in support.

Court should therefore make its preliminary determination on class certification and preliminary approval of the settlement should be granted such that Notice may issue to the Class.

## II.   FACTS AND PROCEDURAL HISTORY

### A. Nature of Plaintiffs' Claims Under the UCC

#### 1. Defective Repossession Notice

In February 2006, Carol Brennan obtained vehicle financing from Defendant Community Bank, N.A. (then trading as First Liberty Bank & Trust, and herein referred to as the "Bank") to finance the purchase of a used Jeep.   A copy of Brennan's Motor Vehicle Installment Sale Contract ("Contract") is attached as Exhibit "2" hereto.  The Bank was the assignee and secured party.  Ms. Brennan paid on the loan for five years.  But when she was unable to keep up with the ongoing payments, the Bank declared a default and repossessed Brennan's vehicle in early April, 2011.  On or about April 5, 2011, the Bank sent to Brennan a Notice of Right to Redeem ("Repossession Notice"), a copy of which is attached hereto as Exhibit "3".  Like Ms. Brennan, New York Plaintiffs Anthony Colino and Courtney Bellomo had their cars repossessed by the Bank, and were sent a substantially identical Repossession Notice.  (See Exhibits "4" and "5" hereto).

Under the materially identical Uniform Commercial Codes of both Pennsylvania and New York, a secured lender wishing to repossess a consumer's

vehicle without judicial oversight or legal process is required to immediately provide a "reasonable authenticated notice of disposition" of the collateral to the borrower after the repossession. 13 Pa. C.S. § 9611(b); § 9614; N.Y. U.C.C. Law §9-611(b), § 9-614 (McKinney); *see also Cubler v. Trumark Fin. Cr. Un.*, 83 A.3d 235 (Pa. Super. 2013) (describing what notice must contain); *McCall v. Drive Fin. Servs., LP*, 2009 WL 8712847 (Phila. C.C.P. Apr. 10, 2009) (Pa. repo notice requirements); *Cosgrove v. Citizens Auto Fin.*, 2010 WL 3370760, *1 (E.D. Pa. Aug. 26, 2010) (same); *Coxall v. Clover Comm.*, 4 NY Misc. 3d 654, 781 N.Y.S.2d 567 (Supreme Ct. Kings Co., 2004) (NY notice requirements).

Proper Notice is a key component of the statutory process of self-help repossession. The law requires that the post-repossession notice provide important information concerning an impending forced sale of the consumer's vehicle, and must advise that the consumer could be liable for a deficiency, if any. 13 Pa. C.S. §9613-9614; N.Y. U.C.C. Law §9-613-9-614 (McKinney). As recently set forth by Pennsylvania's Superior Court:

> "sections 9613 and 9614 of the UCC (governing the contents and form of notification before disposition of collateral) … provide that, in a consumer goods transaction, before a secured party may dispose of or sell the collateral following a debtor's default, the secured party must send the debtor a notice, setting forth, *inter alia*, (1) whether the sale will be public or private sale; (2) the time, date and place at which the collateral will be sold (if sold at auction); (3) that the debtor is entitled to an account of the unpaid indebtedness; and (4) the amount

4

> that must be paid to the secured party to redeem the
> collateral. *See* 13 Pa. C.S.A. §§ 9613, 9614."

*Cubler,* 83 A.3d at 236, n.1. If the notification in a consumer goods transaction lacks

any of the required information, it is "insufficient as a matter of law." *Id.*, *see also*

Comment 2 to 13 Pa. C.S. § 9614 and N.Y. U.C.C. Law §9-614. *Cosgrove,* 2010

WL 3370760, *1-2; *Coxall,* 4 NY Misc. 3d at 659.

The Repossession Notice that Community Bank, N.A. sent to Plaintiffs and

the Class(es) did not state the method of intended disposition, nor the date and place

of any public sale or auction, as required. The Repossession Notice also does not

advise the borrower that she is entitled to an accounting of any unpaid indebtedness,

and the Repossession Notice does not provide a description of any liability for a

deficiency; i.e., that the borrower will be on the hook if there is a shortfall after

auction, as required. *See* 13 Pa. C.S. § 9614(1)(ii).

The UCC is clear in providing a minimum uniform damages remedy for a

secured party's failure to follow the law. 13 Pa. C.S. § 9625(c)(2) and N.Y. U.C.C.

Law 9-625(c)(2) provide:

> "(2) if the collateral is consumer goods, a person that was
> a debtor or a secondary obligor at the time a secured party
> failed to comply with this subchapter may recover for that
> failure in any event an amount not less than the credit
> service charge plus 10 percent of the principal amount of
> the obligation or the time price differential plus 10 percent
> of the cash price."

See also the UCC Comment to Section 9-625(c)(2) (minimum damages awardable without proof of injury). The Official Comments to the UCC are accorded substantial weight. *In re Bristol Assoc., Inc.*, 505 F.2d 1056, 1058 n.2 (3d Cir. 1974). These minimum damages are "in recognition of the inherent difficulty for a claimant to quantify and prove actual damages." *Cubler,* 83 A.2d. at 242; *accord Coxall*, 4 NY Misc. 3d at 667 ("Mr. Coxall is entitled to this recovery even if he sustained no actual loss from Clover Commercial's failure to comply with Article 9.").

