IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO and COURTNEY BELLOMO, individually and on behalf of all others similarly situated<br>　　　　　　　　　Plaintiffs<br><br>vs.<br><br>COMMUNITY BANK, N.A.<br>　　　　　　　　　Defendant | CLASS ACTION<br><br><br><br><br><br><br><br><br><br>NO. 13-CV-02939 (Judge Mannion) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE OBJECTION OF NICOLE URBAN AT DOCS 90 AND 91**

**INTRODUCTION**

Plaintiffs Carol A. Brennan, Anthony Colino and Courtney Bellomo (the "Brennan Plaintiffs") were prepared to file a Motion to Strike an "Objection" (Doc. 90), filed on June 8, 2015, by Nicole Urban, on behalf of herself and four other people (the "Urban Objectors") who may or will be affected by the proposed settlement of this class action case. Although Ms. Urban's filing is styled as an "objection," it reads like a motion that asks this Court to deny the Brennan Plaintiffs' fully briefed motion seeking preliminary approval of the settlement that they have achieved in this class action (Docs. 87 and 88, filed on March 25, 2015 and April 8, 2015, respectively).

At 1:45 p.m. on Friday, June 19, counsel for the Brennan Plaintiffs and counsel for the Defendant conducted a telephone conference with counsel for the

1

Urban Objectors in connection with Plaintiffs' proposed Motion to Strike the "Objection" (Doc. 90). The telephone conference call was in a good faith effort to comply with the concurrence requirements of Local Rule 7.1 even though the Urban Objectors are not parties to this action and the Bank does not oppose the striking of the "Objection" paper. After Urban counsel stated they do not concur in striking the Objection, at 5:48 p.m. on Friday, June 19, the Urban Objectors filed a "Notice to Withdraw Doc. 90 Without Prejudice" (Doc. 91). However, the Urban Objectors' "Notice to Withdraw" fails to cure the problem of the improper filing because it provides:

> As such, while the Objectors withdraw Doc. No. 90 without prejudice, they wish to call to the Court's attention the identical objection filed in the companion case, *Urban v. Community Bank*, 3:14-CV-01039 [Doc. 66] because the Objectors still request that the Court address the[ir] ... concerns.

Doc. 91 at 2. It thus appears that Doc. 91 is tantamount to a constructive refiling of withdrawn Doc. 90. To the extent the "withdrawn" Objection is still alive by reference in this case, the Brennan Plaintiffs offer this Memorandum of Law in support of their Motion to Strike both filings. Further, because the Objection raises substantive issues that the Brennan Plaintiffs wish to respond to so that they do not linger as unrebutted, Plaintiffs will be filing concomitantly a Supplemental Memorandum of Law in Support of Preliminary Approval addressing some of those issues.

The Urban Objection is an illicit filing by non-parties that violates, *inter alia*, Fed. R. Civ. P. 7 and 10 (and Rule 23 generally), and this Court's Local Rules 5.1, 7.1, 7.6, 7.8, 26.3 and 83.14. *See* fn 4, *infra*. The upshot of these violations is that the Urban Objection (Doc. 90) and the "Withdrawal Notice" (Doc 91) that reintroduced the Objection is nothing more than a non-compliant notice that should be stricken.

The Urban Objectors argue that the proposed settlement "embodies ... flaws" and ask the Court to, *inter alia,* "compel that all attorney fees ... be escrowed pending ... adjudication" of their counsel's assertions about "value brought to the [proposed] settlement" and his "concomitant quantum meruit claim." (Urban Objection at p. 25 and 27). Urban's counsel indicates that he does not want to be "silence[ed] ... from raising concerns related to the settlement" or "preclude[ed] ... from addressing the Court[,]" *id.* at 27, and, states that his clients remain "willing to meet and confer with all parties to restructure a more equitable resolution [*sic.*] with [the Court] directly or with ... a mediator," *id.* at 28-29.

