# EXHIBIT "5"

**The Andela Consulting Group, Inc.**
**16311 Ventura Blvd., Suite 1060**
**Encino, CA 91436**

Thomas A. Tarter
Managing Director
Expert Witness – Banking
Consulting – Financial and Management

Phone: (818) 380-3102
Fax: (818) 616-4357
E-Mail: ttarter@earthlink.net
Web: www.andelaconsulting.com

## EXPERT REPORT

Carol A. Brennan, Anthony Colino, Courtney Bellomo, individually and on behalf of all others similarly situated, Plaintiffs

**vs**

Community Bank, N.A., Defendant

Case No:  13-CV-02939 (MEM)

United States District Court

For the Middle District of Pennsylvania

Banking and Credit Industry Customs, Standards and Practices, Credit Damages, Credit Reporting, Credit Scoring and Credit Repair

February 8, 2016

Prepared By

Thomas A. Tarter

1

## EXPERT REPORT OF THOMAS A. TARTER

### INTRODUCTION

I have been retained on behalf of Carol A. Brennan, Anthony Colino, Courtney Bellomo. Individually and on behalf of all others similarly situated (sometimes "Ms. Halacher" or "Plaintiff") and Kimberly Woodring (collectively members of the Class Action suit may sometimes be referred to as "Plaintiffs" and/or "Class Members") through their counsel, Cary L. Flitter, Esq., of Flitter Lorenz, P.C. to provide consulting, and if necessary, expert witness testimony in the form of a report and/or verbal testimony pertaining to banking and credit industry customs, standards and practices; credit reporting; credit repair; credit scoring; and credit damages caused by furnishing and reporting of information pertaining to the repossession and sale of Plaintiffs[1] automobiles and the beneficial impact that Plaintiffs will receive if the Community Bank trade line is deleted from their credit reports according to the terms and conditions contained in the proposed Settlement Agreement.

In connection with this engagement, I have prepared this Report and, to assist readers, a table of contents.

The opinions expressed in this Report are based upon my knowledge and experience developed throughout my more than 40-year career in banking, business, credit, lending and consulting, as well as my research and information that has been provided to me by Plaintiffs' counsel.

Consistent with my practice, this Report is subject to amendment, modification and supplementation upon any information, facts, documents or testimony that may be provided to me in the future.

---

1 And others similarly situated

## QUALIFICATIONS:

I am the Managing Director of The Andela Consulting Group, Inc. ("ACG") and I have significant experience in banking, business and consulting inclusive of experience in connection with  consumer credit, credit repair, credit scoring, loan modification, loan servicing and credit damage computation.

I have served as a court approved financial advisor, management consultant, business advisor and on the boards of directors of public, financially troubled and closely held corporations (large and small) including SEC reporting corporations such as Bank of Los Angeles, United Mortgage, First Alliance Mortgage Company ("FAMCO") to whose board I was appointed to serve as an independent outside director subsequent to its bankruptcy filing as well as American Standard Development Company (real estate development) and Sunshine Makers, Inc. (dba Simple Green).

My experience as expressed in this Report in the business, consulting and financial institutions industry spans more than 40-years inclusive of my direct experience in connection with the matters set forth in this Report.

Following my enlistment and service in the United States Army (1965-1968) which included service as a Finance and Accounting Officer, I started my banking career at Lloyds Bank California, where I was a Vice President in the Corporate Finance and California Divisions; and continued it at the Sanwa Bank of California, as Vice President and the Senior Credit Officer for Southern California; Bank of Los Angeles, as Founding Director, President and Chief Executive Officer; Center National Bank, as Director, President and Chief Executive Officer; First Los Angeles Bank, as Executive Vice President; Western States Bankcard Association, as a director and ACG.  I was also a director of the Fort Ord Credit Union, advisor to Matadors Community Credit Union and a founder and organizer of Hancock Savings Bank.

My work with financial institutions, lenders, ACG and my consulting experience includes consumer credit and consumer real estate secured lending, debt and loan collection and credit reporting, credit scoring and loan approval models, credit damage computation and dispute resolution.

As a prior financial institution officer, senior executive and board of directors' member, I have considerable experience in consumer credit related issues such as those involved in this matter. Since 1993, I have advised ACG's clients and served as a litigation consultant regarding the above subject matters. I have testified in state and federal courts including but not limited to Arizona, California, Connecticut, Illinois, Massachusetts, Nevada, Oregon, Pennsylvania, Rhode Island, Texas, Washington and West Virginia.

I have been appointed to and have served on the mediation panel (1995 to the present) for the Bankruptcy Mediation Program of the United States Bankruptcy Court for the Central District of California and have mediated consumer credit disputes. In addition, I was a multi-term member of the Board of the Los Angeles Bankruptcy Forum.

I have a Master of Business Administration degree from Santa Clara University and a Bachelor of Science degree in business from the University of California at Los Angeles.

A copy of my resume and an overview of The Andela Consulting Group, Inc. are attached as Exhibit A. Also, attached as Exhibit B is a case log involving testimony in arbitration, deposition, mediation and trial.


**DOCUMENTS**

In preparing this Report, I have reviewed numerous articles, websites and credit related information (collectively, the "Documents") including but not limited to the following:

- Amended Complaint ("Complaint");

- Class Action Settlement Agreement and General Release ("Settlement Agreement");
- Amended Order of Prelinary Determination on Class Certification, Preliminarily Approving Class Settelement and Directing the Issuance of Notice to the Class;
- Order of Preliminary Determination on Class Certification, Preliminarily Approving Class Settlement and Directing the Issuance of Notice to the Class;
- Amended Class Action Settlement Agreement and Release;
- Community Bank, N.A.'s website;
- Bank America's website;
- CitiBank's website;
- JPMorgan Chase's website;
- Wells Fargo's website;
- FDIC website;
- Office of the Comptroller of the Currency ("OCC") website;
- Conversation with a Ford Motor Credit Corporation employee;
- Conversation with a Pacific Mercantile Bank officer;
- TransUnion website;
- Experian website;
- Equifax website;
- FICO Website;
- Union Bank of California, Lender Liability Guidelines;
- Risk Management Association Code of Ethics;
- HSH, Average Rates for New and Used Auto Loans, google search;
- Fair Credit Reporting Manual, National Consumer Law Center;
- Unfair and Deceptive Acts and Practices Manual, National Consumer Law Center;
- Fair Debt Collection Manual, National Consumer Law Center;
- The Cost of Credit Manual, National Consumer Law Center;
- Principles of Corporate Finance, Richard A. Brealey and Stewart C. Myers, McGraw-Hill, 5th Edition;

- Credit Scores and Credit Reports, Evan Hendricks;
- Economic/Hedonic Damages, The Practice Book for Plaintiffs and Defense Attorneys, Michael L, Brookshire, Ph.D. and Stan V. Smith, PhD, 6th Printing ("Economic/Hedonic Damages");
- Analyzing Financial Statements, American Institute of Banking and American Bankers Association;
- The Laws of Money, Suze Orman;
- What Every Credit Card User Needs to Know, Howard Strong;
- You're Nothing But a Number, John R. Ulzheimer, Credit.com;
- Your Credit Score, Your Money & What's at Stake, How to Improve the 3-Digit That Shapes Your Financial Future, Liz Pulliam Weston, FT Press;
- Footnoted and textual references contained in this Report.

During my banking, business, financial institution and consulting career, in addition to what I have learned from my professional work experience, I have attended numerous seminars, conferences and courses. I have studied various textbooks and read professional and trade publications. The subject matters covered by these materials include: business, corporate governance, credit, credit damages, economic trends, financial services industries and consulting issues. While the sources for these materials may vary, they are sponsored or published by various organizations closely associated with business, credit, economics, insurance, lending and consumer credit organizations.

**SCOPE OF ENGAGEMENT**

I have been requested to address two fundamental factors in connection with the Settlement Agreement and its benefits for Class Members to repair credit that was damaged and caused by negative credit reporting made by Community Bank:

        a. Describe for the Court's consideration credit industry customs, standards and practices for credit approval, the use of credit reports and credit scores in credit approval for consumer credit (such as: automobile loans, credit

cards, mortgage loans); insurance; employment; credit scoring models; and, credit repair.

b. Determine if Class Members will benefit from the Settlement Agreement by having the Community Bank trade line deleted and/or cloaked[2] from their credit reports; if so, why.

With respect to the Scope of my Engagement, I have not attempted to quantify damages on a class-wide basis. This is because of many factors including: (i) the number of Class Members (approximately 2,000): and (ii) Class Membership is comprised of a wide and divergent variety of consumers with materially different circumstances (credit scores, income, personal wealth, credit availability, employment, age, residential status [home owner, renter, living with friends or relatives], physical condition, emotional issues).

## DISCUSSION, OBSERVATIONS AND OPINIONS

*In the context of this Report, I am not discussing or opining from a legal perspective, but rather from a business perspective and the use of terms are as they are commonly used in the ordinary course of business by business and credit industry professionals.*

*Additionally, as discussed in this Report, I may use terms such as emotional, stress and other terms. In the context of this Report, I am not rendering psychological and/or medical opinion. I do not intend to quantify emotional and/or medical opinions but rather I am rendering opinions from a business and direct personal experience perspective that is based upon my personal and professional meetings with hundreds of individuals involved in credit disputes and credit problems on a regular basis during the past 40 + years.*

---

2 Cloaking is a credit industry term of art pertaining to the prevention of future reporting by placing an item into a category that is specifically designed to not be reported.

