IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO and COURTNEY BELLOMO, individually and on behalf of all others similarly situated<br><br>               Plaintiffs<br><br>    vs.<br><br>COMMUNITY BANK, N.A.<br>               Defendant | CLASS  ACTION<br><br><br><br><br><br><br><br><br><br>NO.  13-CV-02939 (Judge Mannion) |

## PLAINTIFFS' RESPONSE TO OBJECTION OF NICOLE URBAN AND OTHER OBJECTORS (DOCKET 100) AND OBJECTION OF DONALD LENHERR (DOCKET 120)

## I.   INTRODUCTION AND BACKGROUND

On September 12, 2015, Nicole Urban, Eleanor Sickler, Jacob Laird, and Donald Lenherr filed a consolidated Objection to the class settlement (Doc. 100). On January 12, 2016, following supplemental Notice to co-borrowers who did not previously receive Notice, Mr. Lenherr filed an Objection to settlement and notice of intent to appear incorporating the earlier Objection. (Doc. 120).  Objector Urban, on April 1, 2015, filed in *Urban v. Community Bank*, No. 3:14-cv-01039 (MEM) at Doc. 62, a "Renewed Notice of Non-Joinder" to the amended class settlement reached here in *Brennan*.  (Urban's Notice of Nonjoinder, Exhibit "A" hereto).  With the exception of a complaint about lack of notice to co-borrowers, which has been cured (*See* Docs 109, 119), the Objectors do not in their papers contest class

certification under Rule 23. The Objectors do challenge whether the settlement is fair and reasonable. This memorandum addresses the Objections. It is intended to supplement and be supplemented by the Plaintiffs' Motion for Final Approval being filed contemporaneously at Doc. 125.

There is an overriding public interest in settling class action litigation, particularly in complex settings that will consume substantial judicial resources and have the potential to linger for years. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir.2004) (collecting cases); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (presumption in favor of settlements "especially strong in class actions and other complex cases.") (citations omitted). Although settlement was achieved in principle at a mediation that took place on September 30, 2014, it has taken almost a year and a half to get this case to the final approval hearing. While some of the delay is attributable to the parties, most of the delay is attributable to Urban meddling in the settlement process, then flip-flopping on support for the settlement, the filing of numerous papers that do not comply with the Local Rules, and the lodging of serial, meritless objections.

Notably, there are no objections to the proposed settlement other than those lodged by the Urban Objector group, all represented by the same law firm(s). The Urban Objectors posit four distinct objections to the proposed settlement as well as arguing that they are entitled to attorneys' fees for "improving" the settlement:

2

     A.    There Truly is a Conflict Between Sub-Classes;

     B.    The Bank's Issuance of Forms 1099-C to Class Members Under the Settlement Injures the Class while Providing no Benefit to the Bank;

     C.    The Settlement Does Not Reflect the Existence of Additional, Valuable Claims Against the Bank;

     D.    Certain Class Members did not Even Receive Notice of the Settlement; and

     E.    Objectors and Their Counsel have Conferred Considerable Benefit on the Class. [sic]

As set forth *infra*, all of the Objections are without merit and should be overruled. Nor is there any basis to award any fees to the Urban Objectors' counsel. The Plaintiffs address the Objections in the same order as presented by the Urban Objectors.

## II.   <u>LEGAL ARGUMENT</u>

### A. <u>There Is No Conflict Between The Sub-Classes</u>

The Urban Objectors posit two arguments in support of their argument that there is a conflict between the sub-classes. First, they argue that in respect to the New York "recent claims," *i.e.* those within the three year statute of limitations under CPLR 214, subd. 2, the "Pennsylvania claims and the New York recent claims have identical uncertainty and should receive identical amounts under any settlement."[1] Not true, *see infra*. Second, they argue that the filing of the *Urban* complaint on May 29, 2014, Case No. 3:14-cv-01039-MEM, with one Pennsylvania resident as the sole plaintiff, tolled the statute of limitations for seven weeks for a supposed New York subclass for whom they had no class representative. Doc. No. 100 at 7-8. The argument is specious on its face. *See*

---

[1]    Doc. 100 at 3.

*infra*, Part B.

a.    The first Objection is that the New York Class Members with claims less than three years old ("NY newer" or "NY recent') are being paid $609.00 which is less than Pennsylvania Class Members, who are proposed to be paid $753.00.

The New York recent claims are worth less cash relief than the Pennsylvania claims for at least three reasons.  First, New York residents, standing alone, could not maintain a class action to recover statutory damages under the UCC.  Second, there is no well-established body of New York law that makes the claims as valuable as those under a well-established body of Pennsylvania law, *e.g.*, *Cubler v. TruMark Financial Credit Union*, 2013 PA Super 322, 83 A.3d 235 (2013).  Third, the risk of taking the NewYork class claims through trial is higher than those faced by the Pennsylvania class members.

