# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NICOLE URBAN, individually and on behalf
of all others similarly situated,

        Plaintiff,

v.

COMMUNITY BANK, N.A.

        Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION

No.3:14-CV-01039-MEM

Hon. Malachy E. Mannion

CLASS ACTION

Counsel of Record for Plaintiff:
Richard Shenkan, Esquire
Shenkan Injury Lawyers, LLC
Attorney ID 79800
P.O. Box 7255
New Castle, PA  16107
T: (800) 601-0808
F: (888) 769-1774

**PLAINTIFF'S RENEWED NOTICE OF NON-JOINDER IN
THE *BRENNAN* PROPOSED SETTLEMENT
AND
REQUEST FOR IN-PERSON STATUS CONFERENCE**

AND NOW COMES, Plaintiff, by and through her counsel, who apprises this Honorable

Court as follows:

A. **Brief Factual Background**

At 6:12 PM, March 23, 2015, Brennan's counsel, Mr. Flitter, sent Urban's counsel,

Richard Shenkan, a copy of the proposed settlement agreement and proposed class notice in

*Brennan et al, v. Community Bank, N.A.*, 13 CV 02939 (2013) , along with an ultimatum -- to

sign the non-negotiable proposed settlement agreement and co-counsel agreement by the next

day, March 24, 2015, or Nicole Urban would not be included in the settlement in any fashion and

1

no provisions would be made for any fee sharing with her counsel.[1] There simply was insufficient time for Mr. Shenkan to consult with his client and to fully analyze the settlement with the new opt-out language-- all within 24 hours – particularly in light of the fact that, at that time, Richard Shenkan was on a family vacation. Mr. Shenkan, therefore, requested 7 days to review the documents and to remove the designation of "lead counsel" to the Flitter Lorenz law firm (which, according to the proposed co-counsel agreement, would have the clear effect of silencing Nicole Urban and her counsel and effectively barring them from addressing the Court in any future proceedings). Mr. Flitter rejected this request. Now, my co-counsel, Mr. Rothenberg and I are in the process of analyzing the modified terms of the settlement agreement and are conferring with other professionals, as well as with their client regarding the adequacy of the class settlement and notice. We intend in the near future to formally inform the Court in-detail--of any concerns.

### B. Initial Concerns of Nicole Urban Regarding Deficiency Waiver Option

Preliminarily,[2] it is important to note that the settlement terms are markedly better than the earlier proposed settlement, principally because the settlement provides the relief that all the class members will obtain a deficiency-waiver without being forced to take any affirmative action. Notwithstanding the foregoing, however, after consultation with tax professionals since

---

[1] On March 9, 2015,the Bank and Brennan's counsel had a conference call with Mr. Shenkan during which they informed him that they had agreed to revise the settlement to have an opt-out, rather than opt-in, of the deficiency waiver relief, as Mr. Shenkan had advocated. Mr. Shenkan had a subsequent conversation with Mr. Flitter on March 10, 2015 discussing this modification. Mr. Shenkan requested the operative documents (settlement agreement and class notice) to review, however, they were not provided until March 23, 2015. The notice references the use of a website, however, no information has been provided as to the information to be posted on the website (i.e., IRS documents, a list of tax clinics serving the low income and elderly, class documents, contact numbers to counsel, etc.). Mr. Shenkan has requested this information, as well, but has yet to receive it.

[2] Nicole Urban's counsel intends to supplement this initial feedback with an affidavit and/or additional, more-detailed information.

the last conference with Your Honor, we believe that the use of the opt-out deficiency waiver provision and the inadequate notice attendant thereto remains troubling. [3]

*In short, we believe that the settlement and class notice should be simple and straight-forward – all class members should either obtain all benefits or elect to opt-out of the settlement.*

As drafted, any class member who would opt-out of the debt-waiver relief would be subject: (1) to collection calls pressing them to pay an un-owed debt; (2) to potential litigation regarding an alleged deficiency (in which they would have already agreed to *waive* certain of their most effective affirmative defenses); (3) to potential garnishment proceedings; and (4) to potential (continued) payment of un-owed debt.

Of additional concern is the fact that, <u>all</u> class members (even those who would arguably opt-out of this proposed relief, assuming they do not pay the [statutorily invalid] deficiency) will, inevitably, be sent a 1099C because IRS 1099 C form, Box 6, provides that the Statute of Limitations is one of the identifiable events. (See attached)  Notably, the class notice does not state when, if a class member were to opt-out, the cancelled indebtedness income would likely be imputed to them (i.e., whether it would be in the next calendar year). In other words, the class members are not adequately made aware of the tax ramifications and other attendant consequences of the opt-out. Furthermore, in the event that the class member were to opt-out of the deficiency waiver, then the credit reporting benefit may not be provided (i.e., because the bank may still sue or continue to sue the debtor and a judgment may still appear on the report).

---

[3] Mr. Flitter reports that, historically, only approximately 20% of the class would opt-in for the deficiency waiver. Applying this figure to this class, only approximately 600 class members would have been expected to have opted-in, leaving 2,400 exposed to a lawsuit, potential garnishment in New York, and the outstanding deficiency. Notably, the average deficiency amount of the waiver is $5,523.00 ($16,326,236.00 total value of deficiencies ÷ 2,956 class members. See Settlement Agreement, Doc. 87-1, p. 68 and 69 – an additional benefit conferred on the class of approximately $13M (80% of $16.3M).

