# EXHIBIT "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------x
                                                 :
CAROL A. BRENNAN, ANTHONY COLINO :      CIVIL ACTION
and COURTNEY BELLOMO, individually    :
and on behalf of all others similarly situated,  :   NO. 13-CV-02939 (Judge Mannion)
                                                 :
            Plaintiffs,                          :
                                                 :
vs.                                              :
                                                 :
COMMUNITY BANK, N.A.                             :
                                                 :
                                                 :
            Defendant.                           :
                                                 :
-------------------------------------------------x
```

## DECLARATION OF M. SCOTT BARRETT IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND IN OPPOSITION TO THE OBJECTIONS LODGED BY THE URBAN OBJECTORS

M. SCOTT BARRETT, an attorney admitted to practice *pro hac vice* before this Court, affirms the following under the penalties of perjury:

1.     I am one of the attorneys for the Plaintiffs in the above-entitled action and as such I am familiar with the facts and circumstances set forth below.

2.     I respectfully submit this Declaration in support of the Plaintiffs' Motion for Final Approval of the Proposed Settlement and in Opposition to the Objections Lodged by the Urban Objectors.

3.     Exhibit A is a filled-in Form 982, that I prepared following the example in the instructions, showing the check mark on Line 1b and the $3,000 entry on Line 2.

4.     Exhibit B is a copy of Private Letter Ruling 200212004 (Dec. 20, 2001).

5.     Exhibit C is a copy of Private Letter Ruling 200802012 (Oct. 4, 2007).

6.     Exhibit D is a copy of Private Letter Ruling 201021018 (Feb 5, 2010).

7.     Exhibit E is a copy of Private Letter Ruling 201240001 (July 5, 2012).

8.      Exhibit F is a copy of Private Letter Ruling 201408001 (Nov. 13, 2013).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

EXECUTED: February 11, 2016


/s/ M. Scott Barrett
M. SCOTT BARRETT

# Exhibit A

Exhibit A

Form **982**
(Rev. July 2013)
Department of the Treasury
Internal Revenue Service

**Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment)**

▶ Attach this form to your income tax return.
▶ Information about Form 982 and its instructions is at *www.irs.gov/form982.*

OMB No. 1545-0046

Attachment
Sequence No. **94**

Name shown on return

Identifying number

---

**Part I**   **General Information** (see instructions)

| | | | |
|---|---|---|---|
| 1 | Amount excluded is due to (check applicable box(es)): | | |
| a | Discharge of indebtedness in a title 11 case | | ☐ |
| b | Discharge of indebtedness to the extent insolvent (not in a title 11 case) | | ☑ |
| c | Discharge of qualified farm indebtedness | | ☐ |
| d | Discharge of qualified real property business indebtedness | | ☐ |
| e | Discharge of qualified principal residence indebtedness | | ☐ |
| 2 | Total amount of discharged indebtedness excluded from gross income | **2** | 3000 |
| 3 | Do you elect to treat all real property described in section 1221(a)(1), relating to property held for sale to customers in the ordinary course of a trade or business, as if it were depreciable property? | | ☐ Yes ☐ No |

**Part II**   **Reduction of Tax Attributes.** You must attach a description of any transactions resulting in the reduction in basis under section 1017. See Regulations section 1.1017-1 for basis reduction ordering rules, and, if applicable, required partnership consent statements. (For additional information, see the instructions for Part II.)

Enter amount excluded from gross income:

| | | | |
|---|---|---|---|
| 4 | For a discharge of qualified real property business indebtedness applied to reduce the basis of depreciable real property | **4** | |
| 5 | That you elect under section 108(b)(5) to apply first to reduce the basis (under section 1017) of depreciable property | **5** | |
| 6 | Applied to reduce any net operating loss that occurred in the tax year of the discharge or carried over to the tax year of the discharge | **6** | |
| 7 | Applied to reduce any general business credit carryover to or from the tax year of the discharge | **7** | |
| 8 | Applied to reduce any minimum tax credit as of the beginning of the tax year immediately after the tax year of the discharge | **8** | |
| 9 | Applied to reduce any net capital loss for the tax year of the discharge, including any capital loss carryovers to the tax year of the discharge | **9** | |
| 10a | Applied to reduce the basis of nondepreciable and depreciable property if not reduced on line 5. DO NOT use in the case of discharge of qualified farm indebtedness | **10a** | |
| b | Applied to reduce the basis of your principal residence. *Enter amount here ONLY if line 1e is checked* | **10b** | |
| 11 | For a discharge of qualified farm indebtedness applied to reduce the basis of: | | |
| a | Depreciable property used or held for use in a trade or business or for the production of income if not reduced on line 5 | **11a** | |
| b | Land used or held for use in a trade or business of farming | **11b** | |
| c | Other property used or held for use in a trade or business or for the production of income | **11c** | |
| 12 | Applied to reduce any passive activity loss and credit carryovers from the tax year of the discharge | **12** | |
| 13 | Applied to reduce any foreign tax credit carryover to or from the tax year of the discharge | **13** | |

**Part III**   **Consent of Corporation to Adjustment of Basis of Its Property Under Section 1082(a)(2)**

Under section 1081(b), the corporation named above has excluded $ _____ from its gross income for the tax year beginning _____ and ending _____
Under that section, the corporation consents to have the basis of its property adjusted in accordance with the regulations prescribed under section 1082(a)(2) in effect at the time of filing its income tax return for that year. The corporation is organized under the laws of _____
_____
(State of Incorporation)

**Note.** *You must attach a description of the transactions resulting in the nonrecognition of gain under section 1081.*

For Paperwork Reduction Act Notice, see page 5 of this form.          Cat. No. 17066E          Form **982** (Rev. 7-2013)

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form 982 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/form982*.

## Purpose of Form

Generally, the amount by which you benefit from the discharge of indebtedness is included in your gross income. However, under certain circumstances described in section 108, you can exclude the amount of discharged indebtedness from your gross income.

You must file Form 982 to report the exclusion and the reduction of certain tax attributes either dollar for dollar or 33$\frac{1}{3}$ cents per dollar (as explained below).