## 2. Defective Deficiency Notice

By letter dated May 25, 2011, the Bank informed Brennan that her vehicle had been sold for $2,000.00 and that a deficiency of $4,733.00 remained after the sale proceeds had been applied to her balance ("Deficiency Notice", Exhibit "6" hereto). Again, substantially similar Deficiency Notices were sent to Colino and Bellomo in New York. The Deficiency Notices sent to Plaintiffs and the Class were defective in that they failed to comply with the Code's very specific requirement the lender itemize or otherwise list: (a) the amount owed on the vehicle, (b) less the proceeds from the sale; (c) a breakdown of expenses associated with selling the property; and (d) less any credit(s) due to the borrower related to unearned interest and other finance charges (if any), and amount of deficiency claimed. 13 Pa. C.S. § 9616; N.Y. U.C.C. Law §9-616; *see also McCall*, 2009 WL 8712847 at p. 2-3 (discussing requirements for proper deficiency notice). The failure to provide a

proper deficiency notice after auction subjects the lender – in the case of a pattern or practice of non-compliance – to statutory damages of $500 per notice.  13 Pa. C.S. § 9625(e)(5); N.Y. U.C.C. Law § 9-625(e); *McCall*, 2009 WL 8712847 *3.

## B. Procedural History

Ms. Brennan initiated this action on October 30, 2013, by filing a class complaint in the Lackawanna County Court of Common Pleas.  On December 6, 2013, the Bank removed the case to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

On December 13, 2013, Plaintiff filed a Motion to Remand and for limited jurisdictional discovery (Doc. No. 8).  Plaintiff challenged class size and whether the requisite $5 million dollars in controversy had been established by the Bank's Removal Petition (Doc. No. 8).  The Bank, for its part, filed a Motion to Dismiss under Rule 12(b)(6) asserting the bar of the statute of limitations (Doc. No. 5).  In the ensuing weeks, the Bank produced additional evidence bearing on class size and the amount in controversy.  Then, the Superior Court in an unrelated case challenging precisely the statute of limitations for Article 9 repossession notice claims in Pennsylvania held that the statute of limitations is six years.  *Cubler v. Trumark Fin. Credit Union*, 83 A.3d 235 (Pa. Super. Ct. 2013).  After negotiation, and after a further telephone conference with the Court, the Bank withdrew its Motion to Dismiss that was based on statute of limitations, and Brennan withdrew

her Motion to Remand to state court.  (See Doc. Nos. 19, 20).  Defendant filed its Answer, Affirmative Defenses and Counterclaims on February 4, 2014 (Doc. No. 24).

The Bank then served an Offer of Judgment upon Brennan on January 28, 2014, then moved on February 11, 2014, to dismiss the Complaint on mootness grounds. (Doc. No. 27).  On the same day, Plaintiff filed a Motion to Strike the Offer of Judgment (Doc. No. 29).   The parties fully briefed Defendant's Motion to Dismiss on Mootness Grounds on the one hand and Plaintiff's Motion to Strike the Offer of Judgment, on the other.  (Doc Nos. 31, 32, 33, 35, 36).  Plaintiff also moved to strike off the Bank's counterclaims for lack of jurisdiction.  (Doc. No. 41).

On March 4, 2014, the Court held an in-person status conference.  At that time, Plaintiff's request for production of all of the Class Member loan files pertaining to Pennsylvania consumers was resolved with the Court exercising its discretion to permit the Plaintiff to provide "the defendant with the names of 35 potential class members and the defendant will turn over the entire loan file for each requested individual by April 4, [2014]." (Doc. No. 40, Order at ¶ 2).  Coupled with the loan files and affidavits provided, the Court reasoned that this would provide a sufficient random "audit" of the applicable loan files to permit Brennan and her counsel to preliminarily assess the size and breadth of the Pennsylvania Class and the statutory damages potentially recoverable.

At the Conference, the parties expressed some interest to the Court in exploring a mediation of the matter on a class-wide basis. The Court permitted limited discovery to proceed while continuing the Case Management Conference "for 90 days while the parties seek to resolve this matter through a mutually agreeable mediator." (Scheduling Order, March 4, 2014, Doc. No. 40, at ¶ 4). A mediation for the Pennsylvania Class was thereafter scheduled with JAMS for June 9, 2014.

In May 2014, Plaintiff's counsel was engaged by Anthony Colino of Irondequoit, New York and Courtney Bellomo of Angola, New York to represent a Class of New York consumers alleging a substantially similar claim involving the Bank's repossession practices in New York. Plaintiff moved on May 20, 2014 to amend the Complaint to add the two New York plaintiffs and the New York UCC claims. (Doc. No. 45-46). Thereafter, the Court conducted a telephone conference with counsel for the parties on May 30, 2014 (Doc. No. 49) and entered a further Scheduling Order on that date. The Order authorized the parties to adjourn the June 9th mediation and scheduled briefing on Plaintiff's Motion for Leave to Amend, and stayed action on class certification pending a ruling thereon. (Doc. No. 50, ¶¶ 3, 4).

Thereafter, the Bank filed its opposition to Plaintiff's Motion for Leave to Amend. The Bank asserted futility because it claimed a shorter, three year limitations period applied. The Bank also asserted that subject matter jurisdiction would be

impaired by the proposed amendment.  Plaintiff filed a Reply.  (Doc. Nos. 52, 54).

While the Motion for Leave to Amend was pending, counsel for Ms. Brennan and

for the Bank had further conversations about settlement and the prospect of

attempting to mediate the matter on a two-state, class-wide basis, recognizing the

New York statute of limitations issue raised by the Bank.   The parties ultimately

agreed that rather than ask the Court to rule on the New York statute of limitations

issue in context of a proposed amendment, Plaintiff would be permitted to file her

Amended Complaint.  This was without prejudice to Defendant's right to challenge

jurisdiction or the bar of the statute of limitation in further motion practice.  The

parties then went about the business of scheduling another mediation session to

explore potential resolution of the Pennsylvania and New York putative classes.