The Urban Objectors' motives are clear: they want to void the existing Amended Settlement Agreement, seek to renegotiate the parties' settlement, seek to become class co-counsel in both cases, and reap a larger fee than Urban's counsel had agreed to on September 30, 2014 and again on January 27, 2015 when he was potentially to become class co-counsel – before Urban refused a second time to join

the settlement. They want this Court to force a seat for them at a renegotiation table.[1] This they cannot do. "The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement." Manual for Complex Litigation § 21.61 (4th ed. 2004), citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety."); *accord Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. Of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982).

The *Brennan* Plaintiffs reached a settlement in principle back on September 30, 2014, the date of the mediation before Judge Welsh. Urban was offered to participate, yet after initially agreeing at that time, sought to impose new conditions, and then refused. (Urban Doc. 52 "Notice of Non-Joinder"). The matter was settled without Urban's participation. An amended settlement was reached in March, 2015, principally changing the method to elect the debt forgiveness. Urban was offered, but declined to participate a second time. (Urban Doc. 62 "Notice of Non-Joinder"), as well as multiple letters to the Court and the Objection, (Brennan Doc. 90). The settlement terms are highly beneficial to the Class of nearly 3000 consumers who, upon approval, will have their impaired credit reporting corrected, over $16 million

---

[1] Your authors are advised that the Bank is not amenable to renegotiating the substantial terms of settlement and as to which the Bank already has a signed class settlement agreement.

4

in deficiency claims available to be forgiven, and substantial cash relief in the aggregate sum of $2.8 million.

## PROCEDURAL HISTORY

The detailed procedural history is set forth in Plaintiffs' Memorandum of Law (Doc. 88) in Support of Motion for Preliminary Approval of Amended Class Action Settlement, docketed April 8, 2015.

On June 8, 2015, more than two months after the Motion for Preliminary Approval, the Urban Objectors, who are not parties in this case, filed the Urban Objection to the Preliminary Approval Motion as Doc. 90 in *Brennan* and Doc. 66 in *Urban*.

Before the June 8, 2015 filing of the Urban Objection, the sole Urban "Objector" was Nicole Urban. As noted, Ms. Urban notified this Court that she did not want to join either settlement proposed in this case. *See* Ms. Urban's documents filed in *Urban v. Community Bank*, No. 3:14-cv-1039 (MEM); Doc. 52, "Notice of Non-Joinder in the Brennan Proposed Settlement," and Second Notice of Non-Joinder (Doc. 62). The areas of non-agreement with the Amended Settlement Agreement were set forth in 29 dense pages of objection at Doc. 90, nominally "withdrawn" by Doc. 91.

## ARGUMENT

### 1. The Urban Objection Demonstrates a Fundamental Misunderstanding of the Class Action Settlement Process

Here, the Brennan Plaintiffs and the Defendant have submitted the Settlement Agreement that sets forth the terms on which they propose this class action be settled, and a form of Class Notice, thus satisfying the requirement of Rule 23(e)(3). Because the proposed settlement would bind class members, it must be approved by the Court as *prima facie* fair, reasonable and adequate. The members of the Class must be notified of the proposed settlement and given an opportunity to opt out of or object to the settlement. Fed. R. Civ. P. 23(e)(1)-(2) and (4)-(5).

In *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197-98 (E.D. Pa. 2014), *interlocutory appeal dismissed*, 775 F.3d 570 (3d Cir. 2015), the Court explained the class action settlement approval process as "typically proceed[ing] in two stages":

> At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directed that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. *See* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, a court holds a formal fairness hearing where class members may object to the settlement.

*Id. Accord* Manual for Complex Litigation § 21.632 (4th ed. 2004) (same).

"The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason. ... Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (internal quotations and citation omitted). *Gates* goes on: "The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation" citing, *inter alia*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n. 18 (3d Cir. 2001). *Id.* at 439. "If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, "an initial presumption of fairness ... is established." *Id.* at 439. There is no provision in Rule 23(e) nor the caselaw for a putative class member to try to parachute in with a premature "objection" paper, nor does *Urban* cite to authority.