**Credit Damage Overview**

According to many of my credit industry peers, the damages created by negative credit furnishing and negative credit reporting cause a large variety of adverse consequences for consumers (such as the Class Members) that may include: missed investment opportunities, negative effect on business[3], loss of job offers[4] or business expansion opportunities, higher borrowing costs on credit cards, mortgages and loans, higher premiums on life, medical, home, business and medical insurance, reduced credit availability and the apprehension and fear when applying for credit of being turned down (Chilling).

Consequently, it is my opinion that the deletion and cloaking of negative credit information reported by Community Bank will, with a high degree of commercial certainty, benefit Class Members.

**Good Credit is Important and Benefits Consumers**

The importance of good credit caused by the deletion and cloaking of negative Community Bank trade line information is reflected by the following:

**Federal Reserve Bank of San Francisco** has reported:

"Credit is valuable. The amount of how much credit you have and how much you use it goes far beyond shopping. Whether you have good or poor credit can affect where you live and even where you work, because your credit record may be

---

3 Personal guarantees are normally required for business related loans including SBA guaranteed loans. Negative information may result in loans rejections that may impact the individual as well as others who may be employed in a business enterprise. Another example is that landlords typically require personal guarantees for leases which may also adversely impact the ability to start and/or expand a small business enterprise.
4 Many employers including supermarkets like Safeway obtain credit reports because employees may be engage in handling cash and/or merchandise. Further other employers may require credit reports for security clearances such as the TSA and police departments.

considered by prospective employers.  That is why you need to understand how credit is awarded or denied and what you can do if you are treated unfairly."[5]

**Experian** is one of the "Big 3" (Equifax, Experian and TransUnion) credit reporting agencies ("CRAs") whose annual revenues for 2014 were $4.8 Billion.  According to its 10K Report for 2014, Experian produced 3.8 million credit reports in a typical day [Id. pg. 98].  Credit services is "a really big" business and its importance and time sensitivity is clear in the context of credit repair because accurate information should be produced for the benefit of consumers, employers, insurance companies and merchants who rely on the accuracy of credit information in making decisions.

**Equifax Inc.** is a consumer credit reporting agency.  In the United States, it is considered one of the three largest American credit agencies along with Experian and TransUnion. Founded in 1899, Equifax is the oldest of the three agencies and gathers and maintains information on over 400 million credit holders worldwide. Based in Atlanta, Georgia, Equifax is a global service provider with US $2.3 billion in annual revenue and 7,000+ employees in 14 countries. Equifax is listed on the NYSE[6]

Equifax also sells credit information to consumers for $19.95 a month and advertises its services to consumers to "make sure your score is strong"[7]. Clearly credit scores and accurate information are important to consumers because credit repair corrects and deletes negative credit events.

**TransUnion** states the following:

> "The Federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness and privacy of information in the files of consumer reporting agencies."

> "A consumer reporting agency may provide information about you … employer…."

---

5 Federal Reserve Bank of San Francisco, Consumer Information, Your Credit Life How the Law Protects You.
6 Wikipedia
7 Google Search, Equifax's website.

"You make seek damage from violators. If a consumer reporting agency, or, in some cases a user of consumer reports or a furnisher of information to a consumer reporting agency violates FCRA you may be able to sue in State or Federal Court."[8]

In summary, (i) consumer credit monitoring, scores and credit reporting are huge industries; (ii) consumers pay billions to monitor and protect their credit from negative information; (iii) credit information is used by financial institutions, credit card companies, insurance companies, prospective employers and prospective landlords, thus, negative credit reports affect the possibilities of new business ventures, obtaining loans and credit with optimal or better terms, the possibility of a good job and also the best rates for insurance purposes. This loss of opportunity may be a one-in-a lifetime opportunity that can never be regained (iv) and if permitted to continue and not be deleted from credit reports, negative credit, such as that alleged in this case, can and will with a high degree of commercial certainty damage and harm Class Members. Consequently, the deletion and cloaking of negative trade line information is important and beneficial to any affected consumer and to Class Members.


**Credit is not an Exact Science and Tier Based Risk Management**

Based upon my direct experience, education and training the extension of credit and risk management is both an art and a science. Historically, lenders have acknowledged that "to measure the exact extent of a given risk is rarely possible"[9]. The extension of credit and risk management is like an art because the benchmarks for risk adjustments vary and may be subjectively interpreted by creditors/investors for borrowing situations where the circumstances, collateral value, security, debt to income ratios, credit rating scores frequently are expressed in ranges. For example, loan-to-value ("LTV") ratios are frequently expressed in ranges such as LTV ranges of 65% – 80% for first priority

---

8 TransUnion, A Summary of Your Rights Under the Fair Credit Reporting Act.
9   Analyzing Financial Statements, American Institute of Banking and The American Bankers Association, Clifton Kreps and Edward Gee, Fourth Edition, p. 6.

multifamily (apartment) properties[10]; credit scores[11] of 760+ for the top mortgage rate, 730-759 for the next level, etc.  Consequently, any credit risk measurement involves varying degrees of professional judgment, data interpolation, metrics and economic condition analytics.

In fact, in the ordinary course of business, lenders like Bank of America, Citibank, Ford Motor Credit Corporation[12], JPMorgan Chase, Santander and Wells Fargo, place potential applicants and existing consumer-borrowers into tiers that are risk rated based on credit scores, public record information, litigation, tax liens, the date/timing of material negative credit events such as the date (2011, 2012, 2013, 2014, 2015) of a repossession and/or a loan charge-off.  The risk indexed information is then used to determine: credit approval criteria, such as interest rate ranges to compensate for risk factors, down payments and the length of credit.  The results are logical so that consumers with no negative information (such as a loan charge off or a repossession) would fall into Tier 1 and as a result Tier 1 would theoretically have far better terms and conditions than Tier 2, Tier 3 or lower.

**Credit Risk Measurement is Discrete and Different for Each Consumer**

Likewise credit risk assessment and interest rate computation involves varying degrees of professional, judgment, data interpolation and economic conditions.  There are no absolute "bright line" definitions and formulas.  Each set of circumstances is discrete. Credit damage, credit risk and interest rate computation are, therefore, inherently different from other types of expert testimony such as chemical, drug and DNA tests where specific scientific formulas are applicable.

---

10 Automobile loans (new and used) also have LTV ratios based on borrower credit data and age of the car.
11 According to the FDIC credit scores below 660 are considered Subprime.
12  During the preparation of this Report, I had a conversation with a FMCC employee who told me that at times FMCC as part of its approval process repos and charge offs obtained from credit agency data downloads have been the basis for automatic credit declinations for leases and purchases.  Credit criteria periodically change based on changing market and economic conditions. I also had a similar conversation with David Rothenbuhler, Executive Vice President of Pacific Mercantile Bank, Newport Beach, CA who also said negative information such as a repossession or chargeoff would be the basis for credit denial.

**Time, Energy and Money are Required to Remedy Negative Credit Information**

Credit and financial issues often require a considerable expenditure of time, energy and money to attempt to remedy a negative situation.  The credit damage remedy process also takes a toll on the victims because of the effect that it has on the quality of their lives, their "loss of enjoyment of life"[13], ability to operate their business in a normal manner, access[14] to and cost of credit and furthermore their public image is slandered and tainted as projected by their negative credit profiles.

If the negative Community Bank trade line is not deleted and cloaked, it is my opinion that it is commercially reasonable and highly likely that Class Members  be further damaged because they may be forced to spend valuable time dealing with credit issues arising from the Community Bank trade line (such as repossession and/or charge off).

Time is a valuable commodity[15].  Professionals place value on the time they spend working on behalf of a client by charging clients for their time.  There is a finite amount of time in each day and in each person's life.  Time cannot be replaced.  The past can only be re-visited through memories, it cannot be undone.

**Credit Expectancy is Adversely Impacted by Negative Credit Information**

It has been my direct experience that a major result of credit damage is often the loss or reduction in credit expectancy (credit availability).  In fact, in a recent TV ad, Experian

---

13 According to Stan Smith, PhD., Hedonic damages.
14 Consumers may be denied access to bank, mortgage credit and be forced to use higher cost types of credit such as secured credit cards, pay day lenders, "by here pay here" auto lenders.
15 A recent article in the Wall Street Journal focused on the value of time and cost of time benefits and tradeoffs.  "Put a Dollar Value on Your Time, With Help from New Tools, by Sue Snellenbarger, Wall Street Journal, Personal Journal Section, July 22, 2015, pg. D1.  Please also see Cortez v. TransUnion, 617 6.3d. 688,719 (3d Cir, 2010) ("Time spent trying to resolve problems with the credit reporting agency may also be taken into account" {under the Fair Credit Reporting Act])

reported that 90% of all credit decisions are based on credit information and credit scores. Based upon my experience, I found this to be true and I agree.

Further, illustrative of the fact that "credit is important to consumers and a big business" is the fact that Experian sells credit information to consumers, such as the Triple Advantage program, that is billed to consumers at $19.95 for each month membership is continued.[16]  However, even for the simple task of obtaining credit information, a subscriber is required to have a credit card which may be problematic if material negative events occur such as a charge off and/or repossession because credit card companies may cancel credit cards due to negative trade line reporting..

It has been my direct experience that businesspersons and consumers that have material negative credit events like a charge off and/or a repossession contained in their credit reports may also be adversely impacted by not being able to obtain credit cards or loans at any rate[17].  Consequently, certain Class Members may not have the capacity and mechanism necessary to make major purchases such as automobiles (new and/or used), homes (including but not limited to making improvements necessary for home-based businesses) or for their personal lives that require credit for credit card purchases, automobile and/or home purchase or refinance loans.