New York's CPLR 901(b) provides: "Unless a statute creating or imposing . . . a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a ... minimum measure of recovery created or imposed by statute may not be maintained as a class action."  New York's Uniform Commercial Code § 9-625 contains no provision allowing a class action to recover statutory damages.  New York residents cannot maintain a New York state court class action to recover statutory damages under the UCC § 9-625. CPLR 901(b)'s restriction on minimum recoveries does not apply to class actions brought in federal court pursuant to diversity jurisdiction.  *Shady Grove*

4

*Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). But the only way for New York residents to bring class claims under New York's UCC Article 9 is in the federal courts via diversity jurisdiction. In this case, there would be no diversity jurisdiction because Community Bank is a citizen of New York. The only way for the New York class members to get any relief on a class-wide basis is through the mere fortuity of a class action in another state that they could join. Community Bank did not believe that the addition of the New York Class was proper here, and for that reason opposed Plaintiffs' Motion for Leave to Amend to add the New Yorkers. (Doc. 52). The parties later stipulated to the filing of the Amended Class Complaint, but the Bank retained all rights and objections including "jurisdiction over the New York claims." (Stipulation, Doc. 55, ¶ 3).

The presence of these factors (New York's ban on class actions to recover minimum damages, the question over jurisdiction, and the lack of a well-established body of New York law for the UCC claims) makes the risk of success on the merits for all New York Class Members greater than the Pennsylvania class members. The modest reductions in the cash portion of the settlement for New York class members vis-a-vis the cash portion for the Pennsylvania Class Members is entirely proper in these circumstances.

*See In re Pet Food Products Liability Litig.*, 629 F.3d 333 (3d Cir. 2010):

> [V]aried relief among class members with differing claims in class settlements is not unusual. ... [D]ifferences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class. *See* [In re Ins. Brokerage Antitrust Litigation, 579 F.3d 241, 272 (3d Cir. 2009) [where] we rejected objectors'

> argument that the fact that the fund was allocated so that a greater percentage of the settlement value was designated for certain class members demonstrated a conflict between groups. We found that the difference in allocations was "simply a reflection of the extent of the injury that certain class members incurred and d[id] not clearly suggest that the class members had antagonistic interests." *Id.* ...The fact that the settlement fund allocates a larger percentage of the settlement to class members with Injury Claims does not demonstrate a conflict between groups. Instead, the different allocations reflect the relative value of the different claims. ...  As with differences in settlement value, alleged differences in the strength of the various claims asserted in this class action do not, by themselves, demonstrate conflicting or antagonistic interests[.]

*Id.* at 346-347 (footnotes and internal citations omitted).

In their brief, the Objectors appear to recognize the uncertainty over the New York statute of limitation issue, stating "the two New York representative plaintiffs [ ] claims are potentially time barred," (br. at 4 of 34) and the New York 'older' claims "do exhibit a level of uncertainty [over the period of limitations"] (Doc. 100, br. at 3 of 34).   Previously in the litigation, in colloquy with the Court, Urban took a somewhat different position. [By Mr. Shenkan]: "… I can tell you there is no question that it's three years, there is no question, and if the judge at the right time makes a decision that says it's only three years, Mr. Flitter, is representing Plaintiffs, both of whom will be time-barred where he will lose the whole part of the Class." (Transcript of proceedings, Sept. 3, 2014, p. 29, Exhibit "B" hereto).

The two New York Plaintiffs, Bellomo and Colino, both have claims that were more than three but less than six years old, arising in February 2010 and April 2010 respectively (Doc. 88-5 and 88-6).  It is therefore possible (Class Counsel asserts

otherwise, but it is certainly possible) that the Court agrees with the Bank that the statute of limitation is three years.[2]  In such a case, no New York Plaintiff would remain and that could doom recovery for the entire New York class of consumers, old and new.  The Pennsylvania group simply does not have this problem.  It is therefore not accurate for the Objectors to claim that the Pennsylvania and New York newer "clams have identical uncertainty and should receive identical amounts under any settlement." (Obj. at 3 of 34, Doc. 100).  Rather, it is appropriate to discount the payment to the New York newer Class somewhat (here, about 19%) to account for this risk of no recovery.  *See In re Pet Food*, 629 F.3d at 346-47; *Williams v. Rohm & Haas Pension Plan*, 2010 WL 1490350 *4 (S.D. Ind. Apr. 12, 2010) *aff'd* 658 F.3d 629 (7th Cir. 2011) (recognizing statute of limitations as affecting recovery for part of class); *In re Paine Webber Ltd Partnership Litig*., 171 F.R.D. 104, 133 (S.D. N.Y. 1997) *aff'd* 117 F.3d 721 (2d Cir. 1997) (approving of distribution of class fund in a manner that weighs or discounts special defenses). The issue is not whether the settlement is perfect, but whether the settlement is fair and reasonable – and that it is.