In consideration of these significant hazards, a reasonable critic would ask themselves why any reasonable class member would agree to opt-out of the deficiency waiver relief – particularly knowing that the Bank may, immediately after this settlement, sue that class member and/or still send a 1099C for the calendar year of the settlement.

While we acknowledge that providing class members with a "choice" is generally a benefit. In this instance, such a "choice" which functions more like a reverter to the Bank and which carries with it such legal hazards to the class members is more akin to a "detriment" than a "benefit" to the class. This is particularly true the case where, as here, its inclusion of this opt-out approach will more likely confuse and scare class members and have the unintended consequence to discourage participation. While we are researching this matter further, we suspect that whatever minimal value, if any, this option may afford to the very few class members far outweighs by the potential detriment to the bulk of the class.

As such, we plan to follow-up with Brennan and the Banks' counsel to better understand why (and whether) this deficiency opt-out option is necessary and to explain what benefit, if any, the deficiency option provides to the class. If the benefit is marginal to the class or serves only the Bank's interest, we will request that the Bank inform us whether it would agree to a deficiency waiver for all class members as was contemplated early-on.

Alternatively, while certainly not ideal --- if the Bank is not agreeable to such, then we would like to consider less desirable options (though better than what is presently being proposed), including: (A) whether the Bank would agree: (1) to include a covenant not to sue (which is not a taxable identifiable event); and (2) to refrain from and discontinue any execution of any judgment and garnishment proceedings; or, (B) whether it would agree not to waive any

4

of the opt-out class members' affirmative claims and defenses to any deficiency suit and, if requested, to provide each class member with a complete copy of their file upon request. [4]

C.   **Class Administration: Need to Educate Class Members of Tax Resources**

At this juncture, we respectfully submit that, the debt waiver relief should not be optional but rather provided to all class members who wish to stay in the class. Applying this approach should better ensure that all class members are also sufficiently armed with important information (including should available tax-related resources) <u>now</u>  (as opposed to sometime in the future when such information would not be readily available to them because this litigation and administration may have ended). The additional information might include a list of low income tax clinics in New York and Pennsylvania and, perhaps, even a tax hotline to (i.e., Villanova or Fordham law school tax clinics, or TCE or VITA sites) for hardship or extraordinary situations.

At present, there is no provisions for such resources through the class administration process - only a directive for the class member to seek tax advice from a professional. Respectfully, class members are not best served simply by class counsel setting up a system to pay a few hundred dollars in cash, tell the members to consult a tax professional, and then closing-out the case.  Rather, the administration of this matter – due to the expected tax issues, questions, and concerns which will likely arise with class members – should include additional provisions than that presently proposed by the pending settlement. For example, some information about the class action may need to be

---

[4]   As most cases are filed in small claims courts, discovery is not ordinarily available so this additional relief would be most advantageous. Additionally, class members should be advised that they may be able to make a claim against the bank pursuant to the the FTC Holder Rule which "allows a debtor to bring 'any claim or defense' any assignee," including the seller, bank, or any other assignee. *Beemus v. Interstate Nat'l Dealer Servs. et al.*, docket no. GD98-9583, (Pa. Super. 2002). *See also Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp.2d 519 (E.D.N.Y. 2006).

included with the 1099C forms when they are sent in January of 2016. At that time, resources should also be made available to the class.

### D. **Plaintiff's Request for Status Conference**

In the interest of efficiency, Plaintiff's counsel respectfully requests that a status conference with all counsel be scheduled to address why the parties to the *Urban / Brennan v. Community Bank* litigation have been unable to resolve their differences in the best interest of the class and to address all outstanding matters. [5] Plaintiff and her counsel hope that all issues can be candidly addressed with you, perhaps informally in-chambers, with the sole objective of ironing-out a global settlement -- caucusing or sending the parties to mediation, if necessary. Plaintiff intends to supplement this request well in-advance of the status conference to delineate these and any other practical concerns she has with the pending settlement or as otherwise directed by the Court.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiff*

---

[5] Plaintiff respectfully requests that, if possible, a status conference be scheduled after a short time (i.e., 10 days) so that continued efforts can be made to resolve these differences without the need for the Court' involvement.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this pleading was sent by fax and first-class mail this 1[th] day of April, 2015 to the following counsel:

Jane T. Smedley, Esq.
Hourigan, Kluger & Quinn
600 Third Avenue
Kingston, PA 18704-5815
P: (570) 287-3000
F: (570) 287-8005

Timothy Polishan, Esq.
Keller, Polishan, Walsh and Solfaneli, LLC.
259 S. Keyser Ave.
Old Forge, PA 18518
P: (570) 562-4520
F: (570) 562-4531

Jonathan B. Fellows, Esq.
Kate Reid, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
P: (315) 218-8120
F: (315) 218-8100

Scott Barrett, Esq.
Barrett Wylie, LLC.
Showers Plaza – P.O. Box 5233
320 West 8th St., Suite 100
Bloomington, IN 47407
P: (812) 334-2600
F: (812) 336-5615

Cary Flitter, Esq.
Theodore Lorenz, Esq.
Andrew Milz, Esq.
Flitter Lorenz, P.C.
450 N. Narberth Ave., Suite 101
Narberth, PA 19072
P: (610) 822-0782
F: (610) 667-0552

Howard Rothenberg, Esq.
Howard Rothenberg and Associates
345 Wyoming Ave., Suite 210
Scranton, PA 18503
P: (570) 207-3991
F: (570) 207-3991

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*