## How To Complete the Form

| IF the discharged debt you are excluding is . . . | THEN follow these steps . . . |
|---|---|
| Qualified principal residence indebtedness | **1.** Be sure to read the definition of qualified principal residence indebtedness in the instructions for line 1e on page 4. Part or all of your debt may not qualify for the exclusion on line 1e but may qualify for one of the other exclusions.<br><br>**2.** Check the box on line 1e.<br><br>**3.** Include on line 2 the amount of discharged qualified principal residence indebtedness that is excluded from gross income. Any amount in excess of the excluded amount may result in taxable income. See Pub. 4681 for more information. If you disposed of your residence, you may also be required to recognize a gain on its disposition. For details, see Pub. 523, Selling Your Home.<br><br>**4.** If you continue to own your residence after the discharge, enter on line 10b the smaller of (a) the amount of qualified principal residence indebtedness included on line 2 or (b) the basis (generally, your cost plus improvements) of your principal residence.<br><br>⚠ **CAUTION** *If the discharge occurs in a title 11 case, you cannot check box 1e. You must check box 1a and complete the form as discussed below under* A nonbusiness debt. *If you are insolvent (and not in a title 11 case), you can elect to follow the insolvency rules by checking box 1b instead of box 1e and completing the form as discussed below under* A nonbusiness debt. |
| A nonbusiness debt (other than qualified principal residence indebtedness, such as a car loan or credit card debt) | Follow these instructions if you do not have any of the tax attributes listed in Part II (other than a basis in nondepreciable property). Otherwise, follow the instructions for *Any other debt* below.<br><br>**1.** Check the box on line 1a if the discharge was made in a *title 11 case* (see *Definitions* on page 3) or the box on line 1b if the discharge occurred when you were *insolvent* (see *Line 1b* on page 3).<br><br>**2.** Include on line 2 the amount of discharged nonbusiness debt that is excluded from gross income. If you were insolvent, do not include more than the excess of your liabilities over the fair market value of your assets.<br><br>**3.** Include on line 10a the smallest of (a) the basis of your nondepreciable property, (b) the amount of the nonbusiness debt included on line 2, or (c) the excess of the aggregate bases of the property and the amount of money you held immediately after the discharge over your aggregate liabilities immediately after the discharge. |
| Any other debt | Use *Part I* of Form 982 to indicate why any amount received from the discharge of indebtedness should be excluded from gross income and the amount excluded.<br><br>Use *Part II* to report your reduction of tax attributes. The reduction must be made in the following order unless you check the box on line 1d for qualified real property business indebtedness or make the election on line 5 to reduce basis of depreciable property first.<br><br>**1.** Any net operating loss (NOL) for the tax year of the discharge (and any NOL carryover to that year) (dollar for dollar);<br><br>**2.** Any general business credit carryover to or from the tax year of the discharge (33$\frac{1}{3}$ cents per dollar);<br><br>**3.** Any minimum tax credit as of the beginning of the tax year immediately after the tax year of the discharge (33$\frac{1}{3}$ cents per dollar);<br><br>**4.** Any net capital loss for the tax year of the discharge (and any capital loss carryover to that tax year) (dollar for dollar);<br><br>**5.** The basis of property (dollar for dollar);<br><br>**6.** Any passive activity loss (dollar for dollar) and credit (33$\frac{1}{3}$ cents per dollar) carryovers from the tax year of the discharge; and<br><br>**7.** Any foreign tax credit carryover to or from the tax year of the discharge (33$\frac{1}{3}$ cents per dollar).<br><br>Use *Part III* to exclude from gross income under section 1081(b) any amounts of income attributable to the transfer of property described in that section. |



*Certain individuals may need to complete only a few lines on Form 982. For example, if you are completing this form because of a discharge of indebtedness on a personal loan (such as a car loan or credit card debt) or a loan for the purchase of your principal residence, follow the chart on page 2 to see which lines you need to complete. Also, see Pub. 4681, Canceled Debts, Foreclosures, Repossessions, and Abandonments, for additional information including many examples and sample forms.*

## Definitions

### Title 11 Case

A *title 11 case* is a case under title 11 of the United States Code (relating to bankruptcy), but only if you are under the jurisdiction of the court in the case and the discharge of indebtedness is granted by the court or is under a plan approved by the court.

### Discharge of Indebtedness

The term *discharge of indebtedness* conveys forgiveness of, or release from, an obligation to repay.

## When To File

File Form 982 with your federal income tax return for a year a discharge of indebtedness is excluded from your income under section 108(a).

The election to reduce the basis of depreciable property under section 108(b)(5) and the election made on line 1d of Part I regarding the discharge of qualified real property business indebtedness must be made on a timely filed return (including extensions) and can be revoked only with the consent of the IRS.

If you timely filed your tax return without making either of these elections, you can still make either election by filing an amended return within 6 months of the due date of the return (excluding extensions). Write "Filed pursuant to section 301.9100-2" on the amended return and file it at the same place you filed the original return.

## Specific Instructions

### Part I

The American Recovery and Reinvestment Act of 2009 allows certain businesses to elect under section 108(i) to defer and include ratably over a 5-taxable-year period, beginning with the taxpayer's fourth or fifth taxable year following the taxable year of the reacquisition, any income from the discharge of business debt arising from the reacquisition of certain types of business debt repurchased in 2009 and 2010. For more details, including how to make this election, see section 108(i) and Rev. Proc. 2009-37, 2009-36 I.R.B. 309, available at *www.irs.gov/irb/2009-36_IRB/ar07.html*.



*If you made an election under section 108(i) to defer income from the discharge of business debt arising from the reacquisition of a debt instrument, you cannot exclude on lines 1a through 1d the income from the discharge of such indebtedness for the taxable year of the election or any subsequent taxable year.*

### Line 1b

The insolvency exclusion does not apply to any discharge that occurs in a title 11 case. It also does not apply to a discharge of qualified principal residence indebtedness (see the instructions for line 1e on page 4) unless you elect to have the insolvency exclusion apply instead of the exclusion for qualified principal residence indebtedness.

Check the box on line 1b if the discharge of indebtedness occurred while you were insolvent. You were insolvent to the extent that your liabilities exceeded the fair market value (FMV) of your assets immediately before the discharge. For details and a worksheet to help calculate insolvency, see Pub. 4681.

*Example.* You were released from your obligation to pay your credit card debt in the amount of $5,000. The FMV of your total assets immediately before the discharge was $7,000 and your liabilities were $10,000. You were insolvent to the extent of $3,000 ($10,000 of total liabilities minus $7,000 of total assets). Check the box on line 1b and include $3,000 on line 2.

### Line 1c

Check this box if the income you exclude is from the discharge of qualified farm indebtedness. The exclusion relating to qualified farm indebtedness does not apply to a discharge that occurs in a title 11 case or to the extent you were insolvent.

*Qualified farm indebtedness* is the amount of indebtedness incurred directly in connection with the trade or business of farming. In addition, 50% or more of your aggregate gross receipts for the 3 tax years preceding the tax year in which the discharge of such indebtedness occurs must be from the trade or business of farming. For more information, see sections 108(g) and 1017(b)(4).

The discharge must have been made by a qualified person. Generally, a *qualified person* is an individual, organization, etc., who is actively and regularly engaged in the business of lending money. This person cannot be related to you, be the person from whom you acquired the property, or be a person who receives a fee with respect to your investment in the property. A qualified person also includes any federal, state, or local government or agency or instrumentality thereof.

If you checked line 1c and did not make the election on line 5, the debt discharge amount will be applied to reduce the tax attributes in the order listed on lines 6 through 9. Any remaining amount will be applied to reduce the tax attributes in the order listed on lines 11a through 13.

You cannot exclude more than the total of your (a) tax attributes (determined under section 108(g)(3)(B)) and (b) basis of property used or held for use in a trade or business or for the production of income. Any excess is included in income.

### Line 1d

If you check this box, the discharge of qualified real property business indebtedness is applied to reduce the basis of depreciable real property on line 4. The exclusion relating to qualified real property business indebtedness does not apply to a discharge that occurs in a title 11 case or to the extent you were insolvent.

*Qualified real property business indebtedness* is indebtedness (other than qualified farm indebtedness) that (a) is incurred or assumed in connection with real property used in a trade or business, (b) is secured by that real property, and (c) with respect to which you have made an election under this provision. This provision does not apply to a corporation (other than an S corporation).

Indebtedness incurred or assumed after 1992 is not qualified real property business indebtedness unless it is either (a) debt incurred to refinance qualified real property business indebtedness incurred or assumed before 1993 (but only to the extent the amount of such debt does not exceed the amount of debt being refinanced) or (b) qualified acquisition indebtedness.

*Qualified acquisition indebtedness* is (a) debt incurred or assumed to acquire, construct, reconstruct, or substantially improve real property that is secured by such debt and (b) debt resulting from the refinancing of qualified acquisition indebtedness to the extent the amount of such debt does not exceed the amount of debt being refinanced.

You cannot exclude more than the excess of the outstanding principal amount of the debt (immediately before the discharge) over the net FMV (as of that time) of the property securing the debt reduced by the outstanding principal amount of other qualified real property business indebtedness secured by that property (as of that time). The amount excluded is further limited to the aggregate adjusted basis (as of the first day of the next tax year or, if earlier, the date of disposition) of depreciable real property (determined after any reductions under sections 108(b) and (g)) you held immediately before the discharge (other than property acquired in contemplation of the discharge). Any excess is included in income.