Pursuant to the Stipulation approved as an Order (Doc. No. 55, 56): "Defendant will

provide informal discovery regarding the composition of a potential New York class,

but proceedings will otherwise be stayed [however] the stay may be lifted upon

application of any party for cause shown."  (Id).

On September 30, 2014, the parties and their counsel mediated the case with

U.S. Magistrate Judge (Ret.) Diane Welsh in Philadelphia.  At the end of the day-

long mediation, a settlement was reached in principle.  Over the next several weeks,

the parties endeavored to memorialize the detailed settlement in an acceptable

written agreement, and circulated ancillary documents such as proposed forms of

order and class notice.  On January 5, 2015, a Settlement Agreement was fully executed, and docketed as part of Plaintiff's Motion to Approve (Doc. No. 72). Plaintiff filed a brief in support of the (first) Motion for Preliminary Approval on January 20, 2015 (Doc. No. 76).  The Court then scheduled a conference with all counsel for January 27, 2015.

On January 27, 2015, a conference was held in open court to review the *Brennan* Motion and address a January 8, 2015 letter to the Court from counsel in the separate case of *Urban v. Community Bank*. *Urban* had filed a "Notice of Non-Joinder" in the terms of the *Brennan* settlement.   The letter stated that plaintiff's counsel in *Urban* had problems with the *Brennan* settlement terms.  The Court colloquied with counsel on all these matters.  Following the conference, Class Counsel and Bank Counsel had a number of further telephone conferences.  Class Counsel instantly also consulted with a CPA firm regarding tax implications and a Class Action Notice specialist about reformatting the Class Notice.  As noted at fn 1 *supra*, counsel also tried to engage *Urban* counsel in the negotiation, but Urban has filed another "Notice of Non-Joinder" in this amended settlement.   Ultimately, Plaintiffs and the Bank agreed to modify the settlement to reflect that Community Bank would agree to forgive deficiency balances of Class Members upon final approval of the settlement, with Class Members retaining the option to elect *out* of the debt forgiveness component of the settlement.  This is a revision to the prior

settlement term, under which Class Members would have elected-in to debt forgiveness if they so chose. There are other minor or stylistic changes but no other significant revisions to the initially submitted agreement.

The Plaintiffs now submit an Amended Settlement Agreement and renew their Motion for Preliminary Approval.

### C. The Settlement Agreement as Amended

The significant terms of the class-wide Amended Settlement Agreement (attached as Exhibit "1" hereto) are as follows:

1. The Bank will pay Two Million, Eight Hundred Thousand Dollars ($2,800,000.00) into a settlement fund at PNC Bank within 14 days following the entry of an Order of Preliminary Approval. Those funds will be used to pay Class Members, Class Counsel fees and costs, and administration expenses. (*See* Am. Sett. Agreement, Exhibit "1" at ¶2.06).

2. Community Bank will write to request that all Consumer Reporting Agencies to whom it reports delete entirely the tradeline from the Class Members' credit reports. (Am. Sett. Agreement at ¶2.09).

3. Community Bank will presumptively waive and eliminate entirely any deficiency on that Class Member's Auto Loan. The Class Member can elect to decline this relief by completing an Election Form proposed to be mailed as part of the Class Notice (Am. Sett. Agreement at ¶ 2.13).

The Amended Settlement Agreement provides substantial relief to 2956 consumers in Pennsylvania and New York. Plaintiff deposed Pamela Dent, Recovery Supervisor for Community Bank, on October 28, 2014. Ms. Dent testified that the class spreadsheet reflects all those consumers who fall within the class periods as defined in the Amended Complaint. (See Exhibit "7", Dep. Tr. of Def.'s

designee Dent at p. 113-14).  Ms. Dent also testified that the Bank used substantially the same form Repossession Notice and Deficiency Notice in Pennsylvania and New York during the 6 year Class Period.  (*See id.* at p. 23-29).[2]

The Settlement provides for cash payments to three Class Member "Groups" based on risks associated with the different states' statute of limitations.  As noted, the Bank contends that a three year limitation applies under NY CPLR § 214(2), relying on *General Motors Acc. Corp. v. Vucich*, 15 N.Y.A.D. 3d 106, 109 (3d Dept. 2005).  Plaintiffs, for their part, urge a six year period of limitations under CPLR § 213, relying on *Banca Commerciale v. Northern Trust, Int'l*, 1997 WL 217591 (S.D.N.Y. Apr. 30, 1997), *aff'd*, 160 F.3d 90 (2d Cir. 1998).  Although Plaintiffs believe they have the better of the argument, the issue of which period of limitation applies to UCC 9-625 claims has not been squarely decided by any New York appellate court.  Therefore, due to the unresolved question of the New York statute of limitations and the date of the Colino and Bellomo Repossession Notices being beyond a three-year limitations period, the New York Class Members' claims involve somewhat more risk, which is appropriately factored into the amount of class relief.[3]  The "recent" (*i.e.*, less than 3 years) Group will receive more than the "older"

---

[2]    In September, 2012, the Bank made a change to the Deficiency Notice that arguably made the Notice substantially compliant.