### 2. The Urban Objectors are not Parties to this Case (if ever) Until After the Court Grants the Preliminary Approval Motion

The only parties to the settlement agreement are the named plaintiffs (the class representatives) and the settling defendant. Where, as here, the settlement contemplates the creation of a settlement class, and the Court grants the preliminary approval motion, makes a preliminary determination on class certification, and

7

approves Notice, then, and only then, do absent class members become "parties" to the litigation for certain limited purposes. But even then, their role as parties is limited to objecting to the settlement as provided for in Fed. R. Civ. P. 23(e)(5) ("Any class member may object to the proposal if it requires court approval under this subdivision (e)[.]").

Before *Devlin v. Scardelletti*, 536 U.S. 1 (2002), there was a circuit split as to whether class members who objected to class action settlements were required to intervene under Fed. R. Civ. P. 24 in order to present their objections to a proposed settlement or appeal approval. *Devlin* disposed of that question: "We hold that nonnamed class members like petitioner who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." *Id.* at 14.

There is no doubt that before class certification, putative absent nonnamed class members are not parties to the litigation. Justice O'Connor, writing for the Court, stated: "What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing." 536 U.S. at 10. Justice Scalia, *dissenting*, made it crystal clear that prior to class certification, putative absent nonnamed class members are not parties to the

litigation: "Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*. A non-named class member is not a party to class-action litigation before the class is certified." 536 U.S. at 16, n. 1 (citation omitted, emphasis as in original).

### 3. Urban's Notice(s) of Objection Jeopardizes the Due Process Rights of Absent Class Members

Since the Urban Objection is a mere notice foisted on this docked by a non-party, issuance of an order granting some or all of the relief requested by the objection would give improper motion status to the "Objection" and have the effect of depriving absent class members of their due process rights. This is because prior to preliminary approval, no non-party absent class member has standing to object to anything or move the court for relief. Yet the non-party Urban Objectors seek preferential treatment such that their objections would have temporal priority over the objections of absent class members who are not yet advised of the proposed settlement.

Due process to absent class members is afforded by judicial determination that the class members are adequately represented. *See Hansberry v. Lee*, 311 U.S. 32, 42 (1940). This is why preliminary settlement approval under the rules requires the court to make appropriate findings regarding the adequacy of the named Plaintiffs and their counsel to represent the interests of absent class members, and proper

9

notice to the Class. These preliminary findings provide absent class members with basic due process protections.

Non-parties are not the same as named parties who negotiate a settlement for presentation to the Court, because (1) they did not engage in the settlement negotiations with the Defendant, and (2) they have not subjected themselves to the Court's scrutiny respecting their adequacy, and (3) they do not have the same fiduciary status. Prior to preliminary approval, there is no real basis to permit non-parties such as the Urban Objectors to interfere with the orderly process of preliminary approval of a class action settlement. The Urban Objectors are deprived of nothing: They and all of the other absent class members will have an opportunity to object to the proposed settlement following issuance of the Class Notice that advises them of the material terms of the proposed settlement and provides explicit instructions as to when and how to object if they so desire.

It would also disrupt the orderly administration contemplated by Rule 23(e) to permit the Urban Objectors to prematurely chip away at the proposed settlement. That would deprive other absent class members of the opportunity to evaluate the proposed settlement in the format signed by the parties and now before the Court, which is the process provided by Rule 23(e). The Urban Objectors effectively seek a privileged status not envisioned or authorized by any Rule of Court, Act of Congress, or provision of the United States Constitution. The substantive infirmities

of the Urban Objections, as well as the numerous rule violations made by the Urban Objectors, are not harmless technicalities. The Urban Objectors did not cite a single instance where their highly unorthodox procedure has been endorsed by a court.

### 4. The Court has the Inherent Power to Strike Papers that do not Comply with the Federal Rules and/or Local Rules; This Motion Seeks to Strike the Urban Objection(s) in Their Entirety