**Chilling**

Chilling is a term used in the credit industry that pertains to individuals who are afraid of applying for credit because they are afraid that they will be embarrassed by being turned down and/or because they believe they will be turned-down, therefore, they just do not apply.  Simply put, they will be frozen out of credit markets; and, their perception of being rejected becomes a reality because they stop applying for credit.  Further, those same credit damaged individuals may also be "forced" to pay cash for most purchases and lose the convenience of being able to purchase things including online purchases that

---

16   Experian/Free Credit Report and Credit Score, Personal Services, Google search for Experian.
17 Hard money unsecured loans are normally not available to low income individuals.

require the use of credit (a credit card). Theoretically, "Chilling" affects not only the Class Members, who may have stopped applying for credit (even to take advantage of promotional offers at places, like Best Buy, JC Penney, Sears and Target);. Chilling also affects merchants who lose sales opportunities. Consequently, Class Members may benefit by having the fear of rejection removed.

Consumers may also incur damages from negative credit and financial events for the loss of job opportunities or the ability to start their own businesses. "The loss of opportunity may be more than just a reduction in salary or promotion; but it may involve a once-in-a-lifetime opportunity that can never be regained." [18]

**Credit Scoring**

Credit score computations are heavily weighted to take into account payment histories and delinquent accounts as illustrated below:

**Factor 1: Payment History (35%)**
- Track record with various lenders
- Length of Positive Credit History
- Length of Time that has Passed Since the Most Recent Negative Item
- Severe Unpaid Debts – Public Records
- Severity & Quantity of Delinquencies

**Factor 2: Amount Owed – Extent of Indebtedness (30%)**
- Quantity of Credit Accounts
- Ratio of Credit Balance to Credit Limit
- The amount owed on all accounts
- How Much is Owed On Each Type of Account?
- How Much of Mortgage or Other Installment Loans Are Paid Off?

**Factor 3: Length of Credit History (15%)**
- Overall Length of Credit History (In General)
- How long have specific credit accounts been established?
- How long has it been since you used certain accounts?

**Factor 4: How Much New Credit Are You Assuming? (10%)**
- How many new accounts, particularly credit card accounts?
- How long has it been since you opened a new account?
- How many recent requests for credit have you made, as indicated by inquiries to the credit bureaus?
- Length of time since credit report inquiries were made by lenders
- Whether you have a good recent credit history, following past payment

---

18 Credit Damage: Causes, Consequences and Valuation, by Stan V. Smith, Ph.D., pg 6.

problems
**Factor 5: Inquiries (10%)**

It has been my experience as well as being reported in numerous studies that, if a consumer's credit score is lowered by even 5 points that the cost of credit may go up. In the ordinary course of business, a 5 point difference may not be significant if a consumer's credit report score decreases from 750-745. However, if a consumer's credit report score decreases from 702-697 and/or causes a consumer to fall below lender prescribed credit score guidelines, then, this is a significant factor that may result in an increase in insurance, mortgage, credit card and automobile financing costs as well as affect employment opportunities.

It has been my direct experience that the higher a consumer's tier, the lower the consumer's interest rate. As credit gets stronger with no negative information, consumers present less risk of default for the lender, and therefore, the lender (credit grantor) asks for less interest as compensation for letting the consumer use its money for credit cards, to buy a car, mortgage financing and credit in general. For instance, according to MyFICO, a borrower with a 730 credit score -- tier 1 -- could expect to get a 60-month auto loan loan for 3.445 percent as of the date of publication. The same loan for a borrower with a tier 2 score of 670 could cost 7.035 percent, and a tier 3 customer with a 640 score could pay 11.074 percent. Customers with scores in the low 500s can expect to pay 17.307 percent in loan interest.

**Summary of Observations and Opinions**

Based upon my review of the aforementioned Documents, and my own more than 40-years of banking, credit industry, board, business and consulting experience, I have formulated the observations and opinions expressed below and in this Report:

1.  I note for the record, at the outset, that the facts and circumstances of each consumer's benefit from negative credit repair is distinct and that the value to each Class Member will also be distinct.

2. As to damage quantification, I have not made any determination for reasons expressed in this Report.

3. I have, however, formulated observations and opinions pertaining to benefits Class Member will receive from the Settlement Agreement and specifically the deletion and cloaking of the Community Bank trade line from any credit reports generated by Equifax, Experian and TransUnion.

4. Although it is highly likely that some Class Members may not have pristine credit arising from furnisher information from other creditors, the deletion and cloaking of adverse credit information from Community Bank pertaining to negative repossession information will improve their overall credit by deleting a negative event, because as described in this Report, credit scoring is not just payment sensitive but it is also event (charge off or repossession) sensitive.

5. Further, since negative events such as a charge off and repossession may remain on a consumer's credit report for up to 7-years and 6-months, this means the negative impact can continue to have adverse consequences for many years. The deletion and/or cloaking of such information mitigates the negative impact of a negative credit event. Consequently, Class Members will not have to deal with the negative effects of the Community Bank trade line in the future. And as a result, their credit scores will be improved.

6. At this juncture, I note for the Court's consideration that, while each CRAs' credit computation algorithms are proprietary and specifics (other than the generalities discussed in this Report) are considered to be confidential, it is my opinion, Class Members' credit score would be significantly higher (I estimate the score impacts to be approximately 50 - 125 points today), if the negative Community Bank trade line is deleted and/or cloaked.

7. The deletion and cloaking of the Community Bank trade line is important and beneficial to Class Members because credit is an important factor in the business

and consumer daily economic cycle as it provides a means of payment for the purchase of goods and/or services. Credit comes in many forms such as automobile (new and used) loans, mortgages, credit cards, business loans and vehicle loans. In the case of Class Members, benefits are highly likely to include (i) is the ability to improve the probability to obtain business and personal loans; (ii) lower interest rates; (iii) better interest rates, terms and conditions for mortgage secured loans (1st and 2nd priority position); (iv) remove a potential security clearance problem; (v) reduce and/or eliminate the fear of credit denial and possibly being "chilled" from applying for credit (even to obtain significant promotional discounts at mass retailers like Target) because certain Class Members may not want to be embarrassed by being turned down at the register.

8. Similar benefits may come from increased access to credit caused by the removal of a significant negative credit event. This is also highly likely and commercially reasonable to impact certain Class Members; and, it is important to certain Class Members because credit and credit cards provide a mechanism to make purchases and pay for purchase(s) over a period of time.

9. In my opinion, the deletion and cloaking of the Community Bank negative trade line will remove a significant negative credit event, the result of which, for certain Class Members, may have been being turned down, being frozen (chilled) out of credit opportunities that would otherwise have been available and thereby eliminate potential future damage arising from the negative Community Bank trade line.

10. It has been my experience that banks and credit unions have well-defined policies, procedures and systems such as automated credit decision models that are used in their credit decision making process. Negative credit events, such as recent negative reporting, foreclosure and collection remarks are events that may individually and/or collectively cause a credit request to be turned down. And, in the event of approval, be a commercially reasonable reason to impose higher rates, fees, and more stringent terms and conditions. The deletion and cloaking

of the Community Bank trade line will remove that impediment, and, therefore, benefit Class Members.

11. Consumers and businesspersons like Class Members depend upon credit bureaus to provide accurate credit information, as well as on creditors who base their consumer credit decisions substantially[19] on credit information provided by companies like Experian, Equifax or TransUnion.

12. Additionally, it has been my direct experience that consumers, like Class Members, normally try to qualify for the best available credit products with respect to terms and conditions.    According to M.C. Postin, Demand Media: "Your credit score is one of the most influential factors on the interest rate you will pay on your home mortgage loan. The higher your credit score, the lower your interest rate. That's why there is no true minimum credit score for home loans. You can obtain a loan with a lower credit score, if other factors like debt load and down payment are in your favor. But, you are likely to pay a higher interest rate. BCS Alliance says that a score of 630 can add anywhere from $50 to $250 per month to your mortgage payment."

As a result, when compared to an individual with a higher credit score and no record of a repossession, it is logical to conclude that the Settlement Agreement will be beneficial to many Class Members by making available the opportunity to through refinance and access to credit to lower their monthly payments and interest rates than if the Community Bank trade line continued to be reported, because through credit repair their credit scores and credit profile would improve.

---

19 Financial models using information provided by CRAs is commonly used in the ordinary course of business by banks, major retailers, credit card companies and auto dealers.

13. Besides draining financial resources, the Community Bank negative trade line is highly likely to have also consumed time[20] that could have been used to develop, operate and promote a business, and improve the quality of life with families and others.  It is my opinion that this is a huge Class Member benefit.

14. Creditors and major retailers who have "private label" credit relationships with credit issuers like Bank of America, Chase, Citibank, HSBC, Home Depot, Target, J.C. Penney, Best Buy, Sears are major participants in the credit industry either furnish credit information and/or use reported information to make credit decisions. Consequently, if the information communicated is negative, multiple parties are impacted including but not limited to people like Class Members, others similarly situated, and also creditor providers and retailers who miss sales opportunities[21].

15. Class Members are impacted directly by negative credit, which directly affects their ability to obtain and maintain credit. In essence, negative credit data is an indicator of potential problems that may impact a person's ability and/or willingness to repay. It has been my direct experience that many bankers view negative credit information and collection accounts as being a "character flaw", because basic credit training focuses on the 5 C's of credit[22] with character being the most important.  In this regard, automobile lenders, credit unions, mortgage lenders and credit card issuers frequently download CRA generated information into their credit decision making models.