There is a further justification as to why the cash component of the New York group is somewhat less than the Pennsylvania group and that is the relative lack of

---

[2]      In their brief in support of final approval, Plaintiffs address the competing authorities on the New York statute of limitation issue.  (*See* br., Doc. 126 at p. 18). In the interest of brevity, Plaintiffs incorporate that discussion here.

precedent for this claim in a class setting in the New York courts.  This is part of the "risk of establishing liability" prong under *Girsh*.   *See In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) *citing Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975).  This fourth *Girsh* factor examines risk *i.e.*, "what the potential rewards or downside of litigation might have been had Class Counsel decided to litigate the claims rather than settle them."  *Wallace v. Powell*, 288 F.R.D. 347, 369 (M.D. Pa. 2012) (citations omitted).   In Pennsylvania, Plaintiffs' theory of liability under Uniform Commercial Code 9613 and 9614 and the entitlement to statutory damages for improper notice under 13 Pa. C.S. § 9625(c) has been addressed and effectively ratified by the Superior Court's decision in *Cubler*, 83 A.3d 235.  Classes have been certified on contest and for settlement in a number of Pennsylvania courts.  *See e.g., McCall v. Drive Fin. Serv.*, 2009 WL 8712847 (Phila. C.C.P. Apr. 10, 2009) (certifying UCC repo notice class on contest, classwide settlement later approved); *Cosgrove v. Citizens Auto Fin., Inc.*, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) (granting final approval and certifying UCC repo notice class case).  A comparable, definitive appellate court holding has not been rendered as of this time in New York.[3] It is therefore proper for experienced Class Counsel to assign some additional degree of risk to the New York claims.

---

[3]     Class Counsel's diligent research was unable to uncover any UCC repossession-class actions in the New York Westlaw databases.  Novelty of a claim in a jurisdiction bespeaks of added risk.

Objectors concede that there is nothing improper about allocating a lesser recovery for the New York older claims. (Obj. at 3 of 34, Doc. 100). The same rationale for a modest (19%) reduction to the sum payable to New York recent claims is entirely appropriate to account for the risk. If there were truly a conflict and the named Plaintiffs Bellomo and Colino wanted improperly to favor themselves for their New York older claims group, one would expect the "older" claims to receive an equal, non-discounted payment. To the contrary, Bellomo and Colino – in consultation with Class Counsel – agreed to reduce their recovery (and that of the New York older group) to $287 (plus $25 for a deficiency letter) while allowing roughly double to the New York newer group. (*See* Sett. Agreement, ¶ 2.06, p. 19 of 84, Exhibit "C" hereto). The Objection has no basis, and Objectors have introduced absolutely nothing in the record to suggest that the named Plaintiffs "acted in any conflict with the settlement classes or failed to vigorously pursue the claims of all class members …" *Wallace*, 301 F.R.D. at 157.

Indeed, if there were no discount at all to account for this added New York risk in both the 'older' and 'newer' claims then the Pennsylvania consumers could potentially complain that *their* payment is being improperly diluted by the (equal) payment to the New York group(s). The allocation scheme proposed is eminently fair and reasonable to all constituencies, and entirely faithful to *In re Pet Food*.

The mere dissatisfaction of about 0.1% of the class to receiving $609 instead of $752 in cash – but with the thousands of dollars in other value for the debt forgiveness and credit repair – is not grounds to disapprove this settlement nor the presumption of fairness. *Warfarin*, 391 F.3d at 535.   After all, if – as Objectors' counsel asserted to the Court on September 3, 2014 – "there  is no question" that the statute of limitation is three years, then <u>all</u> New York consumers here could receive nothing.

The settlement achieved and allocation proposed represent an excellent and entirely equitable result.  But for the ongoing delay occasioned by the Objectors' change of position and groundless, multiple Objections, over 3000 consumers would already be receiving their settlement checks and had the benefit of the debt forgiveness and credit correction.

At page 5 of their Brief, the Objectors cite to *In re Community Bank of Northern Va.,* 622 F.3d 275, 303 (3d Cir. 2010).[4]  While *Community Bank* does deal broadly with a class action where a statute of limitations is an issue, the case is inapposite here.  The lead plaintiffs in that case had claims that were admittedly untimely and "must rely on equitable tolling to save them."  The doctrine of equitable tolling is one "that Courts approach warily," and is inherently fact-oriented. *Id.* at

---

[4]     Community Bank of Northern Va. is a different entity from the instant Defendant Community Bank, N.A., based in New York.

304 (citations omitted).  The claims of the New York consumers instantly are not admittedly time-barred.  Rather it has not yet been definitively determined by the New York appellate courts whether an Article 9 claim for consumer damages will carry a three year or a six year period of limitation and Plaintiffs believe six years is correct.