**Line 1e**

Check this box if the income you exclude is from discharge of qualified principal residence indebtedness. Also, be sure you complete line 2 (and line 10b if you continue to own the residence after discharge). However, if the discharge occurs in a title 11 case, you must check the box on line 1a and not this box. If you are insolvent (and not in a title 11 case), you can elect to follow the insolvency rules by checking box 1b instead of checking this box. For more information, see Pub. 4681.

**Principal residence.** Your principal residence is your *main home*, which is the home where you ordinarily live most of the time. You can have only one main home at any one time.

**Qualified principal residence indebtedness.** This indebtedness is a mortgage you took out to buy, build, or substantially improve your main home. It also must be secured by your main home. If the amount of your original mortgage is more than the cost of your main home plus the cost of any substantial improvements, only the debt that is **not** more than the cost of your main home plus improvements is qualified principal residence indebtedness. Any debt secured by your main home that you use to refinance qualified principal residence indebtedness is treated as qualified principal residence indebtedness, but only up to the amount of the old mortgage principal just before the refinancing. Any additional debt you incurred to substantially improve your main home is also treated as qualified principal residence indebtedness.

**Amount eligible for the exclusion.** The exclusion applies only to debt discharged after 2006. The maximum amount you can treat as qualified principal residence indebtedness is $2 million ($1 million if married filing separately). You cannot exclude from gross income discharge of qualified principal residence indebtedness if the discharge was for services performed for the lender or on account of any other factor not directly related to a decline in the value of your residence or to your financial condition.

**Ordering rule.** If only a part of a loan is qualified principal residence indebtedness, the exclusion applies only to the extent the amount discharged exceeds the amount of the loan (immediately before the discharge) that is **not** qualified principal residence indebtedness. For example, assume your main home is secured by a debt of $1 million, of which $800,000 is qualified principal residence indebtedness. If your main home is sold for $700,000 and $300,000 of debt is discharged, only $100,000 of the debt discharged can be excluded (the $300,000 that was discharged minus the $200,000 of nonqualified debt). The remaining $200,000 of nonqualified debt may qualify in whole or in part for one of the other exclusions, such as the insolvency exclusion.

**Line 2**

Enter the total amount excluded from your gross income due to discharge of indebtedness under section 108. If you checked any box on lines 1b through 1e, do not enter more than the limit explained in the instructions for those lines. If you checked line 1a, 1b, or 1c, this amount will not necessarily equal the total reductions on lines 5 through 13 (excluding line 10b) because the debt discharge amount may exceed the total tax attributes. If you checked line 1e, this amount will not necessarily equal the total basis reduction on line 10b (which is required only if you continue to own the residence after the discharge).

See section 382(l)(5) for a special rule regarding a reduction of a corporation's tax attributes after certain ownership changes.

**Line 3**

You can elect under section 1017(b)(3)(E) to treat all real property held primarily for sale to customers in the ordinary course of a trade or business as if it were depreciable property. This election does not apply to the discharge of qualified real property business indebtedness. To make the election, check the "Yes" box.

# Part II

**Basis Reduction**

If you check any of the boxes on lines 1a through 1c, you can elect, by completing line 5, to apply all or a part of the debt discharge amount to first reduce the basis of depreciable property (including property you elected on line 3 to treat as depreciable property). Any balance of the debt discharge amount will then be applied to reduce the tax attributes in the order listed on lines 6 through 13 (excluding line 10b). You must attach a statement describing the transactions that resulted in the reduction in basis under section 1017 and identifying the property for which you reduced the basis. If you do not make the election on line 5, complete lines 6 through 13 (excluding line 10b) to reduce your attributes. See section 1017(b)(2) and (c) for limitations of reductions in basis on line 10a.

**Line 7**

If you have a general business credit carryover to or from the tax year of the discharge, you must reduce that carryover by 33 1/3 cents for each dollar excluded from gross income. See Form 3800, General Business Credit, for more details on the general business credit, including rules for figuring any carryforward or carryback.

**Line 10a**

In the case of a title 11 case or insolvency, the reduction in basis is limited to the aggregate of the basis of your property immediately after the discharge over the aggregate of your liabilities immediately after the discharge. However, this limit does not apply to a reduction in basis reported on line 5 pursuant to section 108(b)(5).

**Line 10b**

If box 1e is checked and you continue to own the residence after discharge, enter the smaller of:

• The part of line 2 that is attributable to the exclusion of qualified principal residence indebtedness, or

• The basis of your main home.

## Part III

### Adjustment to Basis

Unless it specifically states otherwise, the corporation, by filing this form, agrees to apply the general rule for adjusting the basis of property (as described in Regulations section 1.1082-3(b)).

If the corporation desires to have the basis of its property adjusted in a manner different from the general rule, it must attach a request for variation from the general rule. The request must show the precise method used and the allocation of amounts.

Consent to the request for variation from the general rule will be effective only if it is incorporated in a closing agreement entered into by the corporation and the Commissioner of Internal Revenue under the rules of section 7121. If no agreement is entered into, then the general rule will apply in determining the basis of the corporation's property.

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated burden for individual taxpayers filing this form is approved under OMB control number 1545-0074 and is included in the estimates shown in the instructions for their individual income tax return. The estimated burden for all other taxpayers who file this form is shown as follows: **Recordkeeping,** 5 hr., 58 min.; **Learning about the law or the form,** 2 hr., 34 min.; **Preparing and sending the form to the IRS,** 2 hr., 48 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. See the instructions for the tax return with which this form is filed.

# **Exhibit B**

**Exhibit B**

Checkpoint Contents
  Federal Library
    Federal Source Materials
      IRS Rulings & Releases
        Private Letter Rulings & TAMs, FSAs, SCAs, CCAs, GCMs, AODs & Other FOIA Documents
          Private Letter Rulings & Technical Advice Memoranda (1950 to Present)
            2002
              PLR/TAM 200212036 - 200212001
                PLR 200212004 -- IRC Sec(s). 6050P, 03/22/2002

**Private Letter Rulings**

# Private Letter Ruling 200212004, 03/22/2002, IRC Sec(s). 6050P

UIL No. 6050P.00-00

## Headnote:

Co. isn't required to file Forms 1099-C with respect to cancellation of outstanding liabilities on certain financing contracts because discharge was required by operation of state law and not as result of "identifiable event" listed in Reg. §1.6050P-1(b)(2), and interest accrued with respect to any refunds of amounts collected by co. under Reg. §1.6050P-1(b)(2) is reportable on Forms 1099-INT, if amount is $600 or greater.

*Reference(s):* Code Sec. 6050P;

## Full Text:

Release Date: 3/22/2002

Person to Contact:

Telephone Number:

(202) 622-4910

Refer Reply To:

CC:PA:APJP:B01/PLR-144031-01

Date:

December 20, 2001

Re:

## LEGEND

Company =

Parent =

State =

Act =

Date 1 =

Date 2 =

Date 3 =

Court =

Dear

This letter responds to the letter dated August 20, 2001, submitted on behalf of the Company, requesting the following rulings:

> (1) the Company is not required to file Forms 1099-C with respect to the cancellation of outstanding liabilities on certain financing contracts because the discharge was not the result of an "identifiable event" listed in section 1.6050P-1(b)(2) of the Income Tax Regulations, but rather was required by operation of state law;
>
> (2) the Company is not required to file Forms 1099-C with respect to any refunds of amounts it previously collected that would have been treated as discharged under operation of state law; and
>
> (3) any interest accrued with respect to any refunds of amounts collected by the Company under (b)(2) above is reportable on Forms 1099-INT, but only if the interest amount is $600.00 or more.

## Facts

Based upon the facts and the representations made, Company is a subsidiary of Parent.