[3]    "If differences exist between 'the likelihood of ultimate success' for different plaintiffs 'it is appropriate to weight the distribution of the settlement … in favor of

(*i.e.,* more than 3 years) Group.  If approved as proposed, after counsel fees and administrative expenses, each Class Member in Group A (PA) stands to receive a net cash payment of about $753.00, with each in Group B (NY "recent") receiving about $609.00, and each in Group C (NY "older") receiving about $209.00. (Exhibit "1", Am. Sett. Agreement at 2.06(vii)).  If the Class Member is also in a Subclass, having been sent a defective post-auction Deficiency Notice, she is entitled to an additional amount ranging from $62 to $25.  (Id.).  The Class Notice will succinctly set forth the Class parameters and the Class' recovery as follows:

You are included in the Settlement if you:
- Bought a motor vehicle primarily for personal use;
- Financed the vehicle through the Bank or had a sale contract with a car dealer that arranged financing with the Bank; and
- Fit one of three groups:
  - Group A: You lived in Pennsylvania and your vehicle was repossessed from October 30, 2007 through September 30, 2014;
  - Group B: You lived in New York and your vehicle was repossessed from July 15, 2011 through September 30, 2014; or
  - Group C: You lived in New York and your vehicle was repossessed from July 15, 2008 through July 14, 2011.

| GROUP | NUMBER OF CLASS MEMBERS | SHARE OF SETTLEMENT FUND | ADDITIONAL PAYMENT FOR DEFICIENCY NOTICE |
|---|---|---|---|
| Group A | 832 | $753 | $62 |
| Group B | 1024 | $609 | $52 |
| Group C | 1100 | $287 | $25 |

---

plaintiffs whose claims comprise the set that was more likely to succeed.'" *See* NEWBERG ON CLASS ACTIONS § 12:35 (quoting *In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd* 117 F.3d 720 (2d Cir. 1997)).

### III.   QUESTION PRESENTED

Whether the Court should make a preliminary determination of class certification for settlement purposes, grant preliminary approval of the proposed class action settlement as amended, set a date for final approval, and permit Notice to be issued to the Class?

**Suggested Answer: YES**

### IV.   LEGAL ARGUMENT

#### A. The Elements for Class Certification are Met

"[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (internal quotation marks omitted)). At this stage, the Court is to make "a 'preliminary determination' on class-action certification for the purposes of issuing notice of settlement ..." *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). After notice is issued, and at the final approval stage, the district court is to apply a rigorous analysis of the Rule 23 elements, while mindful of the strong judicial policy in favor of class action settlements. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013).

Routinely, the four Rule 23(a) requirements are described as "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cnty.*,

*Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014).   In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b).   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Wallace v. Powell,* 301 F.R.D. 144, 154 (M.D. Pa. 2014). Certification here is sought under Rule 23(b)(3), which also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," such that "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

It bears note that similar challenges to lender repossession practices under the UCC have been routinely certified as class actions in Pennsylvania and across the country. *See e.g., Cosgrove v. Citizens Auto Fin., Inc.*, 2011 WL 3740809 (E.D. Pa. Aug 25, 2011) (certified settlement class); *McCall v. Drive Financial*, 2009 WL 8712847 (certified on contest).[4]

---

[4]     *See also e.g. Hartt v. Flagship Credit Corp.,* 2010 WL 2736959, 72 UCC Rep.Serv.2d 697 (E.D. Pa. July 8, 2010) (later proceeding and settlement class and Final Approval dated Apr. 5, 2011) (Pennsylvania federal court certified settlement class of Texas consumers for violation of notice requirements); *Walczak v. Onyx Acceptance Corp.*, 850 N.E.2d 357 (Ill. Ct. App. 2d Dist. 2006) (affirming certification of class of motor vehicle buyers in action against finance company with respect to repossession and deficiency misconduct); *Chisolm v. Transouth Fin. Corp.*, 194 F.R.D. 538, 557-69 (E.D. Va. 2000) (certifying class and subclasses against financing company for violations of UCC notice requirements in alleged car churning scheme).

### 1.  Rule 23(a)(1) – The Class is Sufficiently Numerous

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable."  Generally, a class of more than 40 satisfies the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Logory v. Co. of Susquehanna,* 277 F.R.D. 135, 140 (M.D. Pa. 2011).

Here, the Class is broken down into three Groups of Class Members based on home state and applicable statute of limitations.  (Am. Sett. Agreement, ¶ 2.06(x)).

| Class State | Class Size | Sub-Class Size |
|---|---|---|
| Pennsylvania | 832 | 652 |
| New York "newer" September 2011 to 2013 | 1024 | 376 |
| New York "older" 2008 to August, 2011 | 1100 | 842 |

The parties agree on the size of the Classes and Sub-Classes.  The Class of Pennsylvanians and the two groups of New York consumers, are all sufficiently numerous to satisfy Rule 23(a)(1).

### 2.  Rule 23(a)(2) – The Bank's Standard Form Repossession Notices Present Common Issues of Law and Fact

Turning to the second component of Rule 23(a), "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (citations omitted).   A putative class satisfies the commonality requirement if "the named plaintiffs share at least one question of fact

or law with the grievances of the prospective class." *Rodriguez*, 726 F.3d at 382. "One common question of law or fact is sufficient to satisfy the requirements of Rule 23(a)(2)." *In re Chocolate Confectionary Antitr. Litig.*, 289 F.R.D. 200, 216 (M.D. Pa. 2012) (*quoting In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n. 10 (3d Cir. 2009)).

Here, the question of the form notices' legality is the same for every member of the Class. And there are multiple questions of law or fact common to the Class that can be answered in the same proceeding. These include:

(a)    Whether Plaintiff and the Class obtained vehicle financing through Community Bank and pledged the vehicle as collateral;

(b)    Whether Community Bank repossessed the financed vehicle or ordered it repossessed;

(c)    Whether Community Bank failed to send the notice of disposition in the form and manner required under the UCC after repossessing a vehicle;

(d)    Whether Community Bank failed to send the deficiency calculation in the form and manner required under the UCC (as to Sub-Classes); and

(e)    The uniform statutory damages under the UCC provided for such misconduct.