This is not a motion to strike under Fed. R. Civ. P. 12(f). It is a motion to strike, in its entirety, an improperly filed document. "[D]istrict courts have the power, absent a statute or rule promulgated by the Supreme Court to the contrary, to make local rules that impose reasonable sanctions where an attorney … fails to comply with any rule of court, including local rules[.]" *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 569 (3d Cir. 1985). District courts in the Third Circuit routinely strike filings for failure to comply with local rules and for other improprieties. *See e.g., United States v. Witmer*, 835 F.Supp. 201, 204-05 (M.D. Pa. 1993) (reply brief stricken because it raised issues that should have been argued in the Respondent's initial brief); *Sunoco, Inc. v. MX Wholesale Fuel Corp.*, 565 F. Supp. 2d 572, 576-577 (D.N.J. 2008) (attorney certification filed in opposition to partial summary judgment motion stricken); *Adams v. United States EEOC*, 932 F. Supp. 660, 663 (E.D. Pa. 1996) (granting motion to strike sur-reply where not permitted by local rule).

### 5. **The Urban Objections Violate the Federal Rules of Civil Procedure**

The Urban Objections contain requests for court orders (*See* Objection at 25, 28-29). Fed. R. Civ. P. 7(b)(1) requires requests for court orders to "be made by motion." The Urban Objection violates Rule 7(b)(1) because the papers were not filed as a motion. Moreover, under Rule 7(b)(2)(B), the movant "must state with particularity the grounds for seeking the order." The prolix Urban Objection violates Rule 7(b)(2)(B) because the twenty-nine (29) page document is not a motion; it is nothing more than a mish-mash of various requests for relief presented in no logical order. Doc 91 is a nominal withdrawal coupled with what could be viewed as a constructive refiling of the objection.

### 6. **The Urban Objection Violates this Court's Local Rules**

Neither the Federal Rules of Civil Procedure nor the Local Rules permit a non-party to file an "objection" to a motion. The Urban Objection arguably contains four requests for relief – equivalent to a motion.[2] When a litigant misnames a filing,

---

[2] Arguably, the objections contain the equivalent of at least four motions: (1) an escrow motion pertaining to an alleged fee dispute (Urban Objection at 25); (2) a stay motion (*id.* at 28); (3) a discovery motion (*id.* at 28); (4) a motion for a settlement conference and mediation (*id.* at 18-20). The Urban Objection asks (1) that "the class notice accurately reflect a fee dispute and that the Court compel that all attorney fees and cost reimbursements be escrowed pending the adjudication of such" (*id.* at 25); (2) that "the Court decline to approve the proposed Settlement as it is presently formulated" (*id* at 28); (3) that "the Court hold the matter in abeyance until the Bank provides the requested information or to allow a very short time for the additional class discovery as suggested herein" (*id.* at 28); and, (4) for a "meet[ing] and confer[ence] with all parties to attempt to restructure a more

a district court may identify the filing's true nature and proceed accordingly. *See e.g., Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 382 (D.N.J. 1999) ("unauthorized sur-reply" stricken for noncompliance with local rules.)

Local Rule 7.6 does not allow non-parties to file objections to motions. *Id.* Hence, the Urban Objections (Doc. 90 and as repackaged at Doc. 91) violates Local Rule 7.6 because it was filed by non-parties. As well, the Urban Objections contain at least eight other Local Rule violations.[3]

---

equitable resolution with [the Court] directly or with the aid of a mediation" (*id.* at 28-29).

[3]
- Local Rule 5.1(c) ("The lettering or typeface shall be clearly legible and shall not be smaller than 14 point word processing font [.]"). The Urban Objection's font size violates Rule 5.1(c).
- Local Rule 7.1 ("A motion ... shall contain a certification by counsel for the movant that he or she has sought concurrence in the motion from each party, and that it has been either given or denied."). The Urban Objection violates Rule 7.1 because no proposed order or certificate regarding concurrence was filed with it.
- Local Rule 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief."). The Urban Objection, which purports to oppose a motion, violates Rule 7.6 because it was filed 47 days after Plaintiffs' Motion. Standing to file it aside, the unexcused delay is extraordinary and prejudicial.
- Local Rule 7.8(a) ("The brief of each party, if more than fifteen (15) pages in length, shall contain a table of contents, with page references, and table of citations of the cases, statutes and other authorities referred to therein, with reference to the pages at which they are cited."). The Urban Objection does not contain a table of contents nor does it contain a table of authorities.
- Local Rule 7.8(a) ("A brief may address only one motion[.]") The Urban Objections encompass multiple topics and requests for relief.
- Local Rule 7.8(b). The Objection violates Rule 7.8(b) because it exceeds fifteen (15) pages in length without meeting the requirements of Local Rule 7.8(b)(2) and (3).