16. Class Members' credit history profiles have been tarnished by the impact of the negative information furnished by Community Bank that is memorialized and contained in CRA databases.  Again, it is clear that Community Bank's actions and conduct exacerbated the effect of a repossession and/or chargeoff by its

---

20  For example: resolving credit problems and trying to access cash, loans and resolve credit issues as well as litigation comes in effect a second job.
21  For instance the parties involved in the origination of a mortgage loan such as the appraiser, loan originator, escrow and title personnel.
22  Analyzing Financial Statements, American Bankers Association – Character, Capital, Capacity, Collateral and conditions.

negative reporting.  Further, it has been my direct experience that while CRAs gather credit information from multiple sources, they do not report causation but rather the information provided to them by credit providrs such as Community Bank.  Thus, Class Members' credit histories have been tainted by Community Bank amd, therefore, Class Members will benefit substantially from deletion and cloaking.

17. Other benefits also are tied to the deletion and cloaking of negative information are illustrated in one of my credit damage peer's approach to credit damage computation, included in the documents that I used in this action was the text, Credit Scores & Credit Reports, How The System Really Works, What You Can Do, by Evan Hendricks, First Edition, 2004, Privacy Times, Inc., ISBN 0-9645486-1-5.  Please note that relative to damages cited by Mr. Hendricks are eight (8) categories of typical damages that include the following:

"Some Categories of Typical Damages/Costs:

   (1)    Inaccurately described as deadbeat to third parties;

   (2)    Improperly denied credit because of inaccurate data;

   (3)    Expended time and energy to correct errors not of one's making;

   (4)    Wrongfully received debt collection calls;

   (5)    Chilled from applying for credit;

   (6)    Sleeplessness, physical symptoms;

   (7)    Sense of helplessness, loss of control over personal data;

   (8)    The emotional distress stemming from, and associated, with all of the above.

"I [Evan Hendricks] propose a formula that takes into account the following factors.

"**FACTORS**

   (1)    The nature and substance of the category of damage

   (2)    Time & energy to solve the immediate problem

   (3)    The expectation that the problem was solved

(4)    The number of recurrences

(5)    The period of time over which the problem persists"

"In essence, the formula, like a credit scoring model, would need to 'assign weights or points' to each factor and then multiply Factor (1) by Factor (2); then that result would be multiplied by Factor (3), and then by Factor (4). Etc.  The purpose is to measure the compounding nature of the damage."[23]

18. It is my opinion that Class Members may benefit in multiple ways including but not limited to the following categories:

Credit - Financial Stigma

Cost of Credit

Loss of Credit Expectancy[24]

Loss of Quality of Life

Lost Income

Medical

Sleeplessness and Stress

Mental anguish, frustration and upset[25]

Legal Expenses

19. Higher interest rates are not the only penalties incurred by consumers who fall below lender pre-established credit score thresholds because lenders then may require higher down payments, limit the amount that can be borrowed and employers may deny a person's employment. Credit repair will benefit Class Members by removing a significant negative event from their credit profiles.

20. In essence, it has been my direct experience that an individual's credit report is like a litmus test, a report card or bond rating.   Negative credit information

---

23  Credit Scores and Credit Reports, Evan Hendricks.
24  This represents an estimated range of available credit such as increased credit card costs as well as the loss of promotional rates that normally occur at Best Buy. Hypothetically, a 10% increase in credit card interest rates assuming an average outstanding balance of $2,000 would be approximately $200 per year. It is not possible in this case to quantify this element of damages.
25  Please refer to the sections of this report that cite Mr. Hendricks. commentary.

created by a debt buyer, debt collector and/or creditor directly leads to lower ratings (credit scores) and like businesses (debt ratings by rating agencies) this can result in increased borrowing costs and/or the denial of credit. That is exactly what happened here. Credit repair will therefore be beneficial to Class Members by removing a substantial negative event from their credit files through the deletion and cloaking of the Community Bank trade line.

21. Credit[26] - financial stigma represents a blemish or "black mark"[27] on a consumer's record caused by negative credit data. Credit - financial[28] stigma's impact includes but is not limited to: (i) not being able to negotiate the "best credit terms"; (ii) not being able to qualify for credit.

22. Credit-financial stigma is real and it is an ugly bi-product of negative credit. It has been my direct experience that negative credit information and facts concerning a person can directly lead to a scenario that consumes cash and often creates a "downward spiral" that impacts the personal affairs and lives of individuals like the Class Members. The inability to access credit, which otherwise would have been available; due to lower credit scores, can directly cause a downward credit spiral. The deletion and cloaking of the significant caused by Community Bank's negative credit reporting will remove a stigma and improve the images of Class Member.

23. It has been my direct experience that credit and financial difficulties may be compared to a variety of difficult situations. They are stressful, frustrating and time consuming. Further, once negative events take place, people are not often ever able to get back to 100%. Their quality of life enjoyment is diminished during the period of the events as well as residual future effects. Again, deletion and cloaking the Community Bank trade line will benefit Class Members and help repair their credit profiles.

---

26 Also known and/or referred to as financial stigma.
27 Stigma is defined as a blemish, blot, tarnish at Dictionary.com.
28 "Avoiding the stigma and financial fallout of foreclosure", Banks' resistance to short sales softening, by

24. During my banking, business and consulting career, I have met with hundreds of consumers and it has been my direct experience that persons like Class Members are often emotionally damaged[29] by the stress, time and negative information reported in credit reports.  Based on my experience (not an opinion, since I am not a licensed psychologist) that, Class Members will "feel better" and benefit, if a significant negative trade line is removed by the deletion and cloaking of the Community Bank trade line.

25. A watershed study on consumer debt collection by David Caplovitz found: A conservative estimate of the proportion [of 1,331 consumer Defendants] who suffered psychosomatic symptoms as a result of the debt problem ranges from 38 – 53%.  In addition to this indirect measure of the impact of the debt problem on the debtor's health a more direct question was asked: In general do you think your debt troubles have had any effect on your health?[30]  49% of the debtors in the total sample answered this question affirmatively.  These persons were then asked whether their health problems required them to visit a doctor, and 48% responded affirmatively.

---

Alexandro Lazo, LA Times, Feb 18, 2010, pg. 1, illustrates that a stigma is attached to negative credit.
29 Justice Scalia, recognized the impact of damage and damages when he stated "that doesn't mean that it's not actual, it just means that it's hard to quantify, but you've had the emotional harm.  Why isn't that an…actual harm?" (Justice Scalia, Oral Argument, Buck v. Doe, December 2003.)
30 National Consumer Law Center Manual, Fair Debt Collection, pg. 42.; Consumers In Trouble: A Study of Debtors in Default, David Caplovitz.

**CONCLUSIONS**

Based on the information that I have reviewed, at this point in time, I have concluded that:

1. Class Members will benefit from credit repair by the deletion and cloaking of the Community Bank trade line.

2. It is my opinion to a high degree of commercial certainty that credit repair benefits will include but not be just limited to:

   - Repair Class Member credit scores and credit profiles
   - lower interest rates;
   - better credit terms and conditions;
   - elimination of negative information that may negatively impact security clearances; improve job and/or employment opportunities; lower insurance rates; opportunities; greater access to credit; remove a stigma and create a better public image.

**SUPPLEMENTAL INFORMATION:**

**Compensation:**

$295/hr       Consulting, preparation of declarations and/or reports.
$450/hr       Deposition and/or trial appearances involving testimony.

**Articles and Publications:**

None in past 10 years.

**EXHIBIT A**

**Andela and Tarter Background Information:**

**See Attached:**
**Andela Overview**
**Thomas Tarter's Resume**
**Addendum to ThomasTarter's Resume**

# The Andela Consulting Group, Inc.
### 16311 Ventura Blvd., Suite 1060
### Encino, CA 91436

**Thomas A. Tarter, Managing Director**
**Expert Witness - Banking**
**Consulting - Financial and Management**

Telephone:(818) 380-3102
Fax: (818) 616-4357
E-Mail: ttarter@earthlink.net
Website:andelaconsulting.com

The Andela Consulting Group, Inc. ("Andela Consulting"), managed by Thomas A. Tarter, engages in banking, credit (commercial and consumer), credit damage Expert Witness/Litigation Support. Andela Consulting has provided business reorganization, management and financial advice to financial institutions and businesses. With more than 40-years of experience as a banker, business owner and a consultant, Mr. Tarter brings to Andela Consulting's clients extensive knowledge on how businesses, banks and financial service companies operate.

Andela Consulting has been involved in many matters which include: retention by regulatory agencies, financial institution reorganization, banking, cash controls and management, checking accounts, electronic funds transfer, consumer credit (credit cards, car financing debt collection, embezzlements, FCRA, FDCPA, loan origination, loan mods, foreclosures and repos), credit damages, ponzi schemes, consumer and commercial real estate lending, including residential land acquisition, bankruptcy plan interest rate and plan feasibility analysis, development and construction loans, corporate lending, corporate governance, loan servicing, lender liability issues, letters of credit, loan commitments, bank and guaranty demands, loan transactions, consumer loans and shareholder and insider business, internal audit, mergers, acquisitions, banking Regulations and Compliance matters.