It appears that the real reason the Objectors are asserting a "conflict" between Bellomo/Colino and the New York newer Class Members is so that Objector Eleanor Sickler can somehow substitute herself in as a class representative (and presumably with a role for her attorney as well).  *See* Obj. br. Doc. 100, at p. 7 of 34 which states: "[Sickler] is willing to function in that capacity, [class rep] either through the mechanism of filing an amended complaint naming her as a representative plaintiff, through intervention in the present action under Fed. R. Civ. P. 24, or by filing a separate class action which could then be consolidated with the existing case." Perhaps then, Ms. Sickler could request for herself a class representative incentive award, too.  This brash display of self-interest should give the Court pause in considering the bona fides of – and the real motivation behind – these Objections. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail ?*, 62 Vand. L. Rev. 1623, 1633-40 (2009).

b.     At pages 7 and 8 of their brief, the Objectors argue that the class parameters are fatally flawed because the class goes back six years from the filing

11

of the Amended Complaint on July 15, 2014 whereas the Complaint filed in the *Urban* case "was filed about 7 weeks earlier, on May 29, 2014." Thus, the Objectors' claim that the settlement is defective because *Brennan* does not seek to somehow tack on to the period pled in the *Urban* matter. This is nonsense. First, the Objectors cite no authority for the proposition that the class period is defective or the settlement unfair simply because the period runs from the date of filing the Amended Complaint in their case, as opposed to a Complaint filed in a different case. Second, the Objectors have made no showing whatever of how many people might have fallen into that seven week window – if any – nor the value of those claims. Common sense would dictate that a seven week sliver of a six year period (even if warranted) might produce at most a *de minimis* number of added Class Members. But, again the Objectors offer nothing of record, and it is their burden.

Finally, Mrs. Urban's counsel earlier filed a declaration in her case that was offered to the Court at a joint status conference in *Urban* and *Brennan* on September 3, 2014. The Declaration of attorneys Howard Rothenberg and Richard Shenkan states that "in March of **2013**, Nicole Urban contacted Richard Shenkan to investigate and initiate a claim against Community Bank for the purported statutorily defective Notice of Repossession which Community Bank used. Richard Shenkan … researched this claim and *made efforts to surface a client in New York* as approximately only fifteen percent of Community Bank's branches are in

Pennsylvania." (emphasis added) Yet it was not until May 30, 2014 that counsel for Urban filed her complaint at docket 3:14-cv-1039.   Thus, Mrs. Urban and her attorneys admittedly waited <u>fourteen months</u> to file suit on behalf of a class of Pennsylvania consumers ostensibly because they were hoping to file an even bigger class action case that would include New York consumers.  (*See* Declaration, Urban Doc 42, Exhibit "D" hereto).  That Mrs. Urban would permit the statute of limitations to lapse on 14 months' worth of consumer claims for her attorneys' admitted strategic purposes should inform the Court when considering the legitimacy of Urban's instant claim that this class settlement covering six years is fatally flawed because it is allegedly seven weeks too short.

### B. <u>The Settlement is Reasonable Even if the Bank Must Issue 1099C Forms for the Debt Forgiveness</u>

The Urban Objectors argue that the Defendant, Community Bank, is not required to comply with the information return filing requirements found in § 6050P of the Internal Revenue Code of 1986, as amended ("IRC").[5]   They make this argument solely on the authority of *Zarin v.  C.I.R.*, 916 F.2d 110 (3d Cir. 1990), arguing that since all of the debts owed by class members are disputed, there is no reporting requirement under § 6050P. Doc. No. 100 at 8 to 25.  Theirs is an apples and oranges argument because *Zarin*, dealing with gambling losses

---

[5]     Unless otherwise specified, all section references in this portion of the brief are to the Internal Revenue Code of 1986, as amended.

holds that only the amount of undisputed debt is income (putting aside the insolvency exclusion found in § 108(a)(3)). *Zarin* contains no references whatsoever respecting reporting obligations of financial institutions under § 6050P. Treas. Reg. § 1.6050P–1 (a)(3) is clear that "**discharged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law**" (emphasis supplied). As well, this Court has made it clear that it believes that the information returns (Form 1099-C) must be filed in this case: "I'm not agreeing with [Mr. Shenkan] on the 1099 issue[.]"[6]

1. Statutory Provisions

These sections of the Internal Revenue Code of 1986, as amended, §§ 61, 108 and 6050P, are of principal concern here:

> IRC § 61(a)(12) provides: "General definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: . . . (12) Income from discharge of indebtedness[.]"

> IRC § 108(a)(1) and (3) provide in relevant part:

> • Exclusion from gross income.--
>   • In general.--Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge

---

[6]    *See* transcript of January 27, 2015 hearing (Doc 79) at 43:2. *See also* 24:13-16, 29:8-9, 30:22-31:4, 34:6-9 and 41:13-43:2 (same).