The Company's primary business is throughout the United States, including State. The Company uses the accrual method of accounting. Company's taxable year is the calendar year. financing is documented by a contract. These financing transactions made to State consumers are made under contracts as defined and regulated by the Act. The terms of these contracts are set forth in pre-printed form documents which are the same or substantially similar except for the individualized customer and transaction information ("Form Agreements").

The Act regulates the

Form Agreements in State. Among other things, the Act imposes strict requirements upon holders of Form Agreements Under the terms of the Act, the holder must provide the with notice ( "Statutory Notice"). The Act further specifies the precise information and disclosures that must be included in the Statutory Notice. Absent strict compliance with the mandatory requirements for the Statutory Notice, a seller or holder may not lawfully collect the deficiency balance ( "Deficiency Balance").

On Date, a lawsuit was filed in the Court on behalf of the general public. The lawsuit alleges that the Statutory Notices that Company issued, as a result of the customers ' failure to make payments under the Form Agreements, were materially defective.

As a result of the complaint, the court will issue an injunction preventing the collection of the Deficiency

Balances by Company. Although Company and the plaintiffs will stipulate to the entry of the injunction, the basis for the injunction is the the Act

Following the injunction, Company will enter into agreements with certain customers ("debtors") to refund, with interest, Deficiency Balances that were collected by Company from the customers who received allegedly defective Statutory Notices during this same time period. This agreement will address the logistics of refunding these Deficiency Balances such as the applicable interest rate and the method of contacting the customers. In addition, the agreement will contain a release that the customer must sign in order to receive a refund of the previously collected Deficiency Balance.

## Requested Rulings 1 and 2

Section 6050P of the Internal Revenue Code requires that an applicable entity report any discharges (in whole or in part) of indebtedness of any person in excess of $600.00. In addition, § 1.6050P-1(b)(2) of the Income Tax Regulations provides that a discharge of indebtedness occurs if one of the following identifiable events takes place:

  (A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);
  (B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or state court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);
  (C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;
  (D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;
  (E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;
  (F) A discharge of indebtedness pursuant to an agreement between an applicable financial entity and a debtor to discharge indebtedness at less than full consideration;
  (G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or
  (H) The expiration of the non-payment testing period, as described in paragraph (b)(2)(iv) of this section.

  Out of the above events, only two events contain language that may apply to the current situation.

The first possible event, § 1.6050P-1(b)(2)(F), states that an identifiable event exists where the applicable financial entity and debtor agree to discharge the indebtedness for less than full consideration. To establish consideration, there must be a performance or a return promised which has been bargained for by the parties. Restatement (Second) Contracts § 71(1) (1981). In this case, the Company (an applicable financial entity) and the debtors are agreeing to the entry of an injunction issued by the Court which will prevent the Company from collecting the Deficiency Balances from the debtors. The injunction is based on the Act

Therefore, the decision not to collect the deficiency balances is not triggered by an agreement between the Company and the debtors. The discharge is triggered by the Act. Thus, § 1.6050P-1(b)(2)(F) of the Income Tax Regulations does not apply.

The second possible event, § 1.6050P-1(b)(2)(G), holds that a discharge of indebtedness exists where a creditor discontinues collection activity pursuant to a decision by the creditor or a defined policy of the creditor, to discontinue collection activity and discharge debt. According to § 1.6050P-1(b)(2)(iii), a creditor's defined policy includes both a written policy and the creditor's established business practice. Neither a decision nor a policy triggers the

cancellation of indebtedness in this case. As stated above, the Act triggers the discontinuance of the Company's collection activity. Thus, § 1.6050P- 1(b)(2)(G) of the Income Tax Regulations does not apply.

Based on the above analysis, the discharges by the Company are not subject to the reporting requirements of § 6050P of the Internal Revenue Code or the regulations thereunder.

## Requested Ruling 3

Section 6041(a) of the Internal Revenue Code provides that all persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income of $600.00 or more in any taxable year, shall render a true and accurate return setting forth the amount of such gains, profits, and income, and the name and address of the recipient. Section 6041(a) does not apply to payments subject to reporting pursuant to § 6049(a) of the Code.

Section 1.6041(a)(1)(ii) of the Income Tax Regulations states that payments described in paragraphs (a)(1)(i)(A) and (B) of this section shall not include any payments of amounts with respect to which an information return is required by, or may be required under authority of § 6049(a)(1) and (2) (relating to interest).

According to § 6049(a), every person who makes payments of interest (as defined in subsection (b)) aggregating $10.00 or more to any other person during any calendar year, or who receives payments of interest (as so defined) as a nominee and who makes payments aggregating $10.00 or more during any calendar year to any other person to with respect to the interest so received shall make a return according to the forms or regulations prescribed by the Secretary, setting forth the aggregate amount of such payments and the name and address of the person to whom paid.

Section 6049(b)(1) defines interest as: (A) interest on any obligation issued in registered form, or of a type offered to the public, other than an obligation with a maturity (at issue) of not more than one year which is held by a corporation; (B) interest on deposits with persons carrying on the banking business; (C) amounts (whether or not designated as interest) paid by a mutual savings bank, savings and loan association, building and loan association, cooperative bank, homestead association, credit union, industrial loan association or bank, or similar organization, in respect of deposits, investment certificates, or withdrawable or repurchasable shares; (D) interest on amounts held by an insurance company under an agreement to pay interest thereon; (E) interest on deposits with brokers (as defined in section 6045(c)); (F) interest paid on amounts held by investment companies (as defined in section 3 of the Investment Company Act of 1940 (15 U.S.C. 80a-3)) and in amounts invested in other pooled funds or trusts; and (G) to the extent provided in regulations prescribed by the Secretary, any other interest (which is not described in section 6049(b)(2)).

Based upon the information provided, the interest paid in connection with the refund, is not an obligation issued in registered form or of a type offered to the public. In addition, the Company is not described in § 6049(b) of the Internal Revenue Code. Therefore, the Company is not subject to the reporting requirements of § 6049. As a result, the Company is subject to § 6041 of the Internal Revenue Code for interest paid to the debtors if the amount is $600.00 or more.

## Conclusion

Based solely on the information provided and the representations made, we conclude as follows:

(1) The Company is not required to file Forms 1099-C with respect to the cancellation of outstanding liabilities on certain financing contracts because the discharge was not the result of an "identifiable event" listed in § 1.6050P-1(b)(2) of the regulations, but rather was required by

Document Display

operation of state law,
(2) The Company is not required to file Forms 1099-C with respect to any refunds of amounts it previously collected that would have been treated as discharged under operation of state law,
(3) Any interest accrued with respect to any refunds of amounts collected by the Company under § 1.6050P-1(b)(2) of the Income Tax Regulations is reportable on Forms 1099-INT, but only if the interest amount is $600.00 or more.

This ruling is based on the facts presented and the applicable law in effect on the date of this letter. If there is a change in material fact or law (local or federal) before the transactions considered in this ruling take effect, the ruling will have no force or effect.

Except as specifically ruled herein, no opinion is expressed as to the federal tax treatment of any issue addressed in this ruling under other provisions of the Internal Revenue Code and Regulations that may be applicable.

Pursuant to the power of attorney on file in this office, the original of this letter is being sent to you as the Bank's authorized representative.

This ruling is directed only to the taxpayer(s) requesting it. Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

Sincerely,

Pamela W. Fuller

Senior Technician Reviewer, Branch 1

(Administrative Provisions and

Judicial Practice)

Enclosure (2)

Copy of this letter

Copy for section 6110 purposes

cc:

END OF DOCUMENT –
© Copyright 2007 RIA. All rights reserved.

# Exhibit C

**Exhibit C**

**Internal Revenue Service**

Number: **200802012**
Release Date: 1/11/2008

Index Number:  6050P.00-00

Department of the Treasury
Washington, DC 20224

Third Party Communication: None
Date of Communication: Not Applicable

Person To Contact:
                                    , ID No.