Standardized conduct towards members of the proposed class such as mailing (allegedly) improper form letters or documents, generally satisfies the commonality requirement. *See Cosgrove*, 2011 WL 3740809, at *4 (E.D. Pa. Aug. 25, 2011) (repo notice class); *Chakejian v. Equifax Inf. Srvs., Inc.*, 256 F.R.D. 492, 497 (E.D. Pa.

2009); *Jordan v. Commw. Fin. Sys., Inc.,* 237 F.R.D. 132, 138 (E.D. Pa. 2006) ("Because [plaintiff's claims] are based entirely upon the uniform, non-individualized content of defendants' standardized debt collection letters, [the claims] are factually and legally common to the proposed classes.").   The Class readily meets the threshold for commonality.

### 3.   Rule 23(a)(3) – Typicality is Met as Plaintiffs Press the Same Claim as Every Member of the Class

Rule 23(a)(3) "typicality" and commonality are closely related and tend to merge. *Wallace,* 301 F.R.D. at 155.  A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and his or her claims are based on the same legal theory. *Baby Neal v. Casey,* 43 F.3d 48, 57 (3d Cir.1994).

Typicality is met in a UCC repo notice class case as the plaintiffs "suffered harm as a result of this same class-wide conduct that injured the absentee class members." *Cosgrove,* 2011 WL 3740809, at *4.  Here, the claims of the named Plaintiff and the Class all arise from Community Bank's use of an improper form Repossession Notice and Deficiency Notice sent after repossession of Class Members' vehicles.  The question of the illegality or legality of these form Notices will not vary among Class Members – either the Notices meet the UCC's requirements or they do not. *Id.; McCall,* 2009 WL 8712847 at p. 5; *Cubler,* 83 A.3d at 236-7 (reciting the UCC notice requirements).  As with the related

19

requirement of commonality, claims arising from a form document generally give rise to typicality. *See e.g. Jordan,* 237 F.R.D. at 138-39.

The statutory damage formula is a question of simple math. 13 Pa. C.S. § 9625(c)(2); *McCall* at p. 3. From Community Bank's records, one would only need to add the "finance charge" and 10% of the "amount financed" on each of the Class Members' financing contracts to calculate statutory damages. For example, Courtney Bellomo's contract reflects that the finance charge is $2,205, and the amount financed $7,394. Her full statutory damages are readily calculable: $2205 + $739 = $2944. While the cash component has been negotiated for settlement purposes, the formula is uniform. (*See* Exhibits "2", "8", "9", named Plaintiffs' contracts). *See In re Community Bank of N. Va.,* 418 F.3d 277, 305 (3d Cir. 2005); *In re Chocolate,* 289 F.R.D. at 217 (differences in damage calculations do not impede typicality).

### 4.  Rule 23(a)(4) – Plaintiffs and Class Counsel are Adequate

Rule 23 also requires that the named plaintiff provide fair and adequate protection for the interests of the Class. Fed. R. Civ. P. 23(a)(4). "The adequacy requirement has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative

plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012); *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008).

Plaintiffs Brennan, Colino and Bellomo are represented by three law firms, Flitter Lorenz, P.C., Kelley Polishan Walsh and Solfanelli, LLC and Barrett Wylie, LLC. The Flitter Lorenz firm is experienced in the prosecution of consumer class actions in general and is exceptionally experienced in the prosecution of UCC Article 9 repossession cases specifically, having litigated the seminal *McCall, Cubler* and *Cosgrove* matters, among others, and the firm's lawyers regularly present and write on repossession law in Pennsylvania. (See Certifications of Cary L. Flitter and Andrew M. Milz, Exhibits "10" and "11" hereto).   M. Scott Barrett has been a member of the New York bar for over 30 years and has been appointed as Class Counsel or co-counsel in dozens of cases across the United States involving consumer rights, mortgage litigation, pension/ERISA litigation, and other matters. (See Barrett Certification, Exhibit "12").   Timothy Polishan has been a member of the bar of this Court for over 18 years and has represented clients in complex civil and criminal litigation in this Courthouse and elsewhere.   (See Polishan Certification, Exhibit "13").   In sum, Plaintiffs' counsel is qualified, experienced and generally able to conduct the proposed litigation. *See e.g. Harlan v. Transworld Sys.,* 302 F.R.D. 319, 329 (E.D. Pa. 2014) (approving counsel's qualifications); *Cosgrove,* 2011 WL 3740809 *9 (E.D. Pa. Aug. 25, 2011) (same).

There is also nothing to suggest that Plaintiffs Brennan, Colino or Bellomo have any interest antagonistic to the Class. Each has been prepared to vigorously pursue this lawsuit on behalf of the Class designated in the Amended Complaint. Ms. Brennan and Ms. Bellomo attended the mediation session in Philadelphia and stayed overnight for that purpose, while Mr. Colino remained available by telephone. There are no individualized issues, for example, of reliance or intent, or defenses unique to these Plaintiffs. Given the identical nature of the claims and class damages between the Plaintiffs and the Class Members, there is no potential for conflicting interests in the Class action. *See Wallace,* 301 F.R.D. at 156; *Allen,* 249 F.R.D. at 180.

## 5. <u>Rule 23(b)(3) – Common Questions of Law or Fact Predominate</u>

Rule 23(b)(3) requires that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Thus, "[a] plaintiff must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Wallace*, 301 F.R.D. at 157 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012)).