13

The Court directed all counsel in *Brennan* and *Urban* to take heed of the Federal and Local Rules. *See* Doc. 65, Transcript of August 6, 2014 hearing at 2 ("I don't want letters"); at 38 ("I want us to follow the rules."). Despite the Court's request, Mr. Shenkan has continued to mail letters to the Court. *See e.g.*, Mr. Shenkan's letters to the Court (*Brennan* Doc. 89, May 21, 2015) and (*Urban* Docs 61, 64 and 65, February 6, 2015, May 7, 2015 and May 21, 2015, respectively). All of this contributes to needless delay.

### 7. Due to the Substantive Errors and Rule Violations, the Urban Objections are Nothing More Than a Mere Notice

Since the Local Rules do not allow for the filing of an objection to a motion, it is no surprise that the M.D. Pa. electronic filing system does not provide for the filing of an objection to a class motion. As such, the Urban Objection was shoe horned into a "notice" format in the electronic filing system (*see Brennan* Doc. 90). "Notice" is an apt moniker for the *Urban* Objection because the papers are a mere

---

- Local Rule 26.3 ("Counsel for movant in a discovery motion shall file as part of the motion a statement certifying that counsel has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the court, together with a detailed explanation why such agreement could not be reached[.]"). The Urban Objection contains no such certification.
- Local Rule 83.14 ("The signing of a pleading or motion shall be deemed an entry of appearance. Appearance by attorneys or parties not signing pleadings or motions shall be by praecipe filed with the clerk[.]"). The Urban Objection was filed without an entrance of appearance – and no entry is authorized.

notice. The Urban Objections filed at Doc. 90 and purportedly withdrawn but refiled by reference at Doc. 91 are a nullity and should be stricken.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Plaintiffs' Motion to Strike the Urban Objection at Docs 90 and 91 and grant all other relief just and proper in the premises.

Date: 6/23/15

/s/ Cary L. Flitter
CARY L. FLITTER
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

TIMOTHY POLISHAN
KELLEY POLISHAN & SOLFANELLI, LLC
259 South Keyser Avenue
Old Forge, PA 18518
570-562-4520

M. SCOTT BARRETT
*(Admitted Pro Hac Vice)*
BARRETT WYLIE, LLC
320 West 8th Street - Suite 100
Bloomington, IN 47407-5233
(812) 334-2600
**Attorneys for Plaintiffs and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO and COURTNEY BELLOMO, individually and on behalf of all others similarly situated<br>　　　　　　　Plaintiffs<br><br>vs.<br><br>COMMUNITY BANK, N.A.<br>　　　　　　　Defendant | CLASS ACTION<br><br><br><br><br><br><br><br><br>NO. 13-CV-02939 (Judge Mannion) |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, hereby certify that a copy of Plaintiffs' Memorandum of Law in Support of Motion to Strike Objection of Nicole Urban at Docs 90 and 91 has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to:

Jonathan B. Fellows, Esquire
Suzanne O. Galbato, Esquire
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202

Jane T. Smedley, Esquire
Joseph E. Kluger, Esquire
HOURIGAN, KLUGER & QUINN, P.C.
600 Third Avenue
Kingston, PA 18704

**Attorneys for Defendant**

A copy of this Response shall also be sent this date, via email to:

Richard Shenkan, Esquire
SHENKAN INJURY LAWYERS
6550 Lakeshore Drive
West Bloomfield, MI 48323

Howard A. Rothenberg, Esquire
345 Wyoming Avenue, Suite 210
Scranton, PA 18503

**Attorneys for Non-Parties, Nicole Urban, et al**

Date: 6/23/15                                  /sl Cary L. Flitter
                                               CARY L. FLITTER

   Said document is available for viewing and downloading from the ECF system.

Date: 6/23/15                                  /s/ Cary L. Flitter
                                               CARY L. FLITTER