Andela Consulting was formed in 1993 and since that time its associates have worked with many types of clients in a variety of areas. These include: (i) Sunshine Makers, Inc. d/b/a Simple Green to serve as an independent director; (ii) Marin Outdoor, appointed as a director in connection with its financial restructuring and Chapter 11 proceedings; (iii) Oswell Self Storage to provide turnaround management and advisory services to a Chapter 11 debtor; (iv) A California Bank to provide litigation consultation regarding lending industry customs, standards and practices involving loan commitments; (v) Retained by the FDIC as receiver in multiple cases involving appraisal, construction lending, guaranty, loan origination and underwriting issues: (vi) A large Nevada Real Estate Development Company to provide turnaround management and financial advice; (vii) Advanta National Bank - expert testimony and litigation consultation regarding credit card collection practices pertaining to business related credit card usage; (viii) Consumer credit - TILA, loan and lease transactions, credit damages; (ix) Fifth Third Bank Overdraft "high to low sorting" litigation; (x) Numerous Loan Modification cases; (xi) Numerous Class Action cases involving Loan Servicing issues; (xii) Auto financing and leasing; (xiii) A Viatical Service Company to provide expert testimony and litigation consultation regarding asset-based lending industry customs, standards and practices and lender liability issues; (xiv) A Financial Institution to provide expert testimony and litigation consultation regarding real estate loan restructuring, construction and permanent lending; (xv) Credit damage analysis – consumer credit arising from credit reporting errors; (xvi) Developed a cash management and control system for multiple inter-related Chapter 11 debtors operating in several states including Hawaii; (xvii) Developed court approved business rehabilitation and

marketing plans for a troubled bank; (xviii) Appointed to the board of directors of First Alliance Mortgage Company, as an independent, outside director, after the company filed for bankruptcy protection; (xix) Numerous bankruptcy plan related interest rate computations and plan feasibility analysis; and (xx) Numerous cases involving embezzlement, forgery and endorsement issues.

# THOMAS A. TARTER
### CURRICULUM VITAE
**The Andela Consulting Group, Inc.**
**16311 Ventura Blvd., Suite 1060**
**Encino, CA 91436**
**Telephone: (818) 380-3102 or (818) 414-6685**
**E-Mail: ttarter@earthlink.net**

## EDUCATION:

University of California at Los Angeles, Bachelor of Science degree in Business, 1965.

University of Santa Clara, Master of Business Administration degree with a Specialization in Finance, 1969.

## LECTURER:

Mr. Tarter has been an instructor, panelist and guest lecturer for several professional organizations and institutions of higher education, including the following:

> American Institute of Banking
> American Management Association
> Los Angeles City College
> United States Small Business Administration
> Gonzaga University School of Law
> Practicing Law Institute
> International Council of Shopping Centers
> International Institute of Business and Banking
> Orange County Bankruptcy Forum
> Los Angeles Chapter of the American Society of Appraisers
> Southern California Chapter of the Appraisal Institute

## PROFESSIONAL EXPERIENCE:

September 1993 – Present
**The Andela Consulting Group, Inc.**, Managing Director
Provides expert witness, management, financial, and advisory services involving corporate governance, commercial and consumer credit, credit damages, credit cards, deposit accounts, management, financial and financial institution matters.

Mr. Tarter has served on boards, assisted in corporate restructures, and has provided advisory services to a diverse group of clients including corporations, law firms, banks, financial institutions and governmental agencies, including the United States Small Business Administration.

Thomas A. Tarter CV

Page 2

October 1985 – August 1993

**First Los Angeles Bank,** Executive Vice President, Member of Officers Loan Committee

During his association with First Los Angeles Bank, Mr. Tarter was responsible for supervising the bank's largest banking region and was involved in developing compensation and incentive programs, asset/liability management, development of policies and procedures (deposit, operations and credit) and strategic planning.  Additional responsibilities included marketing, public relations, mergers, acquisitions, the development of non-traditional banking businesses, such as mortgage banking division and an SBA loan department.

November 1984 – September 1985

**Center National Bank**, Director, President and Chief Executive Officer

Recruited  to administer a troubled financial institution.  Developed  programs to implement regulatory requirements and to constrict the bank's assets to adhere to capital constraints. Developed and implemented policies and procedures involving credit administration, operations, risk management and personnel including compensation, termination, staff curtailment and recruitment.

January 1980 – October 1984

**Bank of Los Angeles**, Organizer, Founding Director, President and Chief Executive Officer

Responsible for organization and completion of two stock offerings,  initial (1982) and secondary (1984), both of which were over subscribed.  Responsible  for the initial and ongoing organization of the bank, as well as supervising its operations and growth. Negotiated  the acquisition of the American City Bank - Beverly Hills from the Federal Deposit Insurance Corporation.  Developed and implemented policies and procedures including compensation, personnel, credit and audit.

1977 – 1980

**First Los Angeles Bank**, Regional Vice President and member of the bank's Officers Loan Committee

1976 – 1977

**Sanwa Bank of California**,  Vice President and Senior Credit Officer for Southern California and Member of Loan Committee.

Responsible for administering the bank's loan portfolio in Southern California, including the implementation of policies, procedures and controls to monitor the bank's corporate, real estate and consumer loan activities.

Thomas A. Tarter CV

Page 3


1969 – 1975

**Lloyds Bank California**, Vice President, Corporate and California Divisions

Responsible for the administration and development of major corporate relationships. Developed new lending programs including acceptance and SBA financing.


Additionally, Mr. Tarter was a founding organizer of Hancock Savings Bank. He shared responsibility for its formation, organization and co-organized its initial stock offering.


## TESTIMONY:

Mr. Tarter has provided expert testimony at deposition and trial in municipal, state and federal courts as well as at arbitration.

Litigation and consultation clients include: US Department of Justice, Mobil Oil Corporation, Ford Motor Credit Corporation, Advanta National Bank, Credit First Bank, Republic Bank, Sanwa Bank, Citicorp, Deutsche Bank, Harvard, JPMorgan Chase, Wells Fargo Bank, Union Bank of California, Washington Mutual, Bank of Saipan, United Mortgage, City of Oxnard, Small Business Administration, as well as individuals, municipalities, partnerships and businesses.


## BOARD MEMBERSHIPS AND BUSINESS AFFILIATIONS INCLUDED:

Western States Bankcard Association
Sunshine Makers, Inc. d/b/a Simple Green
Fort Ord Credit Union
Holiday World RV
Marin Outdoor (Bankruptcy related directorship)
First Alliance Mortgage Company (Appointed during bankruptcy proceedings)
American Standard Development Company, Inc.
BKLA Bancorp
Center Financial
Los Angeles Bankruptcy Forum
Los Angeles Business Council, member of Executive Committee Loyola Marymount University
Fine Arts/Film School Council
Los Angeles Free Net, Inc. (Internet)


## MEDIATOR:

Mr. Tarter has been appointed by the United States Bankruptcy Court – Central District of California to its panel of mediators.

**Addendum to CV of Thomas A. Tarter**

Qualifications:  My background involves experience with large and small banks.  Lloyds Bank California, Sanwa Bank of California and First Los Angeles Bank were subsidiaries of very large banks.  At Sanwa Bank and First Los Angeles Bank, I was involved in evaluating potential acquisitions that involved "healthy" and "distressed" banks. At First Los Angeles Bank, I was also involved in the purchase of loans from the F.D.I.C. and the sale of non-performing loans.

I was also involved in the formation of a savings bank and a commercial bank that were located in Los Angeles, California.  While I did not serve on the board of directors of the savings bank, I provided advice involving staffing, capital and regulatory issues to directors and senior management.  I was involved in the formation of a commercial bank – Bank of Los Angeles.  At the Bank of Los Angeles, I was involved in the acquisition of another bank that was closed by state and federal regulators, purchased loans from the FDIC and the RTC.  Issues involved in the acquisition included: deposit retention, deposit withdrawal requests, possible run on deposits, liquidity, borrower loan defaults and lender liability claims, performing and non-performing loans.  It was a complicated process that worked out positively because well-defined business and strategic plans were quickly developed and implemented.

I was also approved by regulatory agencies to serve as the chief executive officer of a financially troubled bank, Center National Bank. This assignment resulted in the identification of significant additional problems within the bank that prior to my employment had not been CUSCed by either the bank's independent auditors or by the regulators.  My duties included: Securities and Exchange Commission disclosures, valuation of the loan portfolio, amendment of financial reports, the sale of loans, shrinkage of deposits, capital infusion and implementation of new policies, procedures and controls.

Subsequent to First Alliance Mortgage Corporation ("FAMCO") filing for bankruptcy protection, I was approved and appointed with the concurrence of the board of directors, creditors and court to the board of directors of FAMCO which was a public, SEC reporting financial services company.  I served during bankruptcy proceedings as its Audit Committee, Chair. I was also appointed to serve during reorganization on the board of directors of a regional retail company.

I have served as a director of the Western States Bankcard Association and as an advisor to various financial institutions and companies involving credit card, lender liability, TILA, and UDAP issues.

I have also been appointed to the panel of mediators by the United States Bankruptcy Court for the Central District of California.