(in whole or in part) of indebtedness of the taxpayer if--
(A) the discharge occurs in a title 11 case [or] (B) the discharge occurs when the taxpayer is insolvent[.]
. . .
(3) Insolvency exclusion limited to amount of insolvency.--In the case of a discharge to which paragraph (1)(B) applies, the amount excluded under paragraph (1)(B) shall not exceed the amount by which the taxpayer is insolvent.

IRC § 6050P provides in relevant part:

**A.** In general.--Any applicable entity[7] which discharges (in whole or in part) the indebtedness of any person during any calendar year shall make a return (at such time and in such form as the Secretary may by regulations prescribe) setting forth--
  • the name, address, and TIN of each person whose indebtedness was discharged during such calendar year,
  • the date of the discharge and the amount of the indebtedness discharged, and
  • such other information as the Secretary may prescribe.

2. <u>The Treasury Regulation at Issue Here</u>

Treas. Reg. § 1.6050P–1 provides in relevant part:

• Reporting requirement
  • In general. Except as provided in paragraph (d) of this section,

---

[7]   An "applicable entity" is a governmental agency, a financial institution, or other organization in the business of lending money. Section 6050P(c).  It is undisputed that Community Bank is an "applicable entity."  Indeed, anyone may file a 1099-c:  "[T]he filing of a Form 1099–C by someone other than an applicable entity is not fraudulent or actionable *per se* under § 7434; nothing in § 6050P or any other applicable provision of the IRC forbids the voluntary filing of a truthful and accurate Form 1099–C. *Cavoto v. Hayes*, 2009 WL 3380664 (N.D. Ill. 2009), *aff'd*, 634 F.3d 921 (7th Cir. 2011).

any applicable entity (as defined in section 6050P(c)(1)) that discharges an indebtedness of any person (within the meaning of section 7701(a)(1)) of at least $600 during a calendar year must file an information return on Form 1099-C with the Internal Revenue Service. Solely for purposes of the reporting requirements of section 6050P and this section, a discharge of indebtedness is deemed to have occurred, except as provided in paragraph (b)(3) of this section, if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.

. . .

(3) Amounts not includible in income. Except as otherwise provided in this section, discharged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law.

- Date of discharge
    - In general. Solely for purposes of this section, except as provided in paragraph (b)(3) of this section, indebtedness is discharged on the date of the occurrence of an identifiable event specified in paragraph (b)(2) of this section.

    - Identifiable events
        - In general. An identifiable event is—
            . . .
            (F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration[.]

### 3. The Urban Objectors' Misunderstanding of the Applicable Tax Law

The Urban Objectors confuse the issue of what is includable in gross income under § 61(a)(12) with the issue of exclusions from gross income under § 108(a)(1) and (3). The implementing regulations for § 6050P explicitly recognize the

difference: "[D]ischarged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law." Treas Reg. § 1.6050P–1 (a)(3). The Urban Objectors employ a one size fits all approach on the sole authority of *Zarin v. C.I.R.*, 916 F.2d 110 (3d Cir. 1990), arguing that since all of the debts owed by class members are allegedly disputed, there is no reporting requirement under § 6050P. Their argument misses the mark entirely because of Treas Reg. § 1.6050P–1 (a)(3).

Neither are Plaintiffs nor is Community Bank responsible for the contents of the Internal Revenue Code. Community Bank is legally obligated to file a Form 1099-C in the appropriate circumstances, and *Zarin* does not remotely hold otherwise. Treas. Reg. § 1.6050P–1 (a)(3). While it is unfortunate that class members will, in all likelihood, have to seek the advice of tax professionals to report the 1099-C amount properly and determine the extent to which the amount is excludable from gross income under § 108(a)(1), neither party has the power to alter the tax regulations.

Moreover, claiming the exclusion under § 108(a)(1) and (3) is a relatively simple matter, using Form 982. *See* Barrett Declaration, ¶ 3, Exhibit "E", filled in Form 982, following the example in the instructions, showing the check mark on Line 1b and the $3,000 entry on Line 2. It bears note that the Class Notice contains multiple references to potential tax consequence and even advises the class

member that "you or your tax advisor may be able to reduce the income from the deficiency forgiveness by submitting an IRS Form 982, if applicable." (Doc. 126-3 at p. 6, ¶ 13).

### 4. The Relevant Identifiable Event Under Treas. Reg. §1.6050P-1

The reporting requirements under § 6050P are triggered by any one of eight identifiable events specified in Treas. Reg. § 1.6050P–1 (b)(2)(i). The identifiable event relevant here is found at Treas. Reg. § 1.6050P–1 (b)(2)(i)(F):

> (i) In general. An identifiable event is—
> . . .
> (F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration;

*Id.*

The Settlement Agreement provides full debt forgiveness, estimated at $16 million, to all class members (other than those who declined that portion of the benefits of the Settlement Agreement). Treas. Reg. § 1.6050P–1 (b)(2)(i)(F) is controlling here because the Settlement Agreement is "an agreement between [Community Bank] and a debtor [the class members] to discharge [their] indebtedness at less than full consideration." The taxpayer may have exclusions from income, and of course he may have deductions or setoffs to payment of taxes on the debt forgiveness income. But those are different issues from the financial institution's obligation to issue a 1099C form.