Telephone Number:

Refer Reply To:
CC:PA:01
PLR-128490-07
Date:
October 04, 2007

Legend

Company =
State X =
Act =
Statute 1 =
Date 1 =
Date 2 =
Asset =
Collection Remedy =

Dear                    :

This letter responds to the letter dated June 18, 2007, submitted on behalf of the
Company, requesting the following ruling:

The Company is not required to file Forms 1099-C with respect to the write-off of
balances and charges pursuant to its settlement agreement because the discharge was
not the result of an "identifiable event" listed in section 1.6050P-1(b)(2) of the Income
Tax Regulations, but rather was required by operation of state law.

Facts

The Company is a publicly traded corporation engaged in the Asset finance business
whose financing products are offered through a nationwide network of Asset dealers.
On Date 1, a class action lawsuit was filed by consumers in State X against the
Company alleging violations of State X state law with respect to Asset financing

PLR-128490-07                                    2

contracts entered into with the Company.  The lawsuit alleged several violations of State X law, including that the Company charged post-maturity interest and fees in excess of amounts due and that notices related to Collection Remedy did not meet statutory notice requirements.  On Date 2, the Company and class plaintiffs signed a Memorandum of Understanding (MOU) settling the entire class action lawsuit.  The MOU provides, inter alia, that the lawsuit be dismissed with prejudice and that the Company, with respect to all class members who had been subject to Collection Remedy (Collection Remedy class members), write off any deficiency balances remaining after the Collection Remedy.  Additionally, with respect to all other class members (other class members), the Company has agreed under the MOU to write off all charges (interest, fees, etc.) other than the net cash price of the Asset.

<u>Law & Analysis</u>

Section 6050P of the Internal Revenue Code requires that an applicable entity report any discharges (in whole or in part) of indebtedness of any person in excess of $600.00. In addition, section 1.6050P-1(b)(2) of the Income Tax Regulations provides that a discharge of indebtedness occurs if one of the following identifiable events takes place:

(A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);
(B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or state court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);
(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;
(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;
(E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;
(F) A discharge of indebtedness pursuant to an agreement between an applicable financial entity and a debtor to discharge indebtedness at less than full consideration;
(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or
(H) The expiration of the non-payment testing period, as described in paragraph (b)(2)(iv) of this section.

Out of the above events, only two have a potential bearing on the requested ruling.

The first possible event, section 1.6050P-1(b)(2)(F), states that an identifiable event

exists where the applicable financial entity and debtor agree to discharge the indebtedness for less than full consideration. To establish consideration, there must be a performance or a return promised which has been bargained for by the parties. Restatement (Second) Contracts § 71(1) (1981). In this case, the Company (an applicable financial entity) and the debtors are agreeing to the entry of a Court approved and supervised judgment which incorporates the MOU.  At first blush, it appears that there is an agreement between Company and its debtors to discharge indebtedness. The agreement however, merely reflects the operation of state law.  With respect to the Collection Remedy class members, the write-off of all Collection Remedy deficiency balances is based upon applicable State X case law, which bars recovery of any deficiency balance remaining after Collection Remedy for failure to strictly comply with notice requirements.  With respect to all other class members, the write-off of all charges other than the net cash price of the Asset is required under State X Statute 1, which bars recovery of these amounts when there has been a violation of the Act; in this case, the charging of interest and fees in excess of amounts due. Therefore, the decision to discharge these balances and charges is not triggered by an agreement between the Company and the debtors. The discharge is triggered by the applicable State X case law and statutes; the agreement simply reflects the law.  The fact that the Company and plaintiffs chose to settle the lawsuit as opposed to going to trial is immaterial.  Thus, section 1.6050P-1(b)(2)(F) of the Income Tax Regulations does not apply.

The second possible event, section 1.6050P-1(b)(2)(G), holds that a discharge of indebtedness exists where a creditor discontinues collection activity pursuant to a decision by the creditor or a defined policy of the creditor. According to section 1.6050P-1(b)(2)(iii), a creditor's defined policy includes both a written policy and the creditor's established business practice. Neither a decision nor a policy triggers the cancellation of indebtedness in this case. As stated above, the applicable State X case law and statutory provisions trigger the discontinuance of the Company's collection activity. Thus, section 1.6050P-1(b)(2)(G) does not apply.

Based on the above analysis, the discharges by the Company are not subject to the reporting requirements of section 6050P or the regulations thereunder.

<u>Conclusion</u>

Based solely on the information provided and the representations made, we conclude that the Company is not required to file Forms 1099-C with respect to the write-off of balances and charges pursuant to its settlement agreement because the discharge was not the result of an identifiable event listed in section 1.6050P-1(b)(2), but rather was required by operation of state law.

PLR-128490-07                           4

This ruling is based on the facts presented and the applicable law in effect on the date of this letter.  If there is a change in material fact or law (local or Federal) before the transactions considered in this ruling take effect, the ruling will have no force or effect.

Except as specifically ruled herein, no opinion is expressed as to the federal tax treatment of any issue addressed in this ruling under other provisions of the Internal Revenue Code and Regulations that may be applicable.

This ruling is directed only to the taxpayers requesting it.  Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

In accordance with the Power of Attorney on file with this office, a copy of this letter is being sent to your authorized representatives.

Sincerely,


Charles A. Hall
Senior Technician Reviewer,
Branch 1
(Procedure & Administration)


Enclosures:
Copy of letter
Copy for section 6110 purposes

# Exhibit D

**Exhibit D**

Checkpoint Contents
  Federal Library
    Federal Source Materials
      IRS Rulings & Releases
        Private Letter Rulings & TAMs, FSAs, SCAs, CCAs, GCMs, AODs & Other FOIA Documents
          Private Letter Rulings & Technical Advice Memoranda (1950 to Present)
            2010
              PLR/TAM 201021048 - 201021001
                PLR 201021018 -- IRC Sec(s). 6050P, 5/28/2010

---

**Private Letter Rulings**

# Private Letter Ruling 201021018, 5/28/2010, IRC Sec(s). 6050P

---

**UIL No.** 6050P.00-00

# Information reporting for discharges of indebtedness—settlement agreements—identifiable events.

## Headnote:

[Caution: This ruling has been revoked by 🗎.]

Financial institution wasn't required to file Forms 1099-C with respect to write-off of balances and charges pursuant to its settlement agreement because discharge wasn't result of "identifiable event" listed in Reg § 1.6050P-1(b)(2) , but rather was required by state law.

*Reference(s):* Code Sec. 6050P;

## Full Text:

Number: **201021018**

Release Date: 5/28/2010

Index Number: 6050P.00-00

Third Party Communication: None

Date of Communication: Not Applicable

Person To Contact: [Redacted Text]

ID No. [Redacted Text]

Telephone Number: [Redacted Text]

Refer Reply To:

CC:PA:01

PLR-147680-09

Date: February 05, 2010

February 05, 2010

## Legend:

Entity 1 =

Entity 2 =

Entity 3 =

State X =

Date 1 =

Date 2 =

Date 3 =

Asset =

Collection Remedy =

Dear [Redacted Text]:

This letter responds to the letter dated October 8, 2009, submitted on behalf of Entity 1, requesting the following ruling:

Entity 1 is not required to file Forms 1099-C with respect to the write-off of balances and charges pursuant to its settlement agreement because the discharge was not the result of an "identifiable event" listed in 📄Treasury Regulation § 1.6050P-1(b)(2), but rather was required by operation of state law.