As Judge Schiller observed, the common proof is that all class members "received deficient repossession notices or no notices at all, all of which can be

established with available documentary evidence." *Cosgrove,* 2011 WL 3740809, at *5. Moreover, "the calculation of damages under [UCC Section] 9625(c) is uniform and may be calculated on a classwide basis." *Id.* Of course, settlement removes the need for even the statute of limitations question to be answered definitively, preserving some valuable recovery for all New York Class Members. Both Ms. Bellomo and Mr. Colino have New York claims that arose outside the three year period. If the Bank were correct about the three year statute of limitations applying, then potentially all of the New York Plaintiffs and Class Members are impacted. The settlement matrix takes this reality into account, with some reduction for the New York claims (over Pennsylvania) in light of the limitations defense in issue.

### 6. <u>Rule 23(b)(3) – A Class Action is Superior to Other Available Methods to Resolve this Controversy</u>

Superiority is the final element of class certification pursuant to Rule 23(b)(3). *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 315 (3d Cir. 1998). The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *MERSCORP,* 298 F.R.D. at 216. When evaluating superiority, it is proper for a court to consider the "… inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would

possess the initiative to litigate individually." *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 626 (E.D. Pa. 1994).

This forum is particularly appropriate for addressing the claims of the Plaintiff and the putative Class. Nearly 3000 individual actions for the relief sought here could naturally result in inconsistent interpretations of the UCC's notice requirements and the Code's statutory damage provisions, subjecting Class Members to greatly unequal treatment. Here, a class action efficiently ensures that one decision on the applicable law and damages applies to all.

To Plaintiff's knowledge, no putative Class Members have instituted any individual actions against Community Bank involving the type of claims set forth in the Complaint.[5] Moreover, the UCC section invoked is not a "fee shifting" statute. 13 Pa. C.S. § 9625; N.Y. U.C.C. Law § 9-625. Therefore any consumer seeking to bring an individual action would have to pay his or her own attorney fees out of pocket, a prospect not likely feasible on an individual basis. Overall, members of the putative Class will benefit considerably by proceeding on a Class basis. *Lake,* 156 F.R.D. at 626-27.

---

[5]   On May 29, 2014, a class complaint was filed by Nicole Urban. As noted in fn 1, counsel for Urban has stated that Urban does not wish to join in this amended settlement. It bears note that all members of the putative *Urban* classes are already subsumed in the earlier-filed *Brennan* Classes.

24

As set forth above, the Court can readily make the preliminary determination that the requirements for Rule 23 class certification are met here, and approve the issuance of Notice. It appears that in light of *In re NFL Players*, 775 F.3d 570, district courts in the circuit are no longer to "conditionally certify" classes or "certify for purposes of settlement." *Id.* at 586. Rather, the district court is to make a "preliminary determination" on class action status. This permits notice to issue to the class, and the court actually certifies, or not, following the fairness hearing. *Id.* In any event, all the elements for Rule 23 class certification are readily met here, certainly *prima facie*.

### B.   The Settlement Should be Preliminarily Approved

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. Fed. R. Civ. P. 23(e); *In re Flonase Antitr. Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013). The procedure for approval of a proposed class action settlement involves a two-step process: (1) a "preliminary approval" order; and (2) a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the proposed settlement has been held. *See* MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ("MCL") §§ 21.632; *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008). Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is warranted. *Id.* at 439; *MCL* 4th § 21.632.

There is a presumption in favor of settlement of complex litigation. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).  "This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id.*

### 1. **The Settlement was Reached After Arms-Length Negotiations**

The procedural history of this case reflects considerable and significant motion practice, and is detailed in Section II.B *supra*.  After a day-long mediation in Philadelphia with U.S. Magistrate Judge (Ret.) Diane Welsh, the parties reached a settlement.  The settlement was then amended, after a conference with the Court, and additional negotiations to address the Court's concerns related to the debt-forgiveness component.  The vigorous litigation, the mediation, the settlement negotiations and re-negotiations, and the confirmatory discovery resulted in an Amended Settlement Agreement which was the product of serious, informed, non-collusive negotiations among counsel.

### 2. **The Settlement is Fair and Contains no Deficiencies**

If this settlement is approved (and Class Counsel fees and costs allowed as requested) each Class Member can expect to receive a substantial cash award, and

other valuable relief. Cash payments to three Class Member "Groups" are based on risks associated with the different states' statute of limitations (a major issue in this litigation). *See* Sec. II. C., *supra*. Again, if approved as proposed, class relief breaks down as follows:

<u>Class Relief (Repossession Notice)</u>

Group A (PA): **$753.00**

Group B (NY "newer" September 2011 - September 2014): **$609.00**

Group C (NY "older" 2008 - August 2011): **$287.00**

<u>Additional Subclass Relief (Deficiency Notice)</u>

Group A (PA): **$ 62.00**

Group B (NY "recent"): **$ 52.00**

Group C (NY "older"): **$ 25.00**

Each Class Member will also have any post auction Auto Loan Deficiency claim presumptively **forgiven in its entirety.** (*See* Am. Sett. Agreement at ¶ 2.13). If a Class Member does not want the debt forgiveness, because of tax concerns or because he would prefer to litigate the issue, he will have an opportunity to elect-out of the debt waiver. The aggregate deficiency balance claimed due by the Bank is $16,326,236. The average deficiency balance claimed over all 2956 Class Members is approximately $5,523.00 per consumer. As discussed above, the amendment to the Settlement provides for presumptive debt cancellation, while providing the Class

Member with the option to submit an Election Form indicating they *do not* want the debt cancellation.[6]

The Amended Settlement Agreement provides that no new lawsuits may be filed to seek to collect deficiency balances against Class Members upon signing the original Agreement in January of 2015 (except if a statute of limitation is running), but the Bank may sue in the future if a Class Member opts out of the settlement or chooses not to waive his deficiency balance by submitting an Election Form. (Am. Sett. Agreement, ¶ 2.10(a), (c)).