**EXHIBIT B**

**List of cases that the expert witness has testified at trial, deposition, mediation or arbitration included the following:**

1. Bodeker vs JPMorgan Chase, San Francisco, CA, Depo 02/16;

2. Boston Private Bank vs Foster, et al, San Jose, CA, Depo 12/15;

3. Jackson vs Lakewood Car, et al., Cleveland, OH, Arb 12/15;

4. Lawrence vs National Auto Group, Akron, OH, Arb 12/15;

5. Glissman vs Wells Fargo Bank, Auburn, CA, Depo 11/15;

6. People vs. Johnson, Santa Rosa, CA, Trial 8/15;

7. Kim vs BMW FS, et al., Los Angeles, CA, Trial 8/15;

8. Stansell vs Bank of America, et al., Marysville, CA, Depo 8/15;

9. Csmeezy, Inc. vs City National Bank, et al., Beverly Hills, CA, Depo 7/15;

10. Teamcare, et al. vs Wells Fargo Bank, et al., Los Angeles, CA, Depo 6/15;

11. Drakopoulos vs Credit Suisse, SPS, et al., Newberryport, MA, Trial 06/15; 01/16;

12. Valdes, et al. vs Citibank, et al., Los Angeles, CA, Depo 05/15, 6/15; Trial 8/15;

13. Guerra, et al., vs Nationstar, et al., Sacramento, CA, Depo 04/15;

14. In re Tayyar, et al., Los Angeles, CA, Depo 04/15; Trial 05/15;

15. Gustafson vs. SST, et al, Los Angeles, CA, Depo 03/15;

16. Thomasian vs Wells Fargo Bank, et al.  Portland, OR,  Depo  03/15;

17. MCWE vs Compass Bank, et al, San Diego, CA , Depo 02/15; Trial 8/15;

18. In re Duncan and Dirk, et al., Los Angeles, CA, Trial 12/14;

19. Morvant vs Eastern Savings Bank, et al, Salt Lake City, UT, Depo 11/14;

20. Raima vs Wells Fargo Bank, Los Angeles, CA, Arb, 10/14;

21. In re Laube, et al., Woodland Hills, CA, Trial 10/14;

22. Linza vs PHH Mortgage, et al, Marysville, CA, Trial 07/14;

23. Corona, et al vs Heritage Oaks Bank, et al., Santa Barbara, CA, Depo 07/14; Trial 09/14;

24. Capil vs Mega Life, et al., San Jose, CA, Depo 06/14;

25. In re AJK Gadsen vs Sovereign Bank, et al, Woodland Hills, CA, Depo 05/14; Trial 06/14;

26. Carrillo vs Chase, et al,  Riverside, CA, Depo 04/14;

27. UGS vs Pacific Shores, San Jose, CA, Depo, 04/14;

28. In re Fox, Santa Ana, CA, Trial 01/14;

29. Squatrito vs CSS, Chatsworth, CA, Trial 01/14;

30. In re Hargett, Santa Ana, CA, Trial 01/14;

31. In re Gonzalez, Santa Barbara, CA, Trial 12/13;

32. LWL Investments, LLC vs Universal Bank, et al., Los Angeles, CA, Depo 11/13;

33. Indymac Ventures, LLC vs Anyia, et al., Los Angeles, CA, Depo 10/13; Arb 10/13;

34. Peters vs Discover, et al., Los Angeles, CA, Depo 9/13;

35. In re Kerr, et al, San Diego, CA, Trial 06/13;

36. In re Bacino, FDIC, as Receiver for La Jolla Bank vs Birger Greg Bacino, San Diego, CA, Trial 06/13;

37. Laurelwood Group, LLC vs. East West Bank, et al., Los Angeles, CA, Depo 05/13;

38. Verdiyan vs Capital One, et al, San Francisco, CA, Depo 04/13;

39. In re: Ortega, Santa Barbara, CA, Trial, 3/13;

40. Bacarti vs JPMorgan Chase, et al, Los Angeles, CA, Depo 3/13;

41. Kim vs JPMorgan Chase, et al, Los Angeles, CA, Depo 3/13;

42. Chang and Wong vs. Hanmi Bank, et al., San Jose, CA, Depo 2/13, Trial 06/13;

43. Downs, et al vs. Wells Fargo Home Loan, et al., Reno, Nevada, NV, Depo 1/13;

44. Gaudie vs Countrywide, et al., Chicago, IL, Depo 12/12;

45. Evans vs Trope, et al, Los Angeles, CA, Depo 11/12;

46. Khazra vs Shayan, Los Angeles, CA, Trial 10/12;

47. FDIC as Receiver for Union Bank, N.A. vs Prudential, et al., Phoenix, AZ, Depo 8/12;

48. FDIC as Receiver for La Jolla Bank vs O'Connor, et al., San Diego, CA, Depo 7612;

49. The Preserve, LLC vs Centerpoint, et al,. Los Angeles, CA,  Depo 05/12;

50. Valencia Dodge vs Mikaelyan, Chatsworth, CA, Depo 04/12; Trial 10/12;

51. In re: Krishan, LLC, San Jose, CA, Trial 04/12;

52. Shoreline vs. Union Bank of California, Los Angeles, CA, Depo 04/12;

53. Utah First Federal Credit Union vs. Federal Insurance, et al., Salt Lake City, UT, Depo 02/12;

54. Lopez, et al., vs. Wells Fargo Bank, et al., Los Angeles, CA, Depo 02/12;

55. Anderson vs. Chase, et al., San Diego, CA, Depo 01/12;

56. United States vs. Sutherland, et al., Las Vegas, NV, Trial 01/12;

57. Dillon vs. Chase, et al, Charleston, WV, Depo, 12/11; Trial 02/12;

58. Triano vs. Summit Bank, et al, Oakland, CA, Depo 11/11;

59. Wells Fargo Bank vs White, Los Angeles, CA, Depo 11/11; Trial 05/12

60. Oxford Street Properties, LLC vs. Lance Robbins, et al, Depo 10/11;

61. In re: Tarkanian, et al,. San Diego, CA, 09/11;

62. Mueller vs Wells Fargo Bank, San Francisco, CA, Trial 09/11;

63. Amezcua, et al vs. East West Bank, San Jose, CA, Depo 08/11; 09/11;

64. In re: The Preserve, LLC, Los Angeles, CA, Depo 08/11; Trial 08/11 and 10/11;

65. Kim, et al vs. CCU, et al, Las Vegas, NV, Depo 07/11;

66. Jacob vs. SDG&E, San Diego, CA, Mediation, 06/11;

67. TomatoBank vs East West Bank, Los Angeles, CA, Depo 07/11;

68. Held vs. Gilmore Bank, Santa Ana, CA, Depo ,06/11; Trial 07/11;

69. Trapasso and Justice vs Romero, et al, Stockton, CA, 05/11;

70. In re: Pacific Allied, Los Angeles, CA, Trial 03/11

71. Price vs Eller, et al. Riverside, CA, Trial 03/11

72. John Doe vs Church of Latter Day Saints, et al; Los Angeles, CA, Depo 02/11

73. Empire Merchandizing vs. Bank Rhode Island, Providence, Rhode Island, Depo 02/11; Trial 02/11.

74. United States of America vs. 718 West Wilson, et al, San Diego, CA, Depo 01/11

75. Dufour vs. Informative Research, et al, Garden Grove, CA, Depo 01/11

76. Amex vs Alexander Max, et al, Rockville, MD, Depo 10/10

77. Umpqua Bank vs Larmont, et al, Sacramento, CA, Depo 10/10

78. In Re:  Mammoth Arrowhead 1, LLC, Phoenix, AZ, Trial 09/10

79. D. Alexander vs Anderson, et al, Los Angeles, CA, Depo 08/10

80. In re: Quarry Pond, LLC, et al, San Francisco, CA, Trial 06/10

81. Abdi vs Mulhearn, et al, Los Angeles, CA, Arb 06/10;

82. Lovett vs Citibank, et al, Los Angeles, CA, Depo 05/10; Trial 10/10; 5/12

83. Charon Solutions, Inc. vs Jensen, et al, Los Angeles, CA, Depo 05/10

84. Faye Estates, LLC vs Eastern Savings Bank, Los Angeles, CA, Depo 04/10; Trial 04/13

85. Zey vs Dyck-O'Neal, et al, St. Louis, MO, Depo 04/10

86. In re: Mendoza, et al, Santa Rosa, CA., Trial 04/10

87. In re: Bacchus, et al, Santa Ana, CA, Depo 02/10; Trial 02/10

88. Matthews vs Chase, et al, Jacksonville, FL, Depo 02/10

89. DeWitt vs Monterey Insurance company, et al., San Diego, CA, Depo 02/10; Trial 04/10

90. Jung vs Hamni Bank, et al., Los Angeles, CA, Depo 01/10

91. Garcia vs Triton Acceptance, Los Angeles, CA, Depo 12/09; Trial 12/09

92. CNA, et al vs Lloyds, et al, Chicago, CA, Depo 11/09

93. Hickerson vs Financial Freedom, et al, Ventura, CA Depo 11/09; Trial 09/11;

94. Perry vs Mega Life, et al., Phoenix, AZ, Depo 11/09

95. In re: McBride's RV Storage, LLC., Riverside, CA, Depo 10/09; Trial 10/09

96. Cartwright vs CMI, WSFS, Experian, et al. Los Angeles, CA, Depo 09/09; 10/09; 12/09

97. Miller, et al vs. Norton Financial, Greer, Safe Harbor Financial, et al. San Diego, CA, Depo 09/09; Trial 05/10

98. Petty vs Petty, Jackson, CA, Trial 08/09

99. Marcus vs Vorspan, et al, Los Angeles, CA, Depo 07/09; Arb 08/09

100. Hwang vs Fang Fashion, et al, Los Angeles, CA, Depo 06/09

101. Elie vs Smith, San Mateo, CA, Depo 06/09