18

5.  <u>The Private Letter Rulings</u>

The IRS has issued at least five Private Letter Rulings ("PLRs") since 2001 concerning the reporting requirements in a repo-deficiency case such as this.  The Urban Objectors argue that PLRs are not relevant here because "there is no precedential value to private letter rulings and those rulings are not binding on any court." Doc. No. 100 at 9 (citation omitted).  Skilled tax practitioners know better; they rely on PLRs, *inter alia*, to discern the IRS's view on a particular issue in order to advise their clients, irrespective of the fact that a PLR has no precedential value *per se*.  That is exactly the case here.  (*See* expert report of David Glusman, CPA, Doc. 126-14).

The five PLRs that Class Counsel has identified were issued in 2001, 2007, 2010, 2012 and 2013.  The PLRs from 2001, 2007 and 2010 hold that under circumstances like those here, the debt forgiveness is not an identifiable event under Treas. Reg. § l.6050P- l(b)(2)(i)(F) that triggers the Form 1099-C reporting requirement.[8]  Then, in 2012 and 2013, the IRS did an abrupt about-face, concluding that under circumstances like those here, the debt forgiveness is an identifiable event under Treas. Reg. § l.6050P-l (b)(2)(i)(F) that triggers the Form

---

[8]    Until 2012, Plaintiffs' counsel routinely resolved similar UCC repo class actions with full debt forgiveness.  When the IRS shifted its position, counsel thought the better of a settlement that would potentially generate an unexpected 1099C and phantom income, for the consumer class members.

1099-C reporting requirement.

See PLR 201021018 (Feb 5, 2010) and PLR 200802012 (Oct. 4, 2007), (Exhibit C and D to Barrett Decl., Exhibit "E" hereto). *See also* PLR 201408001 at 4 (Nov. 13, 2013) (same). *See* Barrett Declaration, ¶¶ 4-8, Exhibits B to F, for copies of the five PLRs.

The difference between the early PLRs (2001, 2007 and 2010) and the later PLRs (2012 and 2013) is that under the early PLRs, the settlements were deemed reflective of state law not simply forgiveness of debt, while the later PLRs hold *contra* - the settlements do not "serve to convert the forgiveness [or discharge] of the debt from being entered into voluntarily to one forced by operation of state law." PLR 201240001 at 4 and PLR 201408001 at 4.

The settlement is not deficient simply because the Bank would not, on these facts, positively agree never to file the information returns.  The position is reasonable in light of the IRS's clearly stated position in the 2012 and 2013 PLRs that the debt forgiveness found in the Settlement Agreement is an identifiable event under Treas Reg. § l.6050P-l (b)(2)(i)(F) that triggers the Form 1099-C reporting requirement.

### 6. The Urban Objectors' Motives

It may be that the Urban Objectors true motive here is to try to extract attorneys' fees from the class's cash recovery.  Indeed, the Urban Objectors say:

"Conservatively assuming an average tax bracket for the entire class of 15%, [footnote omitted] the Bank's waiver of more than $16 million in deficiencies, accompanied by the issuance of the corresponding 1099-C's, results in a facial class-wide tax liability of $2.4 million." Doc. No. 100 at 17.

The Urban Objectors hope to persuade this Court that an order emanating from the Court to the effect that Community Bank does not have to file the 1099-C Forms will somehow confer a benefit of $2.4 million on the class that is attributable to them. *See also* Treas. Reg. § 1.6050P–1 (a)(3): "[D]ischarged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law." Moreover, the "tax savings" to which the Objectors refer is non-existent because "[t]he nonreceipt of a Form 1099-C, however, does not convert taxable income into nontaxable income." *Clark v. C.I.R.*, T.C. Memo. 2015-175, 110 T.C.M. (CCH) 257 (2015) (citation omitted).

The Urban Objectors glibly assert that Community Bank should take the risk of IRS penalties for failing to file the required information returns, arguing that "the Bank's exposure for penalties can be no more than about $750,000," at $250 each for a "class numbering approximately 3,000," citing § 6721(a)(1). Doc. No. 100 at 17. If the IRS were to determine that Community Bank's failures were in intentional disregard of its reporting obligations under § 6050P, the

penalty would be "10 percent of the aggregate amount of the items required to be reported correctly," or $1.6 million ($3.2 million on a pre-tax basis). 26 U.S.C. § 6721(e).