## Facts

Entity 1 is a financial institution chartered by State X providing its members thrift services such as checking and savings accounts, certificates of deposit, a source of credit, and other fiscal and financial services. Entity 2 was a financial institution chartered by State X which provided similar services to its members. Entity 1 is the surviving party and successor to Entity 2 by merger effective Date 1. Entity 3 was a service company that offered Asset sale installment contracts from dealers to financial institutions for the financing of Assets and serviced such contracts, including, when necessary, initiating default proceedings on behalf of the financial institution that held a security interest in the Asset. Entity 2 acquired several Asset loan installment contracts and retained Entity 3 for servicing, collection, and enforcement on those contracts. On Date 2, a class action lawsuit was filed by consumers in State X against Entity 2 and Entity 3 alleging violations of State X state law with respect to Asset financing contracts owned by Entity 2 and serviced by Entity 3. The lawsuit alleged several violations of State X law, including that notices related to Collection Remedy did not meet statutory notice requirements. Entity 3 was subsequently dismissed from the lawsuit and Entity 1 was ordered to be the proper remaining defendant pursuant to its merger with Entity 2. On Date 3, Entity 1 and class plaintiffs signed a Memorandum of Understanding (MOU) settling the entire class action lawsuit. The MOU provides, inter alia, that the lawsuit be dismissed with prejudice and that Entity 1 has agreed under the MOU to close all accounts and write off all balances owed, including judgment balances.

## Law & Analysis

📄Section 6050P of the Internal Revenue Code requires that an applicable entity report any discharges (in whole or in part) of indebtedness of any person in excess of $600.00. In addition, 📄section 1.6050P-1(b)(2) of the Treasury Regulations provides that a discharge of indebtedness occurs if one of the following identifiable events takes place:

(A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);

(B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or state court, as described in 📄section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);

(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;

(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;

(E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;

(F) A discharge of indebtedness pursuant to an agreement between an applicable financial entity and a debtor to discharge indebtedness at less than full consideration;

(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or

(H) The expiration of the non-payment testing period, as described in paragraph (b)(2)(iv) of this section.

Out of the above events, only two have a potential bearing on the requested ruling.

The first possible event, 📄section 1.6050P-1(b)(2)(F), states that an identifiable event exists where the applicable financial entity and debtor agree to discharge the indebtedness for less than full consideration. To establish consideration, there must be a performance or a return promised which has been bargained for by the parties. Restatement (Second) Contracts 📄§ 71(1) (1981). In this case, Entity 1 (an applicable financial entity) and the debtors are agreeing to the entry of a Court approved and supervised judgment which incorporates the MOU. At first blush, it appears that there is an agreement between Entity 1 and its debtors to discharge indebtedness. The agreement however, merely reflects the operation of state law. The write-off of all Collection Remedy deficiency balances is based upon applicable State X law, which bars recovery of any deficiency balance remaining after Collection Remedy for failure to strictly comply with notice requirements. Therefore, the decision to discharge these balances and charges is not triggered by an agreement between Entity 1 and the debtors. The discharge is triggered by the applicable State X case law and statutes; the agreement simply reflects the law. The fact that Entity 1 and plaintiffs chose to settle the lawsuit as opposed to going to trial is immaterial. Thus, section 📄1.6050P-1(b)(2)(F) of the Treasury Regulations does not apply.

The second possible event, section 1.6050P-1(b)(2)(G), holds that a 📄discharge of indebtedness exists where a creditor discontinues collection activity pursuant to a decision by the creditor or a defined policy of the creditor. According to 📄section 1.6050P-1(b)(2)(iii), a creditor's defined policy includes both a written policy and the creditor's established business practice. Neither a decision nor a policy triggers the cancellation of indebtedness in this case. As stated above, the applicable State X statutory provisions trigger the discontinuance of Entity 1's collection activity. Thus, 📄section 1.6050P-1(b)(2)(G) does not apply.

Based on the above analysis, the discharges by Entity 1 are not subject to the reporting requirements of 📄section 6050P or the regulations thereunder.

## Conclusion

Based solely on the information provided and the representations made, we conclude that Entity 1 is not required to file Forms 1099-C with respect to the write-off of balances and charges pursuant to its settlement agreement because the discharge was not the result of an identifiable event listed in 📄section 1.6050P-1(b)(2), but rather was required by operation of state law.

Except as expressly provided herein, no opinion is expressed or implied concerning the tax consequences of any aspect of any transaction or item discussed or referenced in this letter.

This ruling is directed only to the taxpayer requesting it. 📄Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

In accordance with the Power of Attorney on file with this office, a copy of this letter is being sent to your authorized representative.

The rulings contained in this letter are based upon information and representations submitted by the taxpayer and accompanied by a penalty of perjury statement executed by an appropriate party. While this office has not verified any of the material submitted in support of the request for rulings, it is subject to verification on examination.

Sincerely,

Charles A. Hall

Senior Technician Reviewer

(Procedure & Administration)

Enclosures (2)


END OF DOCUMENT -

© 2015 Thomson Reuters/Tax & Accounting. All Rights Reserved.

# **<u>Exhibit E</u>**

**<u>Exhibit E</u>**

**tax**analysts
DOCUMENT SERVICE
Doc 2012-20769 (5 pgs)

**Internal Revenue Service**

Department of the Treasury
Washington, DC 20224

Number: **201240001**
Release Date: 10/5/2012

Third Party Communication: None
Date of Communication: Not Applicable
Person To Contact:

Index Number:  6050P.00-00

, ID No.

Telephone Number:

Refer Reply To:
CC:PA:02
PLR-100404-12
Date:
July 05, 2012

Legend

| | |
|---|---|
| Entity 1 | = |
| Entity 2 | = |
| Asset | = |
| State X | = |
| State Y | = |
| Date 1 | = |
| Date 2 | = |
| Date 3 | = |
| Date 4 | = |
| Collection Remedy | = |

Dear                    :

This letter responds to the letter dated December 15, 2011, submitted on behalf of
Entity 1, requesting a ruling that Entity 1 is not required to file Forms 1099-C with
respect to the write-off of balances and charges pursuant to its settlement agreement
because the discharge was not the result of an "identifiable event" listed in Treasury
Regulation § 1.6050P-1(b)(2), but rather was required by operation of state law.  For the
reasons set forth below, we conclude that Entity 1 is required to comply with the
reporting requirements of I.R.C. § 6050P because the discharge of indebtedness was
the result of an identifiable event listed in Treas. Reg. § 1.6050P-1(b)(2).

<u>Facts</u>

Entity 1 is a financial institution chartered in State X that provides its members with thrift
services such as checking and savings accounts, and other financial services.  Entity 2
was a service company that offered retail sale installment contracts from Asset dealers

PLR-100404-12                                    2

to financial institutions for the financing of the Assets and serviced those contracts including, when necessary, initiating default proceedings on behalf of the financial institution that held a security interest in the Asset.  Entity 1 acquired various Asset loan installment contracts and retained Entity 2 for servicing, collection and enforcement of those contracts.

On Date 1, consumers in State Y filed a class action lawsuit against Entity 1 in the Circuit Court of State Y alleging violations of State Y law, including that the notices related to the Collection Remedy did not meet the statutory notice requirements.  On Date 2, the case was removed to U.S. District Court, Western District of State Y.  On Date 3, Entity 1 and the class plaintiffs signed a Settlement and Release Agreement (Agreement) settling the entire class action lawsuit.  The Agreement provides, among other things, that Entity 1 shall close all accounts and write off any balances owed or claimed remaining as any deficiency on the loans, including judgment balances, that were the subject of the litigation.

The Agreement further provides for payments from Entity 1 to the class members out of a "Net Distributable Settlement Fund" provided by Entity 1.  The Agreement states that all class members shall be responsible for paying any and all federal taxes due on payments made to them pursuant to the settlement.  The Agreement provides that Entity 1 will request a Private Letter Ruling from the IRS supporting the parties' position that Entity 1 is not required to file information returns relating to the terms of the Agreement.  The Notice of Proposed Class Action Settlement that Entity 1 sent to the class members states that the request for Private Letter Ruling would be made by Entity 1 in support of the parties' position that the class members are not obligated to report the amount of the deficiency write-off or judgment write-off received as part of the settlement.