If the Amended Settlement Agreement is approved as submitted, there will be no further collection activity, except for those were elect-out or opt-out entirely. (Id.). And, importantly, all Class Members (except the few who reclaimed their vehicle pre-auction and reinstated their account to performing status) will have the Bank's tradeline removed entirely from their credit reports. (*See* Am. Sett.

---

[6]     The Class Member may very well not want to deal with the potential tax issues arising from the cancellation of indebtedness, that can give rise to "income" under the Internal Revenue Code. *See* 26 C.F.R. § 1.6050P. In 2012, the IRS changed its position and held in a Private Letter Ruling that forgiveness of repossession deficiency debt alleged due falls under Section 1.6050P and may constitute "income" to the borrower whose deficiency claim is forgiven. *See* I.R.S. P.L.R. 201240001 (Oct. 5, 2012) (Ex. "14" hereto). Because debt forgiveness would ordinarily result in issuance of an IRS 1099C form – and perhaps a resultant tax obligation that is potentially large (and non-dischargeable) for the class member – the Amended Settlement Agreement provides a mechanism via an "Election to Refuse Debt Waiver" form by which the Class Member can opt not to receive the debt forgiveness component of the settlement. (*See* Sett. Agreement, ¶2.13; *see also* Election Form, Exhibit "1-B").

Agreement, ¶ 2.09(a)).  This sort of credit report correction is extremely valuable –
if perhaps difficult to quantify.  *See Cosgrove,* 2011 WL 3740809, *7 (correction of
negative credit entries adds considerable value to repo class settlement); *Ciccarone
v. B.J. Marchese, Inc.,* 2004 WL 2966932 at *4 (E.D. Pa. Dec. 22, 2004) (credit
correction constitutes valuable equitable relief).

In some ways, this settlement is *more favorable* than could be achieved
through a successful trial.  While the Class could potentially recover more in cash
for statutory damages, the deficiency issue still needs to be dealt with, and it is an
open question whether this court *could* award the equitable-type relief of satisfaction
of state-court judgments.  *See* 13 Pa. C.S. § 9625(c)(2); N.Y. U.C.C. Law § 9-
625(c)(2).  The UCC makes no provision at all for credit reporting correction.  *Id.*

The representative service awards and attorney fee request are fair and
reasonable considering the quantum of relief obtained and the effort expended to
obtain it.  The $5,000.00 individual service awards to each of the three named
Plaintiffs comport with similar awards in representative actions in this Circuit.  *See
e.g. Craig v. Rite Aid Corp.,* 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013)
(awarding $7,500 and $5,000, collecting cases); *Cosgrove,* 2011 WL 3740809, *10
($7,500 to named plaintiff in UCC repo notice class action).

Plaintiffs will also request attorney fees from the common fund of cash in the
amount of $1,092,000.00 plus litigation expense reimbursement not to exceed

$20,000.00. (*See* Am. Sett. Agreement, ¶ 2.12).   The fees requested will represent less than 6.7% of the value of monetary relief to the class *before* valuing the credit repair, and about 39% of the cash.[7]

### 3. <u>The Settlement is Within the Range of Reasonableness</u>

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiff would recover if successful, discounted by the risks of not prevailing. *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009).

Statutory damages under the UCC § 9625(c)(2) are computed by adding the finance charge to 10% of the principal obligation.   To tally the amount of damages available to a completely successful class at trial, one must determine the statutory damage amount for each Class Member; in this case that amount sums to approximately $19,587,802.00.   Importantly, this number reflects cash relief only – if Plaintiff were to prevail at every phase.   As noted, the Code makes no provision for credit correction or satisfaction of judgments against Class Members, and the deficiency claims would not necessarily disappear.

---

[7] Plaintiffs will move for an award of Class Counsel fees at the time of seeking final approval, when the reaction of the noticed Class can be measured. *See* Fed. R. Civ. P. 23(h).  Plaintiffs only discuss fees here briefly to give context and a basis for the notice's estimate of net cash to Class Members.  Plaintiffs also point out that the claims pled do not carry statutory counsel fee provisions and Class Counsel fees will be sought purely by the common-fund approach.

Considering the risks associated with a lengthier litigation and trial, the uncertainty over the New York period of limitations and the equitable relief, this amended settlement is a real win for the Class. The value of the proposed Amended Settlement Agreement is well within the range of reasonableness, and readily warrants preliminary approval.

### 4. **Class Counsel Recommends the Settlement**

Class Counsel has extensive experience in class action litigation in the areas of consumer protection law and Article 9 of the UCC, and are thoroughly familiar with the factual and legal issues of the case. (*See* Exhibit "10", Flitter Cert. at ¶ 22 (representative cases)). Counsel evaluated some 135 loan files with over 16,000 pages of documents produced by Defendant which allowed counsel to develop a framework for class size and an understanding of class-wide damages. Counsel deposed a corporate witness from the Bank at its upstate New York offices. (Id.) Additionally, counsel have analyzed each of Defendant's arguments against the merits of Plaintiffs' claims and whether the case could be certified on contest, and have thus developed an appreciation about the time and effort that future, prolonged litigation would entail. (Id.). Settlement provides substantial cash, debt waiver (with the Class Member's option not to receive this benefit), and equitable-type relief now, not at some uncertain future date that is perhaps years away.