102. In re Waterstone, LLC, et al, Reno, NV, Trial 06/09

103. Heil Construction, Inc., vs Security Pacific Bank, et al., Bakersfield, CA, Depo 05/09

104. UJV, et al vs Lewis, Jennings, Ross, et al. Grand Rapids, MI, Depo 02/08; Trial 04/09

105. Blackburn vs. Duckor, et al, San Diego, CA, Dep 03/09; Arb 03/09

106. Holly Young vs Bigelow, Los Angeles, CA Depo 03/09; Trial 06/09

107. Levenson vs WaMu, et al., Los Angeles, CA, Depo 01/09; Arb 05/09

108. Drury - Countrywide, et al., Tampa, FL, Depo 10/08

109. Karen Cappuccio vs Countrywide, et al, Philadelphia, PA, Trial 09/08

110. Mark Anderson vs WaMu, et al, San Diego, CA, Depo 09/08

111. Ellis vs PHEAA, KeyBank, et al, Los Angeles, CA, Depo 07/08

112. Quinn vs Cherry Lane Auto, et al, Spokane, WA, Trial 06/08

113. In re I-5 Social Services Corporation, Debtor, Fresno, CA, Depo 05/08

114. Walsh et al vs Bank of Petaluma, et al, Santa Clara, CA, Depo 04/08; Trial 09/08

115. Gorman vs HSBC, Experian, et al, New York, NY, Depo 04/08

116. Shokatz vs Better Business Financial Services, Kelly Lucas & Pacifico LLP, et al, Milwaukee, WI, Depo 03/08

117. Austin vs HSBC, et al, San Diego, CA, Depo 03/08

118. Melton vs Friend, et al, Santa Ana, CA, Depo 01/08

119.   OES vs West Coast Bank, et al, Portland OR, Trial 01/08

120.   Michigan First Credit Union vs CUMIS, et al, Detroit MI, Depo 12/07; Trial 01/09

121.   Ligon vs Chase, et al, Dallas, TX, Depo 11/07

122.   Williams vs. AutoNation, Los Angels, CA, Depo 11/07; Trial 12/07

123.   Weldon vs. Launch Marketing Concepts, Inc., Los Angeles, CA, Depo 11/07; Arbitration 12/07

124.   Arnold vs LNR, Los Angeles, CA, Depo 10/07

125.   Squirty's Collision, et al vs Finishmaster, et al, Depo 09/07; Trial 09/07

126.   Casey vs US Bank, et al, Santa Ana, CA, Depo 09/07; Trial 10/07

127.   Nardelli vs MetLife, et al, Phoenix, AZ, Depo 09/07; 08/08; Trial 03/09

128.   Cha, et al vs WFB, et al, Los Angeles, CA, Depo 08/07; Trial 09/07

129.   Ho, et al vs Wells Fargo Bank, et al, Los Angeles, CA, Depo 08/07; Trial 08/08

130.   Ott vs Markley Group, et al, Los Angeles, CA, Depo 06/07

131.   Hayden vs. Hayden, Los Angeles, CA Arbitration 05/07

132.   Nelson vs. Arrow Financial Services, et al, Los Angeles, CA, Depo 04/07; Trial 05/07

133.   Foppiano vs. Union Bank of Stockton, et al, Sacramento, CA, Depo 04/07

134.   Board of Health Dept vs Virginia Jefferies, et al, Mansfield, OH, Depo 04/07

135.   DeLuna vs Bank America, Los Angeles, CA, Depo 12/06; Trial 06/07

136.   Pertiera vs Bank America, Los Angeles, CA, Depo 12/06

137.   United States vs. Flores, Los Angeles, CA, Trial 12/06

138.   Lehman vs Net Bank, et al, Indianapolis, In, Depo 12/06

139.   Kay vs. Washington Mutual, et al., Sacramento, CA, Depo 09/06

140.   Loudd vs. Weston, Conseco, GreenTree, et al., Los Angeles, CA, Trial 09/06

141.   Associated Bank, et al vs Brady Martz, Minneapolis, MN, Dep 0906

142.   Satey vs Chase Manhattan Bank, et al, Los Angeles, CA, Dep 08/06

143.   1124 Marylin Drive Development, LLC vs Elyaszadeh, Los Angeles, CA, Dep 04/06; Trial 07/06

144.   Paradigm Industries, Inc. vs Yang, Wells Fargo Bank, et al., Los Angeles, CA, Dep 03/06; trial 04/06

145.   Bank of America vs Mark Guzy, et al, San Francisco, CA, Dep 03/06

146.   First State Bank of Taos, et al. vs Close, Albuquerque, NM, Dep 02/06

147.   Neumann, et al. vs. Friedland, et al, San Jose, CA, Dep 02/06

148.   Babijian, et al vs Union Bank of California, Los Angeles, CA, Dep 01/06

149.   Bistro Executive, Inc., et al, vs Rewards Network, Inc., et al, Dep 01/06

150.   Lu, et al, Los Angeles, CA, Arbitration, 11/05

151.   Fisher vs Wells Fargo Home Mortgage, et al, Los Angeles, CA Dep 11/05, Trial 04/07

152.   Turner vs Washington Mutual, et al, Los Angeles, CA Dep 11/05

153.   Accurate Air Engineering vs Bank of America, Los Angeles, CA, Dep 11/05

154.   Las vs Washington Mutual, Las Vegas, NV, Dep 09/05, Arbitration 01/06

155.   Dante Valve Company, Inc, et al vs Bank of America, Los Angeles, CA, Dep 08/05

156.   Amada America, et al vs Bank of America, Los Angeles, CA, Arbitration, 05/05

157.   Green vs Vars, et al, Los Angeles, CA, Dep 04/05

158.   White vs White, et al, Riverside, CA, Dep 03/05

159.   Sherman, Abrunzo vs Stricklands, Aaron & Jacqueline and Estate of Albert Thompson, et al, Chatsworth, CA, Trial 02/05, No. PC 033244-V

160.   Harman vs California Federal Bank, et al, Van Nuys, CA, Dep 1/05, Trial 2/05, No. LC059430

161.   Reizian vs Mehrdad Arya, Global Capital Group, Inc,, The Escrow Group, et al, San Diego, CA, Trial 02/05, No. GIC 819536

162.   Barry vs California Bank and Trust, et al, Orange County, CA, Dep 01/05, No. 04CC04393

163.   Norma Berneman, et al vs. Ira Shear, Bank of America, et al, Los Angeles, CA, Dep 9/04 BC 278 601

164.    Invelj, Inc. vs AMK Management, Inc., et al, Van Nuys, CA, Trial 07/04 02E08010

165.    Federal Insurance Corporation and Plum Creek Marketing, et al vs Bank America, Cal Fed, et al, Ventura, CA, Dep 06/04 CIV 215700

166.    Barbara San Martin vs. Antioch Credit Union, Martinez, CA, Dep 05/04

167.    Humbolt Bank, et al  vs Gulf Insurance Company, San Francisco, CA, Dep, 05/04 C03-1799 SC ARB

168.    Vasquez, et al vs Beneficial Finance, Portland, OR, Trial 01/04

169.    United Grand vs Farmers & Merchants Bank, et al, Long Beach, CA, Dep 01/04, No. BC296270

170.    Commercial Programming Systems, Inc. vs Briggs & Baker, et al, Los Angeles, CA, Dep 12/03; Trial 02/04

171.    Ferrera vs Henry C. Hansel, Inc., et al, Santa Rosa, CA, Dep 12/03, No. 231480

172.    Beach, et al vs Bank of America, et al, San Francisco, CA, Dep 11/03

173.    Aquino vs Providian, Fresno, CA, Madera County No. CV18758, Dep 10/03

174.    Martinez vs Onyx Acceptance Corporation, et al, Fresno, CA, Trial 8/03

175.    FFS, et al vs Bank of Saipan, Abilene, TX, Dep 7/03; Trial 04/05

176.    SoCal Housing Partners, LLC vs Gregory S. Hancock, Darrell Hoover, et al, Los Angeles, CA, Depo 6/03

177.    Anthony Kalajian vs. Patricia Dubon, Aames, et al, Los Angeles, CA, Dep 5/03

178.    Wells Fargo Bank vs Peter Knibb, et al, Los Angeles, CA, Dep 5/03

179.    Spectrum Glass and Aluminum, Inc., et al vs People's Bank of California, et al, Los Angeles, CA, No. EC – 033501, Dep 3/03

180.    Nilchin vs Cohen, et al, Los Angeles, CA, Trial 3/03

181.    Luther vs Bank of America, Moreno Valley Honda, et al, Riverside, CA, Dep 01/03

182.    Corbett vs Bank of America, Hayward Dodge, et al, Oakland, CA, Dep 11/02, 12/02

183.    Costa vs Fresno Surgery Center, et al, Fresno, CA, Dep 10/02; Trial 11/02

184.    Bank of America, et al vs Prime One Capital, Bridgeport, CN,  Federal Court, Trial 10/02

185.   California Federal Bank vs Russell Crawford, et al, Los Angeles, CA, No. BC – 144590, Trial 9/02

186.   INET Interactive Network System, Inc., Debtor-in-Possession, Plaintiff, vs Global Crossing Bandwidth, Inc., fka Frontier Communications of the West, Inc., Defendant, No. LA 01-13671-KM, Dep 9/02

187.   Alaska Petroleum Environmental Engineering vs Antiquarian Traders, et al, Los Angeles, CA, No. LASC BC 260006, Trial 8/02