Class Counsel do not presume to be tax counsel for Community Bank. The Urban Objectors' counsel, however, have inserted themselves into that role, pursuing a most tenuous objection to the reasonableness of this settlement. *Zarin* does not trump § 6050P, nor does it purport to. The tax reporting requirements of the defendant is not one of the *Girsh* factors that this Court is to consider as class settlement. This Objection, and the others, should be overruled.

### C. The Settlement Need Not Account for Unpled State Law Claims

At Section C of their brief, the Objectors make a perfunctory argument that the settlement does not reflect "the existence of additional, valuable claims against the Bank." (Obj. br. at 25-27, Doc. 100).

The Objectors first reference an unjust enrichment claim. However, there was no unjust enrichment claim pled in this matter. Although it may have been pled in the *Urban* case, *Urban* is not under review here. The Objectors have failed to brief the law of unjust enrichment in Pennsylvania or to explain to the Court how the facts here would clearly merit a class recovery in unjust enrichment. As such, the argument may be deemed waived. *See* M.D. Local Rule 7.8(a). Further, the Objectors have not remotely begun to explain or establish in the record how it is that

22

a settlement valued at over $20 million dollars for a Class of 3000 consumers whose cars were repossessed is inadequate – whether or not part of the fund was assigned to a cause of action in unjust enrichment.  Class co-counsel Flitter attests in his Certification that he did not assign any real value to a common law claim in unjust enrichment. (*See* Flitter Cert, ¶ 31, filed at Doc. 126-8).

The same may be said of the argument about conversion or "actual loss" (Obj. br. at 27 of 34, Doc. 100).  Again, the Objectors claim that the settlement under review is somehow inadequate but they fail to develop in the record or by any legal authority how the statutory minimum damages of UCC § 9625 (the finance charge plus 10% of the amount financed) is inadequate to compensate most of the consumer Class Members.  After all, the statutory minimum damages were specifically designed "in recognition of the inherent difficulty for a claimant to quantify and prove actual damages." *Cubler v. Trumark*, 83 A.3d at 242.  The Objectors' assertion that a claim for actual damages may have been "left on the table" is entirely unsupported in the record.  The *Brennan* Plaintiffs did not plead actual damages; this objection fails to account for the generous minimum statutory damages available without proof of specific loss.  The Objectors' untested theory of "actual loss" would inject into the Rule 23 calculus an element of proving actual loss causation for each Class Member, a very challenging prospect at class certification.

### D. <u>Supplemental Notice Has Been Provided</u>

At Section D, the Objectors point out that co-borrowers failed to receive notice of the settlement.  Plaintiffs and the Class Administrator operated based on the Class List provided by the Bank.  When it was brought to counsel's attention that the Class List apparently did not account for all of the co-borrowers, Class Counsel immediately attempted to rectify the problem by obtaining a list of co-borrowers from the Bank and moving for leave to issue supplemental Notice to the Class.  The Court approved that request for supplemental Notice (Doc. 119) and an identical Class Notice was mailed to the 652 co-borrowers with fresh dates and a 40 day period of time for them to opt-out.  (*See* Doc. 126-4, Aff't of Christina Peters Stasiewicz, at ¶ 11, Exhibit 2B to the Memorandum in Support of Final Approval).  This Objection is now moot, but Plaintiffs point out that the Objectors or their counsel could have contacted Class Counsel shortly after the August 4 mailing, when the oversight could have been easily rectified.  The Objectors are not entitled to any award or fees for this, nor has this increased the common fund.

### E. <u>Objectors and Their Counsel have not Conferred any Tangible Benefit on the Class</u>

The Urban Objectors argue that they are responsible for "[t]he significant improvement in the settlement [on account of] the jettisoning of the original opt-in mechanism for a class member to obtain the benefit of a deficiency waiver in favor of the opt-out mechanism reflected in the latest version of the Settlement."

24

(Doc 100 at 29-30)   Not true.  This Court, not the Urban Objectors, is responsible for the change from elect-in to debt forgiveness to elect-out debt forgiveness.  It is merely fortuitous that the Urban Objectors happen to agree with the Court on this point.  Class Counsel and the Bank would not have made the change but for the fact of this Court's stated strong preference for debt forgiveness for all.  To be sure, Class Counsel would not have made, and did not make the change at the behest of the Urban Objectors.   Recall that Mrs. Urban, through counsel, decided to withdraw support for the settlement, finding fault with a half-dozen provisions. (*See e.g.*, Tr. at 48, Doc. 79).  Plaintiffs rejected them all; it was the Court who urged the parties, if they wished, to change the debt forgiveness to presumptive.