<u>Law & Analysis</u>

Section 6050P of the Internal Revenue Code requires that an applicable entity report any discharges (in whole or in part) of indebtedness of any person in excess of $600.00.  The report is to include the name, address and taxpayer identification number of each person whose indebtedness is discharged, the date of the discharge and the amount of indebtedness discharged.  In addition, section 1.6050P-1(b)(2) of the Treasury Regulations provides that a discharge of indebtedness occurs if one of the following "identifiable events" takes place:

> (A)  A discharge of indebtedness under title 11 of the United States Code (bankruptcy);
> (B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or state court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);

(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;
(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;
(E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;
(F) A discharge of indebtedness pursuant to an agreement between an applicable financial entity and a debtor to discharge indebtedness at less than full consideration;
(G) A discharge of indebtedness pursuant a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or
(H) The expiration of the non-payment testing period, as described in paragraph (b)(2)(iv) of this section.

Out of the above events, only two have a potential bearing on the requested ruling.  The first possible event, section 1.6050P-1(b)(2)(F), provides that an identifiable event exists when the applicable financial entity and debtor agree to discharge the indebtedness for less than full consideration.  To establish consideration, there must be a performance or a return promised which has been bargained for by the parties.  Restatement (Second) Contracts § 71(1) (1981).  In this case, Entity 1 and the debtor-class members agreed to the entry of a judgment, approved and supervised by the court, that incorporates the parties' Agreement by which Entity 1 will write off all remaining debt balances as part of the overall settlement of the pending litigation.  This appears, on its face, to be the identifiable event described in subsection (F) of the regulations.

The request for the PLR submitted on behalf of Entity 1 argues that the Agreement does not reflect a mere agreement of the parties.  Entity 1 argues instead that the Agreement reflects the operation of the law of State Y.  The law of State Y provides that, in a case where the Collection Remedy did not strictly comply with notice requirements, there is an absolute bar on collecting any remaining deficiency balances.  The class members alleged that Entity 1 violated various aspects of the notice requirements in the presale notices sent to the class members as part of its Collection Remedy.  The Agreement acknowledges that plaintiffs' claims are "premised on state law," which provides that collection of the deficiency balances may be barred without proper notice having been given to the debtors.  The "Representations and Stipulations" section of the Agreement refers to a potential "Court's finding that there was a failure to send a pre-sale notice to each of the Class Members and/or that the pre-sale notices…failed to comply with [state law]."  That language also is contained draft Preliminary Approval Order attached to the

PLR-100404-12                               4

Agreement as Exhibit B.  The Agreement otherwise contains no admission or concession by Entity 1 with respect to the claims or defenses alleged in the litigation, including any alleged violation of federal, state or local law.  The Agreement contains a specific denial of liability, "no admissions" paragraph, which states that the settlement is being entered into for the purpose of "avoiding the burdens, expense, and risk of further litigation."

Entity 1 contends that the application of state law and, specifically, the bar on collection of the deficiency balances, was "triggered by the judicial rulings which certified the matter as a class action and thereby made the deficiency bar available to all Class members."  Entity 1, however, continued to pursue the litigation and assert its defenses to the complaint well after the certification of the class, including filing a motion for partial summary judgment.  It was only by reaching a settlement agreement with the plaintiffs that Entity 1 gave up its disputed claims to the deficiency amounts.

The court order issued on Date 4 contains a finding that "there was a failure to send a pre-sale notice to each of the Class Members and/or that the pre-sale notices…failed to comply with [state law] such that [Entity 1] cannot collect any deficiency balances from the Class Members."  This language is identical to the language referenced above that was contained in the draft Preliminary Approval Order attached to the Agreement as Exhibit B.  Thus, the court finding of the bar on collection of remaining deficiency balances was at the behest of the parties, and was a component of the overall settlement of the litigation, as reflected in the Agreement.  The fact that the terms of the settlement were reflected in the order does not serve to convert the forgiveness of the debt from being entered into voluntarily to one forced by operation of state law.  The Agreement should be taken on its face, as an agreement between Entity 1 and the debtors to discharge the indebtedness at less than full consideration.  Therefore, section 1.6050P-1(b)(2)(F) applies.

The second possible event, section 1.6050P-1(b)(2)(G), provides that a discharge of indebtedness exists where a creditor discontinues collection activity pursuant to a decision by the creditor or a defined policy of the creditor.  According to section 1.6050P-1(b)(2)(iii), a creditor's defined policy includes both a written policy and the creditor's established business practice.  In this case, the cancellation of indebtedness does not appear to have been as a result of any defined policy or business practice of Entity 1, but rather by its decision to discontinue collection action as part of settling the litigation.  This decision appears to fall within subsection (G).  In any event, regardless of whether subsection (G) of the regulation applies, the event set forth in regulation subsection (F), as set forth above, does apply and the section 6050P reporting requirements must be met.

<u>Conclusion</u>

PLR-100404-12                                          5

Based solely on the information provided and the representations made, we conclude that Entity 1 is required to file Forms 1099-C with respect to the write-off of balances and charges pursuant to its settlement agreement because the discharge was the result of an identifiable event listed in section 1.6050P-1(b)(2) and not by operation of state law.[1]

This ruling is directed only to the taxpayer requesting it.  Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

In accordance with the Power of Attorney on file with this office, a copy of this letter is being sent to your authorized representative.

The rulings contained in this letter are based upon information and representations submitted by the taxpayer and accompanied by a penalty of perjury statement executed by an appropriate party.   While this office has not verified any of the material submitted in support of the request for rulings, it is subject to verification on examination.

Sincerely,

Ashton P. Trice
Chief, Branch 2
(Procedure & Administration)

Enclosures:
Copy of letter
Copy for section 6110 purposes

cc:

---

[1] The letter requesting the PLR by Entity 1 refers to the year 2011 as the relevant tax period; however, because the Agreement did not become final until 2012, the reporting requirement is for the year 2012.

# Exhibit F

**Exhibit F**

PLR 201408001 (IRS PLR), 2014 WL 659703

Internal Revenue Service (I.R.S.)

IRS PLR
Private Letter Ruling

Issue: February 21, 2014
November 13, 2013
Section 6050P -- Returns Relating to Cancellation of Indebtedness by Certain Financial Entities
6050P.00-00 Returns Relating to Cancellation of Indebtedness by Certain Financial Entities

**CC:PA:02**

**PLR-109624-13**
TY:

Legend

Entity 1 =

Entity 2 =

State X =

Date 1 =

Date 2 =

Date 3 =

Date 4 =

Date 5 =

Collection Remedy =

Dear ***:

This letter responds to the letter dated February 19, 2013, submitted on behalf of Entity 1, requesting a ruling that Entity 1 is not required to file Forms 1099-C with respect to the write-off of balances and charges pursuant to its settlement agreement because the discharge was not the result of an "identifiable event" listed in Treasury Regulation § 1.6050P-1(b)(2), but rather was required by operation of state law. For the reasons set forth below, we conclude that Entity 1 is required to comply with the reporting requirements of I.R.C. § 6050P because the discharge of indebtedness was the result of an identifiable event listed in Treas. Reg. § 1.6050P-1(b)(2).

<u>Facts</u>

Entity 1 is a financial institution chartered by State X engaged in, among other activities, the business of extending credit to consumers for the purchase of certain assets. Entity 1 is the successor by merger to another financial institution that had engaged in similar consumer credit activities as Entity 1 and which, prior to the merger, entered into an agreement with Entity 2 to engage in certain remedies for collection and enforcement of the retail sale installment contracts relating to the consumer loans.