For all these reasons, Class Counsel recommend the Amended Settlement Agreement for preliminary approval and issuance of Notice to the Class.

### C. Class Notice

With the Amended Settlement Agreement and this Motion, Plaintiffs submit a proposed form of Notice to the Class. (Exhibit "1-C" hereto). *See* Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1). A clean copy of the proposed Class Notice is appended hereto as Exhibit "15". Of course, the blanks for dates will be filled in before mailing. This form of Class Notice is modified and in some ways simplified from that submitted with the original Motion for Preliminary Approval. In plain-English, the notice informs Class Members regarding (a) formation of the Class; (b) the Class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to Class Counsel; (f) the agreed individual settlement payment to representative Plaintiffs Brennan, Colino and Bellomo; (g) the Class Member's right to opt-out, and thereby not participate in the proposed settlement; (h) Class Member's right to appear and object to the proposed settlement; (i) the time, date and location of the final approval hearing; and (j) Class Member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The Class Notice also clearly sets forth that any Class Member with an alleged Auto Loan Deficiency will have that deficiency forgiven. But because this may

create federal income tax ramifications for the Class Member (as debt forgiveness may be treated as "income"), *see* n.9, *supra*, the Class Notice specifically raises this issue and suggests the Class Member consult a tax advisor should there be a question or concern about the election.  (*See* Exhibit "1-C" at Section 13).  The Notice will also include a prominent "Election to Refuse Debt Waiver" form which the Class Member can submit to choose to <u>not</u> receive the deficiency forgiveness remedy.  (*See* id. at Section 15; Exhibit "1-B," Election Form).  There is also a cover letter proposed, to increase understanding and the "read rate."

The proposed Notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices.  The Notice is clear and reader friendly, and provides Class Members with sufficient information to make an intelligent decision as to whether to remain in the Class, elect-out of the debt waiver, or opt-out of the settlement, or object to any aspect of the proposed settlement.  *Wallace,* 301 F.R.D. at 159.  Plaintiff proposes Notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best Notice practicable under the circumstances. *See id.; Perry v. Fleet Boston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005).

Administration of Notice, opt-outs, election forms and settlement checks is proposed to be handled by Strategic Claims Services (www.strategicclaims.net), an

experienced claims administrator based in Media, PA.   (Exhibit "1", Am. Sett. Agreement. ¶ 1.25).  The Administrator will use both the postal service and Accurint or an equivalent consumer information database to find the last and best addresses for all Class Members.

## V.   **CONCLUSION**

The proposed Amended Settlement Agreement puts an end to this litigation, and *prima facie* falls well within the range of a fair, reasonable and adequate award. Further, the proposed settlement Class meets the requirements of Rules 23(a) and Rule 23(b)(3).  Preliminary approval should be granted, the Class Notice approved so that Notice may issue.

Date:  4/8/15

/s/ *Cary L. Flitter*
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

TIMOTHY POLISHAN
EUGENE C. KELLEY
KELLEY POLISHAN & SOLFANELLI, LLC
259 South Keyser Avenue
Old Forge, PA 18518
570-562-4520

M. SCOTT BARRETT
*(Admitted Pro Hac Vice)*
BARRETT WYLIE, LLC
Showers Plaza - P.O. Box 5233

34

320 West 8th Street - Suite 100
Bloomington, IN 47407-5233
(812) 334-2600
**Attorneys for Plaintiffs and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, and COURTNEY BELLOMO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>            vs.<br><br>COMMUNITY BANK, N.A.<br>                    Defendant. | NO. 13-CV-02939<br><br><br><br>JUDGE MANNION<br><br><br>CLASS ACTION |

## **CERTIFICATE OF SERVICE**

I, CARY L. FLITTER, hereby certify that a copy of Plaintiffs' Renewed Memorandum in Support of Motion for Preliminary Approval of Class Settlement has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to:

Jonathan B. Fellows, Esquire
Suzanne O. Galbato, Esquire
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202

Jane T. Smedley, Esquire
Joseph E. Kluger, Esquire
HOURIGAN, KLUGER & QUINN, P.C.
600 Third Avenue
Kingston, PA 18704

**Attorneys for Defendant**

1

A copy of this Memorandum shall also be sent this date, via email to:

Richard Shenkan, Esquire
SHENKAN INJURY LAWYERS
6550 Lakeshore Drive
West Bloomfield, MI 48323

Howard A. Rothenberg, Esquire
345 Wyoming Avenue, Suite 210
Scranton, PA 18503

**Attorneys for Plaintiff, Nicole Urban**

Date:  4/8/15                                      /sl Cary L. Flitter
                                                          CARY L. FLITTER

Said document is available for viewing and downloading from the ECF system.

Date:  4/8/15                                      /s/ Cary L. Flitter
                                                          CARY L. FLITTER

## CERTIFICATE OF CONCURRENCE

I hereby certify that I sought concurrence of Defendant Community Bank, NA, and the Defendant concurs with the relief sought in Plaintiffs' Motion for Preliminary Approval.  (Doc. No. 72).

Date:  4/8/15                                      /s/ Cary L. Flitter
                                                          CARY L. FLITTER

## **LOC. RULE 7.8(b) CERTIFICATION**

I hereby certify that the foregoing brief, at 9040 words, exceeds 5000 words. As relates to seeking Preliminary Approval, Plaintiffs have been granted leave to file a brief in excess of the local word limits. (See Doc. No. 77).

Date:  4/8/15

*/s/ Cary L. Flitter*
CARY L. FLITTER