188.   Global Interactive Marketing, et al. vs Joseph Clark, United Nevada Trade International, et al., Los Angeles, CA, No. SC 059148, Dep 7/02, Trial 3/03

189.   Grumbo vs Bretz, Los Angeles, CA, No. SC 059095, Dep 7/02

190.   Sam Carroll and GOCO Acquisition Corp. vs German American Capital, et al., Birmingham, AL, No. 01-T-981-5, Federal Court, Dep 6/02

191.   Duran vs. Citicorp, Santa Clara, CA, No. CV-790369, Dep 6/02

192.   Fyke and Falcone vs. Screen Shop, Santa Clara, CA, Trial 5/02

193.   Bill's Quik Stop vs West America Bank, et al., Fresno, CA, Dep 5/02

194.   Krantz vs Philpott, et al., Los Angeles, CA, Dep 1/02

195.   Bank of America vs San Ramon Carriage Co., Inc., et al, Contra Costa County, CA, No. C00-04854, Dep 10/01; Trial 11/01

196.   David Kim vs California Korea Bank, No. BC108719, Los Angeles, CA, Trial 8/01

197.   Spring Mountain Homes, et al vs Upland Bank, American Arbitration Association No. 72-110 00981, Upland Bank - MJE, Los Angeles, CA, Arbitration 8/01

198.   Viva Tiger, Inc. vs Cathay Bank, Pasadena, CA, Dep 6/01, Trial 7/01

199.   Marine Village Townhomes Association vs Hawthorne Savings and Loan, No. YC 032 949, Los Angeles, CA, Dep 5/01

200.   Abatti vs Floyd, et al, Imperial, CA; SC case No. 89994Dep 3/01, Trial 5/01

201.   Lee vs Bank of America, Los Angeles, CA; Dep 1/01, Trial 2/01

202.   EIE Guam Corporation vs The Long Term Credit Bank of Japan, Ltd., et al., United States District Court of Guam, Territory of Guam, No. 00-00009; Dep 11/00; 12/00;

203.   In re:  Cimms, et al, Los Angeles, CA

204.   Kroupa vs Sunrise Ford, AT&T, et al, Los Angeles, CA; ECO 14965, Trial 11/00

205.   Reyes vs Car Gallerie, et al, United States District Court, Los Angeles, CA;  CV -00-5673-MWB; Trial 10/00

206.   Bank of America vs Larry Whithorn; Riverside, CA, RIC 310840; Dep 9/00

207.   Kane vs Capital One, et al; GIC733574; San Diego, CA; GIC 733574; Dep 8/00

208.   Larry Nix, et al vs Westcorp, et al.; Los Angeles, CA; BC 204188; Dep 8/00

209.   Coast Business Credit vs Roger Hay, Ken Campbell, et al.; Orange County Superior Court; No. 787394; Dep 5/00

210.   Hanna vs American Dream Equity Home Loan Corporation; Los Angeles, CA; EC026426;   Dep 2/00

211.   Life Benefactors, LP vs Transamerica, et al; San Diego, CA; 723176; Dep 1/00; Trial 3/00

212.   Peter Ligeti vs Advanta National Bank;  Santa Clara, CA; CV 770626; Dep 11/99

213.   Ambriz, et al vs Greentree Financial; Elko, NV; #29128; Dep 10/99; Trial (A) 11/99

214.   In re: Nellis Arms Apartments;  Las Vegas, NV; 99-12278 LBR;  Dep 9/99;  Trial 9/99

215.   B&B Sons Enterprises, Joseph and Nancy Benvenuti vs La Salle National Bank, et al; Sacramento, CA; # 74-Y148-0181-98; Dep 6/99; Trial (A) 6/99

216.   Davina Willis vs J. G. Wentworth SSC; San Francisco, CA;  Dep 8/99

217.   Davis vs A&L, et al; Riverside, CA; 273753; Dep 6/99

218.   In re: Crystal Properties, Ltd; San Fernando Valley, CA; SV 97-18796-KL; Dep 5/99; Trial 7/99

219.   In re: Maroa Park Apartments; Modesto, CA; 98-95624-A-4; Dep 6/99; Trial 8/99 `

220.   Ohai vs WHC-Three Investors, The Archon Group, et al; Los Angeles, CA; AAA Case No 72-1480039098; Trial (Arbitration) 3/99

221.   Florence, et al; Las Vegas, NV; Dep 1/99

222.   Ambassador Hotel Co. LTD vs Wan Yuan Lin, et al; Los Angeles, CA; No 176479; Dep 2/99

223.   Wendell vs Wells Fargo Bank; San Francisco, CA; 983597; Dep 4/99

224.   Bragg vs Hawthorne Savings Bank; Los Angeles, CA; Trial 11/98

225.    Rosario Sobremonte; Amparo Esperidion, et al vs Bank of America;  Los Angeles, CA; BC 127133;  Dep 9/98

226.    Finnocario, et al vs Wells Fargo Bank, et al, Los Angeles, CA, Depo est 09/98

227.    Yang, et al vs Bank of America;  Los Angeles, CA;  Los Angeles;  VC 020377;  Dep 3/98 est

**228.**   EMC Mortgage Co., et al vs Christensen, et al;  Fresno, CA;  Trial 2/97 est

229.    Fuchs and Marshall, et al vs Hwai-Tang Chen, et al ;  Santa Monica, CA;  SC047845; Trial 11/98 est

230.    Union Oil Company of California vs Mobil Oil;  Los Angeles, CA;  Dep 10/98est;  Trial 11/98 est

231.    Tillman Fabric, Inc vs New Progress Enterprise Co., et al;  Los Angeles, CA;  BC 161449;  Trial   7/98

232.    Budak vs Grossman;  Los Angeles, CA;  Dep --/97 est;  Trial (Arbitration)  --/98

233.    Imperial Bank vs Robert Selan, et al;  Los Angeles, CA;  LC038665;  Dep --/98 est

234.    Sukow vs Republic Western Insurance Company, et al;  Los Angeles, CA;  BC 142792; Dep --  /98 est

235.    In re. Silveira, et al;  Modesto, CA;  96-92575; Trial  11/96

236.    In re. Playa Pacifica, et al;  Santa Ana, CA;  SA96-11937-JW;  Dep 10/96

237.    Federal Deposit Insurance Corporation vs BMB Properties, et al: Los Angeles, CA;  C 669033 consolidated into C 669294;  Dep 8/97;  Trial 9/97

238.    Quiter/Nikkel vs Watsonville Cogeneration Partnership, State Street Bank and Trust Company of California and Ford Motor Credit Company, et al;  San Francisco, CA; 969360;  Dep 5/97;  Trial  6/97

239.    Takaki vs Hawthorne Savings Bank;  Los Angeles, CA;  YC 021815 Dep  4/97 est. and 2/99;  Trial  6/97 and 3/99

**240.**   The Official Oversight Committee vs Levene & Eisenberg, Alliance Bank, et al; Santa Barbara, CA;  213552;  Dep  10/97

241.    Bilma Sadah vs Wells Fargo Bank, Chemical Bank, et al  Los Angeles;  YC 025096; Dep 10/98 est;  Trial 3/99

242.    Kertesz vs Home Savings of America;  Santa Monica, CA;  SC 037986;  Dep  9/97

243.    O.T. vs Valle Verde Foods; Los Angeles, CA;  Trial (Arbitration) 11/97 est

244. Monarch Bank, et al; Santa Ana, CA; Dep 6/97

245. Patel vs Pacific Inland Bank; Los Angles, CA; LC 018345; Dep 97 est

246. Hughes vs Home Savings Association, et al; Santa Barbara, CA; 211477; Dep 1/97; Trial 3/ 97

247. Beck Oil, Inc vs Bank of America; Los Angeles, CA; Dep 2/97; Trial 3/97

248. In re: Hansohl, Inc., et al; Los Angeles, CA; Dep 1/97

249. Tokai Bank of California vs KSS Real Estate Group, et al; Los Angeles, CA; BC131203; Trial 6/96

250. Powertrain, et al vs Haifa; Santa Ana; CA; Trial 7/96est

251. In re: Maulhardt Industrial Center; Santa Barbara, CA; ND 95-15475-RR; Trial 5/96

252. Guny vs Lieb, et al; Ventura, CA; 114052; Trial --/96

253. Tillack & Co., Ltd vs Diane Tubergen, Wells Fargo Bank, The Sanwa Bank of California, et al BC 058825; Los Angeles, CA; Dep --/94; Trial (Arbitration) 4/96 est

254. Timmothy Watson vs The Downey Venture, et al; Los Angeles, CA; BC 098430; Dep - -/96 est

255. Farnon vs World Savings, Santa Monica Bank, Argus, et al; Los Angeles, CA; LC 022237; Dep 5/95: Trial 7/95

256. First American Title Company vs Bank of America, et al; Los Angeles, CA; BC 098416 Dep est. 1995

257. Hanmi Bank vs Kim, You, et al; Los Angeles, CA; Dep --/95

258. Mosely vs Farmers and Merchants Bank; Los Angeles, CA; NC 012950; Dep --/95 est

259. Pelletier vs Behrens, et al; Los Angeles, CA; CV 890969-RMT Dep est 1995; Trial 11/99

260. In re. Gatway Properties, et al and The Alicante Management Co, et al; Santa Ana, CA; SA95-10963JR and 95-12694JR; Trial est 95

The aforementioned list may be subsequently supplemented in the event that a matter(s) was inadvertently omitted. Dates have been estimated to the best of my recollection.