From the remarks at the January 27, 2015 status conference (Doc. 79):

> My concerns here are I don't agree with Mr. Shenkan's concerns about the 1099, off the top of my head.
> ***
> The problem is I have a concern, knowing the statistical analysis that is normally done following a class action suit and how many people actually opt in to the suit, that the result is that many people who should have been given forgiveness won't be, because they don't understand -- they think this is junk mail that's coming, you know.  I can't tell you how many times I've gotten class actions for Verizon, because they didn't do this or whatever, where you're sitting there saying, [t]his will be worth about 10 cents, and you just chuck that away because you don't get it. Some people would say I have, at least, some legal training, and yet I look at individuals and say, [i]f my mother got this notice, I don't know that she would understand what it is.
> ***
> So I'm just trying to figure out if the bank is willing to -- it strikes me that the option that's being offered is not an option that, in all honesty, benefits the class, it's an option that benefits the Defendant for those that don't take the class.
> ***
> What I'm interested in is, what is the benefit to the class, in this particular case, that not to get debt forgiveness in

> a 1099, as opposed to having my 90-year-old mother get
> this, not understand it, not waive it, not get the debt
> forgiveness, get a 200-dollar check, and, in theory, still
> owe the $2,000, as opposed to having to pay
> $25 in taxes or $50 in taxes, in theory, on the debt
> forgiveness?

*Id.* at p. 34-35, 43.

The original settlement agreement had the same $16 million debt forgiveness available, but on request, rather than as the default provision. And this was a provision that Urban and her counsel agreed with, before they flip-flopped. (*See* Doc. 72, p. 2 fn. 1). Class Counsel harbored legitimate concerns about Class Members receiving 1099C forms without expecting it. Ultimately, the Plaintiffs and the Bank acquiesced to the Court's strong preference for presumptive debt forgiveness, with the same $16 million in debt forgiveness. This change was not attributable to Urban, nor was Urban an Objector at the time the Court considered the original Motion for Preliminary Approval on January 27, 2015.

It is settled in this circuit that simply doing work on behalf of a class does not create a right to compensation. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 191 (3d Cir. 2005) (PSLRA class case). The Objectors have truly added no value whatsoever. To the contrary, they have "clouded, rather than sharpened the issues, by challenging, without basis, [the merits of the settlement]." *In re Cardinal Health, Inc. Sec. Litig.*, 550 F.Supp.2d 751, 753 (S.D. Ohio 2008). The Urban Objectors can claim no credit for the change from opt-in to debt forgiveness to debt

forgiveness for all.  Moreover, they have provided no evidence of the effect of anything they did.  In general, of course, Objectors are not entitled to an award of counsel fees, particularly where the Objector, as here, has not increased the common fund.  *See e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002).  The Objectors have not provided in the record any principled basis for the award of fees.

## III.    CONCLUSION

The Objections to the class settlement should be overruled.

Respectfully submitted:

Date:  2/11/16

*/s/ Cary L. Flitter*
CARY L. FLITTER
ANDREW M. MILZ
FLITTER MILZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

EUGENE C. KELLEY
TIMOTHY POLISHAN
KELLEY POLISHAN &
SOLFANELLI, LLC
259 South Keyser Avenue
Old Forge, PA 18518
570-562-4520

M. SCOTT BARRETT
*(Admitted Pro Hac Vice)*
BARRETT WYLIE, LLC
320 West 8th Street, Suite 100
P.O. Box 5233
Bloomington, IN 47407-5233

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BRENNAN, ANTHONY COLINO, and COURTNEY BELLOMO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>COMMUNITY BANK, N.A.<br>                              Defendant. | NO. 13-CV-02939<br><br><br><br><br>JUDGE MANNION<br><br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, hereby certify that a copy of Plaintiffs' Response to

Objections has been electronically filed with the Clerk of Court using the CM/ECF

system, which sent notification of such filing to:

Jonathan B. Fellows, Esquire
Suzanne O. Galbato, Esquire
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202

Jane T. Smedley, Esquire
Joseph E. Kluger, Esquire
HOURIGAN, KLUGER & QUINN, P.C.
600 Third Avenue
Kingston, PA 18704

**Attorneys for Defendant**

Richard Shenkan, Esquire
SHENKAN INJURY LAWYERS
6550 Lakeshore Drive
West Bloomfield, MI 48323

Howard A. Rothenberg, Esquire
345 Wyoming Avenue, Suite 210
Scranton, PA 18503

**Attorneys for Plaintiff, Nicole Urban**


Date:  2/11/16                                  */s/ Cary L. Flitter*_____
                                               CARY L. FLITTER


        Said document is available for viewing and downloading from the ECF
system.



Date:  2/11/16                                  */s/ Cary L. Flitter*_____
                                               CARY L. FLITTER


## LOC. RULE 7.8(b) CERTIFICATION


        I hereby certify that the foregoing brief, at 7086 words, exceeds 5000 words.
Plaintiffs have sought leave to file this response in excess of the local word limits.
(Doc. 124).



Date:  2/11/16                                  */s/ Cary L. Flitter*_____
                                               CARY L. FLITTER