Entity 1 filed a complaint in the Circuit Court of State X on Date 1 to recover a deficiency balance remaining on a consumer credit account after Collection Remedy had been taken. The defendant filed a motion to dismiss the complaint. The court on Date 2 issued an order dismissing the complaint. Also on Date 2, the defendant filed a counterclaim, which she later amended, that became the basis for the continuing litigation. On Date 3, the *** defendant/counterclaimant filed a Motion for Class Certification. The parties entered into a Settlement and Release Agreement ("Agreement") on Date 4 and, on the same date, filed with the court a Joint Motion for Preliminary Approval of Class Action Settlement Agreement. The following day, the court entered an Order Preliminarily Approving Class Action Settlement ("Preliminary Order"). On Date 5, the court entered an Order Finally Approving Class Action Settlement and Certifying a Class for Settlement Purposes ("Final Order") and also entered its Final Judgment in the case.

The Preliminary Order states that the parties have "executed the Agreement in order to settle and resolve the Litigation as between them and the proposed Settlement Class." The Preliminary Order states that the "Court finds preliminarily...that under [State X] law, [Entity 1] would not accrue any deficiency balance or collect any deficiency judgment...[regarding] 'presale notices' that failed to comply with the [State X] UCC." The Preliminary Order further states that Entity 1 would be permitted to "offset deficiency balances and judgments against damages claimed" by the counterclaimant or class action members, under the law of State <u>X</u>. The Preliminary Order specifies that its findings are "[p]ursuant to the Agreement, and for purposes of the Settlement only." The Final Order incorporates the Preliminary Order and the parties' Agreement. The terms

of the Agreement specified the creation of a qualified settlement fund, and the distribution from the fund to the class members and their counsel. The Agreement also specified that Entity 1 would submit a request for a private letter ruling to the IRS requesting a ruling that Entity 1 is not required to file information returns relating to distributions from the settlement fund.

Law and Analysis

Section 6050P of the Internal Revenue Code requires that an applicable entity report any discharges (in whole or in part) of indebtedness of any person in excess of $600.00. The report is to include the name, address and taxpayer identification number of each person whose indebtedness is discharged, the date of the discharge and the amount of indebtedness discharged. In addition, section 1.6050P-1(b)(2) of the Treasury regulations provides that a discharge of indebtedness occurs if one of eight "identifiable events" that the regulation defines takes place.

Of the identifiable events, only two have a potential bearing on the requested ruling. The first possible event, section 1.6050P-1(b)(2)(F), provides that an identifiable event exists when the applicable financial entity and debtor agree to discharge the indebtedness for less than full consideration. To establish consideration, there must be a performance or a return promised which has been bargained for by the parties. Restatement (Second) Contracts § 71(1) (1981). In this case, Entity 1 and the debtor- class members agreed to the entry of a judgment, approved and supervised by the court, which incorporates the parties' Agreement by which Entity 1 will write off all remaining debt balances as part of the overall settlement of the pending litigation. This appears, on its face, to be the identifiable event described in subsection (F) of the regulations.

The request for PLR submitted on behalf of Entity 1 argues that the Agreement does not reflect a mere agreement of the parties, or any other identifiable event, but rather is simply a recognition that the write-off of the deficiency balances was required under the law of State X. The law of State X provides that, in a case where the Collection Remedy did not strictly comply with notice requirements, there is an absolute bar on collecting any remaining deficiency balances. The defendant's motion to dismiss filed in response to Entity 1's complaint, and the defendant's counterclaim, alleged that Entity 1 violated various aspects of the notice requirements in the presale notices sent to the class members as part of the Collection Remedy. The settlement Agreement acknowledges that the "claims are premised on state law which bars the recovery of deficiency balances in certain circumstances" and "[t]he settlement consideration provided in the Agreement is determined by application of state law." The Agreement contains no admission or concession by Entity 1 with respect to the claims or defenses alleged in the class action counterclaim. The Agreement contains a specific denial of liability in paragraph 1, which denial of liability was incorporated into the Preliminary Order and Final Order. The Final Order recites that by entering

into the settlement Agreement, the parties shall not be deemed to have admitted or conceded liability with respect to any of the pending claims or defenses alleged.

Entity 1 contends that the order granting the defendant's motion to dismiss, coupled with the Preliminary and Final Orders approving the settlement, constitutes a substantive ruling that the presale notices were defective and the deficiencies, therefore, were not legally accrued or collectible. The original order dismissing the defendant from the case, however, was a one-sentence order with no substantive findings or memorandum opinion, issued simultaneously with the filing of the defendant's counterclaim. The Preliminary Order approving the class action settlement specifically states that the findings are "Pursuant to the Agreement, and for the purposes of the Settlement only." The Preliminary Order was drafted by the parties and submitted to the court for signature, rather than an order that resulted from an *** independent judicial investigation into the allegations and defenses of the parties. Entity 1 has never made any admission regarding the alleged inadequacy of the presale notices. It vigorously pursued the litigation, including filing a Motion for Summary Judgment, throughout the pendency of the case. It was only by entering into a settlement agreement with the class members that Entity 1 gave up its disputed claims to deficiency amounts.

Although the application of the law of State $\underline{X}$ regarding the adequacy of the presale notices may have been a factor in the parties' decision to settle the litigation, such considerations are typical of parties' assessment of litigation hazards in arriving at a negotiated settlement. As the Preliminary Order states, the parties entered into the Agreement "which memorializes the Parties' negotiations and agreed-upon settlement" of the litigation. The Agreement states that Entity 1 entered into the Agreement because Entity 1 "desires to settle the claims being asserted against it in the Litigation...for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation." The fact that the terms of the Agreement were approved and incorporated into the Circuit Court's Preliminary Order or Final Order does not serve to covert the discharge of the debt from being entered into voluntarily to one forced by operation of state law. The Settlement and Release Agreement should be taken on its face, as an agreement between Entity 1 and the debtors to discharge the indebtedness at less than full consideration for the purpose of resolving the pending litigation. Therefore, section 1.6050P-1(b)(2)(F) applies.

The second possible event, section 1.6050P-1(b)(2)(G), provides that a discharge of indebtedness exists where a creditor discontinues collection activity pursuant to a decision by the creditor or a defined policy of the creditor. According to section 1.6050P-1(b)(2)(iii), a creditor's defined policy includes both a written policy and the creditor's established business practice. In this case, the cancellation of indebtedness is not a result of any defined policy or business practice of Entity 1, but rather by its decision to discontinue collection action as part of settling the litigation. This

decision therefore may fall within subsection (G). In any event, even if subsection (G) of the regulation did not apply, the event set forth in regulation subsection (F), as set forth above, does apply and the section 6050P reporting requirements must be met.

## Conclusion

Based solely on the information provided and the representations made, Entity 1 is required to file Forms 1099-C with respect to the write-off of balances and charges pursuant to its settlement agreement because the discharge was the result of an identifiable event listed in section 1.6050P-1(b)(2).

Except as expressly provided herein, no opinion is expressed or implied concerning the tax consequences of any aspect of any transaction or item discussed or referenced in this letter.

This ruling is directed only to the taxpayer requesting it. Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

In accordance with the Power of Attorney on file with this office, a copy of this letter is being sent to your authorized representatives.

The rulings contained in this letter are based upon information and representations submitted by the taxpayer and accompanied by a penalty of perjury statement executed by an appropriate party. While this office has not verified any of the material submitted in support of the request for rulings, it is subject to verification on examination.
 Sincerely,

Ashton P. Trice
Chief, Branch 2, (Procedure & Administration)

Enclosures:(1) Copy of letter for section 6110 purposes

(2) Notice of Intention to Disclose, Notice 437

Section 6110(j)(3) of the Internal Revenue CodeThis document may not be used or cited as precedent. .

PLR 201408001 (IRS PLR), 2014 WL 659703

© 2015 Thomson Reuters. No claim to original U.S. Government Works.